# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| _____ ) | |
| LEE WARD, on behalf of himself and ) | |
| all others similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _4:20-cv-371_____ |
| ) | |
| AMERICAN AIRLINES, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## COMPLAINT – CLASS ACTION

Plaintiff, Lee Ward, individually and on behalf of all others similarly situated, based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, files this Class Action Complaint against Defendant American Airlines, Inc. ("American"), alleging as follows:

## NATURE OF ACTION

1.      This Class Action Complaint comes during a time of unprecedented hardship for many Americans.  Each day brings different news regarding the novel coronavirus COVID-19.[1]   Social distancing, sheltering-in-place, and efforts to

_____

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society.  In particular, they are aware of the burden this crisis places

"flatten the curve" have separated loved ones from their relatives, workers from their co-workers, and further isolated those already in or at risk of further isolation. Unemployment has skyrocketed nationwide. Nearly nine in ten Americans are now subject to a travel restriction, all to protect the health and welfare of the nation during this public health emergency.

2.      The separation caused by COVID-19 and related protective efforts has dramatically impacted travel, particularly air travel. The ability to travel is flat-out eliminated for many Americans, both financially and physically. A trip to the grocery store or pharmacy has been deemed a necessity and permitted; a spring break trip with family or travel for a business meeting, is not.

3.      As a result, airlines have slashed flight schedules, resulting in thousands of flight cancellations for thousands of passengers. But such passengers face additional hardship if they booked their flights with American. To add to the difficulties such passengers already face, American often refuses to issue monetary refunds to passengers with canceled flights. It does so even though all airline passengers are entitled to a refund if the airline cancels a flight, regardless of the

---

on small businesses and larger corporations alike, as well as the drain it imposes on scarce judicial resources. Plaintiff is compelled, however, to file now to preserve his rights and those of the proposed class. To minimize the burden on the Court, and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for its response to this Class Action Complaint.

reason the airline cancels the flight.  Instead, American represents it will only rebook and/or provide travel vouchers.

4.     The need for monetary refunds over travel vouchers is pressing now. Travel vouchers provide little security in this public crisis, particularly where many individuals need money now to pay for basics like food and rent, not restrictive, temporary credits towards future travel.

5.     Reflecting the need to provide individuals with such assistance, the Coronavirus Aid, Relief, and Economic Security Act ("CARES") is set to provide a bailout to the airlines, providing them about $58 billion in aid.  But, despite the faucet of taxpayer money that will flow its way, American refuses to comply with the law or operate in the interests of its customers.

6.     American's actions have financially damaged Plaintiff and the Class Members.  Plaintiff requested refunds for tickets on a cancelled flight and was entitled to a refund.  But, like so many other passengers, American denied that request.  American has engaged in unfair and deceptive conduct through its policy to refuse refunds, limiting and forcing customers into a rebooked flight or travel voucher instead of returning their money.

7.     As a result, Plaintiff brings this action because Plaintiff and the Class Members did not receive refunds for American cancelled flights, lost the benefit of

their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which explicitly provides for the original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs.

9.     Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6).  Plaintiff is a citizen of the State of Arizona, whereas Defendant is a citizen of Delaware and Texas for purposes of diversity.  Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).  Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Texas, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

10.     Venue is appropriate in this District because Defendant maintains its principal place of business within the Fort Worth Division of the Northern District of Texas.  In addition, one of American's largest hub (both in terms of passengers carried and the number of departures) is Dallas/Fort Worth International Airport, which is within the Northern District of Texas.  Upon information and belief, events and transactions causing the claims herein, including American's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

11.     Furthermore, by purchasing a ticket and accepting Defendant's offer of air transportation, Plaintiff, Class Members, and Defendant agreed to a choice of law provision that specifies Texas law applies.

## **PARTIES**

12.      Plaintiff Lee Ward is a citizen and resident of the State of Arizona. Plaintiff is and continues to be immediately affected by the COVID-19 pandemic. Despite requesting and being entitled to a refund for his cancelled flight, American has refused to provide Plaintiff a refund.

13.     On January 14, 2020, Plaintiff purchased tickets for travel to occur starting on March 12, 2020 and ending on March 31, 2020.  Plaintiff was planning to travel to Lima, Peru from Las Vegas, Nevada, with a layover in Los Angeles. Plaintiff's return flight was scheduled from Lima, Peru to Miami, Florida and then

from Miami, Florida to Las Vegas, Nevada. The portion of this flight that was booked on American – the Miami to Las Vegas return leg – was cancelled by American. Plaintiff purchased the tickets through American's agent, OneTravel.com, paying American and other airlines a total of $1,052.00 for the two tickets.

14.     On February 29, 2020, Plaintiff purchased four tickets for travel to occur starting on May 30, 2020 and ending on August 3, 2020. Plaintiff was planning to travel to Lima, Peru from Las Vegas, Nevada, with a layover in Los Angeles. Plaintiff's return flight was scheduled from Lima, Peru to Los Angeles and then to Las Vegas, Nevada. The portion of this flight that was booked on American was the Los Angeles to Las Vegas portion of the return leg. Plaintiff purchased the tickets through American's agent, OneTravel.com, paying American and other airlines a total of $2,176.36 for the four tickets.

15.     On March 12, 2020, Plaintiff traveled to Lima, Peru as planned.

16.     On or about March 27, 2020, OneTravel.com informed Plaintiff that American and Latam Airlines had cancelled his return flight home.

17.     On or about March 31, 2020, Plaintiff received three voicemails from American informing him that his return flight was cancelled and that the next possible return flight was not until May 7, 2020.

18.     At Plaintiff's own expense he booked a return flight home from Peru on different airlines.

19.     Since returning from Peru, American has refused to refund Plaintiff for its portion of his cancelled flight back to Las Vegas.

20.     Given the uncertainty over travel due to the COVID-19 pandemic, and the fact that Arizona's governor has issued a "stay-at-home" order, Plaintiff has requested a refund of his upcoming May 30, 2020 flight to Peru.

21.     American has refused to refund Plaintiff its portion of the fare, despite Plaintiff's repeated attempts to speak with a representative of American via telephone.

22.     At the time of his ticket purchase, Plaintiff understood that he would be entitled to a refund if his flight was cancelled and Plaintiff was actually deceived by American regarding his right to a refund and his options following American cancelled flights.  Plaintiff seeks a refund because he does not know when or if he will be able to use a travel voucher.

23.     Defendant American Airlines, Inc. is a Delaware corporation authorized to do business in Texas as a foreign corporation with a principal place of business at 1 Skyview Drive, Fort Worth, Texas 76155.

## FACTS

**A.** **Background**

24.     In a typical service scenario, American operates 6,800 flights to over 350 airports in over 55 countries, with domestic hubs in Charlotte, Chicago – O'Hare, Dallas/Fort Worth, Los Angeles, Miami, New York – JFK, New York – LaGuardia, Philadelphia, Phoenix, and Washington, D.C.

25.     In 2019, American carried over 200 million customers, utilizing over 900 Airbus, Boeing, and Embraer aircraft.  For its services, American posted $45.7 billion in operating revenue in the year ending December 31, 2019.

26.     American sells its airline seat inventory and fares through the American's direct channels (such as American's direct-to-consumer sales website, www.aa.com, and the company's mobile applications) and through traditional travel agencies and online travel agencies.  With each ticket sale, American collects passenger identification information, including name, address, and telephone information.

27.     American has alliances with Air Tahiti Nui, Alaska Airlines, British Airways, Cape Air, Caribbean Airlines, Cathay Dragon, Cathay Pacific, China Southern Airlines, El Al, Fiji Airways, Finnair, Gol Transportes Aéreos, Hainan Airlines, Hawaiian Airlines, Iberia, Interjet, Japan Airlines, Jetstar Airways, Jetstar

Japan, Korean Air, Malaysia Airlines, Qantas, Qatar Airways, Royal Jordanian, Seaborne Airlines, and SriLankan Airlines through its OneWorld alliance program.

28.     But regardless of the method by which American sells its tickets, American has engaged in unfair, deceptive, and unjust conduct because it is refusing to issue refunds to passengers for coronavirus-related flight cancellations.

**B.     The Novel Coronavirus Shutdowns and American's Resulting Flight Cancellations**

29.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness.  Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus or COVID-19.  By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

30.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

31.     The U.S. State Department warned travelers to avoid traveling to China and on January 31, 2020, the U.S. federal government restricted travel from China, thus beginning travel restrictions affecting passengers ticketed on domestic and international air travel to and from the United States.

32.    By February 29, 2020, COVID-19 restrictions continued to spread across the globe.  As the number of global cases rose to nearly 87,000, the U.S. federal government issued its highest-level warning, known as a "do not travel" warning for areas in Italy and South Korea that are most affected by the virus.  The government also banned all travel to Iran and barred entry to any foreign citizen who had visited Iran in the previous 14 days.

33.    On March 11, 2020, the World Health Organization declared COVID-19 a pandemic.  That same day, U.S. officials announced yet another travel ban expansion, this time blocking most visitors from continental Europe to the United States.

34.    Travel restrictions domestically began on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of the drafting of this Class Action Complaint, 316 million people in at least 42 states, 3 counties, 9 cities, the District of Columbia, and Puerto Rico are being urged to stay home.

35.    As the restrictions expanded and virus fears mounted, American cancelled flights in the United States because of the spreading impact of the coronavirus.

36.     On March 10, 2020, American announced it was reducing international capacity 10% and domestic capacity 7.5%, with continued adjustments as needed. Among the cuts was a 55% slash in trans-Pacific travel.

37.     On March 13, 2020, American announced it would be reducing its international flight capacity another 34%, including a 50% reduction in April trans-Atlantic flights.

38.     On March 16, 2020, American announced it was reducing international capacity by 75% year over year – from March 16 to May 6 – and further anticipated that its domestic capacity in April would be reduced by 20% compared to last year and May's domestic capacity will be reduced by 30% on a year over year basis.

39.     The announced reductions meant that American was grounding 55,000 flights in April and was parking 450 planes – about half of its fleet – in response to decreased demand and travel restrictions due to the COVID-19 pandemic.

40.     All long-haul international flights were suspended through May 6, including all routes from Miami International Airport to Aruba, Brazil, Chile, Colombia, Ecuador, Guatemala, El Salvador, Saint Maarten, and Peru.

41.     On March 27, 2020, American announced it was suspending 60% of its capacity in April as compared to the same period in 2019 and was planning to suspend up to 80% of its capacity in May compared to the same period in 2019.

42.     Ultimately on April 2, 2020, American announced that it was suspending more than 60% of its total international capacity this summer compared to the same peak period in 2019, which included an 80% reduction in Pacific capacity, 65% reduction in Atlantic capacity, and 48% reduction in Latin America capacity.

C.     **American's Refusal of Passenger Refunds for Cancelled Flights**

43.     As American announced flight cancellations (combined with decreased domestic bookings), American took a variety of steps to make it difficult, if not impossible, for consumers to receive any refund on pandemic cancelled flights. Defendant wanted to retain the money paid to Defendant, given the severe economic losses it is incurring related to pandemic flight cancellations. It did so despite consumers' right to receive a refund for unused transportation, even for non-refundable tickets.

44.     Pursuant to their Conditions of Carriage, if American cancelled a flight or changed a flight time by over four hours, passengers could receive a full refund.

45.     However, American is focused on keeping passenger money through providing travel credits, not refunds.  The front page of www.aa.com has a "Coronavirus Travel Updates" banner and a blue link entitled "Travel updates and making changes to your trip" that encourage consumers to change or cancel their flight.  The "Coronavirus Travel Updates" section of the website notes a customer

is "allowed to make a change to your trip once" and details that American will waive the change fee.

46.    With regard to cancelled flights, the "Coronavirus Travel Updates" section of the website states "We'll send you an email with the information you'll need, including your ticket number. Keep this handy so you can refer to it when you call Reservations to rebook."

47.    A refund request form is not referenced on American's "Coronavirus Travel Updates," and is only located by searching the website specifically for the refund request form.  American also informs customers that it will "process cash and check refunds within 20 days of receiving all your paperwork."

48.    American's policy changes due to the pandemic primarily focus on encouraging consumers to change their flight.

49.    American's efforts to refuse and deny customers refunds contradicts established transportation requirements that operate for the benefit and protection of airline consumers.

50.    According to the Department of Transportation: "If your flight is cancelled and you choose to cancel your trip as a result, you are entitled to a refund for the unused transportation – even for non-refundable tickets.  You are also entitled

to a refund for any bag fee that you paid, and any extras you may have purchased, such as a seat assignment."[2]

51.    Put another way, "[a] passenger is entitled to a refund if the airline cancelled a flight, regardless of the reason, and the passenger chooses not to be rebooked on a new flight on that airline."[3]

52.    Passengers are similarly entitled to a refund if an airline makes "a significant schedule change and/or significantly delays a flight and the passenger chooses not to travel."[4]

53.    Not only is American refusing to refund passengers for cancelled flights, American is misleading passengers about their rights by making it difficult to locate information about refunds, refusing refunds, unilaterally providing travel vouchers if a passenger is unable to contact a American customer service representative, and waiting until the last minute to cancel flights to induce passengers to cancel their flights.

**D.    Complaints Regarding American's Refusal to Provide Passengers Refunds for Cancelled Flights Abound**

54.    On April 3, 2020, the U.S. Department of Transportation disclosed that it "is receiving an increasing number of complaints and inquiries from ticketed

---

[2]    https://www.transportation.gov/individuals/aviation-consumer-protection/flight-delays-cancellations

[3] https://www.transportation.gov/individuals/aviation-consumer-protection/refunds

[4] Id.

passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed." The Department reminded carriers, including American, of their "longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier."[5]

55.     Sensitive to such consumer complaints, members of the U.S. Senate have urged American in a joint letter to provide full cash refunds to passengers with cancelled flights during the pandemic:

> We write to urge your airline to issue full cash refunds to all customers who cancel their flights during the COVID-19 crisis, and to American citizens who encounter flight cancellations while stranded in countries that implemented travel restrictions. The ongoing pandemic is placing enormous financial strain on millions of Americans, and families need cash to pay for essentials such as food, housing, and medical care. In light of this pressing need and the unprecedented bailout—to the tune of $25 billion—that the airline industry just received from Congress, we believe your company has a moral responsibility to provide real refunds, not travel vouchers, to consumers, and to support State Department efforts to repatriate any American citizens trying to come home.[6]

---

[5]  https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020.pdf

[6] Letter to Doug Parker, CEO of American Airlines, from U.S. Senator Edward J. Markey, et al. (March 31, 2020).

56.     American not only has a moral responsibility to provide real refunds, it has a legal obligation to do so, particularly in light of the substantial bailout it received from American taxpayers, including Plaintiff and the Class Members.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff sues under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All persons in the United States who purchased tickets for travel on American Airlines flights scheduled to operate to, from, or within the United States from March 1, 2020 to the present and who were not issued a refund for a cancelled flight.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees.  Further excluded from the Class is this Court and its employees.  Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during this litigation.

58.     The definition of the Class is unambiguous.  Plaintiff is a member of the Class he seeks to represent.  Class Members can be notified of the class action through ticketing contact information and/or address lists maintained in the usual course of business by Defendant.

59.     Under Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable.  The total number of members of the proposed Class is greater than

100 and exceeds the number required for jurisdiction under 28 U.S.C. § 1332(d)(2) and (d)(5)(B). Given the thousands of flight cancellations made by American, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

60.     American has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

61.     Plaintiff shows that common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and (b)(3). Some of the common legal and factual questions include:

a.  Whether Defendant engaged in the conduct alleged;

b.  Whether Defendant has a policy and/or procedure of denying refunds to Class Members for cancelled flights;

c.  Whether Defendant's policy and/or procedure of denying refunds to passengers on cancelled flights is unfair, deceptive, and/or misleading;

d.  Whether Texas law applies to the nationwide class;

e.  Whether Defendant violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

f.   Whether Defendant violated the common law of unjust enrichment;

g.   Whether Defendant converted Plaintiff's and the Class Members' refunds and/or rights to refunds;

h.   Whether Defendant made fraudulent misrepresentations to Plaintiff and the Class Members;

i.   Whether Defendant breached its contracts with Plaintiff and the Class Members;

j.   Whether the doctrine of promissory estoppel applies to bar Defendant from denying Plaintiff's and the Class Members' refunds; and

k.   The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

62.   Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members.  Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions pale by comparison to the numerous common questions that predominate.

63.   The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts under Rule 23(a)(2) – Defendant's misconduct.  In each case Defendant has cancelled flights yet denied refunds to Class Members for such cancelled flights.

64.    The Class Members have been damaged by Defendant's misconduct through American's practice of cancelling flights, yet denying refunds to Class Members for such cancelled flights.

65.    Plaintiff's claims are typical of the claims of the other Class Members as required by Rule 23(a)(3).  Plaintiff paid for airline tickets, did not receive a refund for his cancelled flight, and was actually deceived.

66.    Plaintiff shows he and his counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4).  Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims.  Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously.  Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

67.    Consistent with Rule 23(b)(3), the class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members.  The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant.  It would be virtually

impossible for the Class Members to seek redress individually.  Even if the Class Members themselves could afford such individual litigation, the court system could not.

68.     The Northern District of Texas is also a desirable forum under Rule 23(b)(3)(C) because Defendant is headquartered in the Northern District of Texas, made pertinent decisions within this District, and information and relevant documents are expected to exist within this District.

69.     Further, under Rule 23(b)(3)(D), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

70.     Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6) due to the thousands of flight cancellations made by American.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF STATE CONSUMER PROTECTION ACTS

71.     Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein and further alleges as follows:

72.     Count I is brought by Plaintiff individually and on behalf of all similarly situated residents of each of the 50 states for violations of the state consumer protection acts including:[7]

a.  the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, et seq.;

b.  the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, et seq.;

c.  the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq.;

d.  the California Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq. and 17500, et seq.;

e.  the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.;

---

[7] Plaintiff also places Defendant on notice that he intends to amend his complaint to seek recovery for Class Members under the following statutes: Alabama Code § 8-19-10(e); Alaska Statutes § 45.50.535; California Civil Code § 1782; Georgia Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes, Title 5 § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3); Texas Business & Commercial Code § 17.505; West Virginia Code § 46A-6-106(b); and Wyoming Statutes § 40-12-109.

f.  the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-101, et seq.;

g.  the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42-110, et seq.;

h.  the Delaware Consumer Fraud Act, 6 Del. Code § 2513, et seq.;

i.  the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, et seq.;

j.  the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, et seq.;

k.  the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, et seq.;

l.  the Idaho Consumer Protection Act, Idaho Code. Ann. § 48-601, et seq.;

m. the Illinois Consumer Fraud and Deceptive Business Practices Act, § 815 ILCS 505/2, et seq.;

n.  the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, et seq.;

o.  the Iowa Consumer Fraud Act, Iowa Code § 714.16, et seq.;

p.  the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, et seq.;

q.  the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, et seq.;

r.  the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, et seq.;

s.  the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.;

t.  the Maryland Consumer Protection Act, Md. Code Ann. Com. Law, § 13-301, et seq.;

u.  the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen Laws Ann. Ch. 93A, et seq.;

v.  the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et seq.;

w.  the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, et seq.;

x.  the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, et seq.;

y.  the Nebraska Consumer Protection Act, Neb. Rev. St. § 59-1601, et seq.;

z.  the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, et seq.;

aa. the New Hampshire Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. § 358-A:1, et seq.;

bb. the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, et seq.;

cc. the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, et seq.;

dd. the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, et seq.;

ee. the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, et seq.;

ff.  the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15, et seq.;

gg. the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, et seq.;

hh. the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, et seq.;

ii.  the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, et seq.;

jj.  the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.;

kk. the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-5.2(B), et seq.;

ll.  the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et seq.;

mm.      the South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, et seq.;

nn. the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.;

oo. the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann., Bus. & Con. § 17.41, et seq.;

pp. the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13-11-175, et seq.;

qq. the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, et seq.;

rr.  the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, et
seq.;

ss.  the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, et
seq.;

tt.  the West Virginia Consumer Credit And Protection Act, W. Va. Code § 46A,
et seq.;

uu. the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, et seq.;
and

vv. the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, et seq.

73.    The unfair and deceptive practices engaged in by Defendant described
above, occurring in the course of conduct involving trade or commerce, constitute
unfair methods of competition and unfair or deceptive acts or practices within the
meaning of each of the above-enumerated statutes.

74.    Defendant's acts and practices were unfair and created a likelihood of
confusion or misunderstanding and misled, deceived, or damaged Plaintiff and
members of the Class in connection with the sale and refunds of airline tickets.
Defendant's conduct also constituted the use or employment of deception, fraud,
false pretense, false promise, misrepresentation, or the knowing concealment,
suppression, or omission of a material fact with intent that others rely upon the
concealment, suppression, or omission in connection with the sale or advertisement

of goods or services, whether or not a person has in fact been misled, deceived, or damaged in violation of each of the above-enumerated statutes.

75.   Plaintiff, on behalf of himself and the Class Members, seeks monetary damages, treble damages, and such other and further relief as set forth in each of the above-enumerated statutes.

## COUNT II

## UNJUST ENRICHMENT

76.   Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

77.   At all times relevant hereto, Defendant sold Plaintiff and the Class Members airline tickets for travel to, from, and within the United States.

78.   American has benefitted from its unlawful acts by receiving payments for the sale of tickets on cancelled flights, though American has no right to deny Plaintiff and the Class Members refunds for tickets purchased on cancelled flights.

79.   Plaintiff and members of the Class conferred upon Defendant a benefit in the form of money for tickets on specific flights.  In paying for such flights, Plaintiff and the Class Members conferred benefits that were non-gratuitous.

80.   Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

81.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's unconscionable wrongdoing, Plaintiff and members of the Class are entitled to refunds for cancelled flights.  Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and the Class Members under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

82.    Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and the Class Members are entitled to and seek disgorgement and restitution of Defendant's wrongful profits, ticket revenue on American cancelled flights, and benefits in a manner established by the Court.

## COUNT III

## CONVERSION

83.     Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

84.    Plaintiff and the other members of the Class have an undisputed right to immediate refunds in lieu of rebookings and/or travel vouchers for their purchase of tickets on flights cancelled by American.

85.    American wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by limiting passengers on cancelled flights to either a rebooked flight or a travel voucher.  All the while Defendant has unlawfully retained the monies Plaintiff and the Class Members paid for tickets on cancelled flights.

86.    American deprived Plaintiff and the other members of the Class of the value they paid for tickets on cancelled flights as well as their right to a refund.

87.    Plaintiff and members of the Class have requested and/or demanded that American issue refunds for cancelled flights.

88.    This interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they purchased tickets and, as such, American has deprived Plaintiff and members of the Class of the right to their property, in this case, the amounts paid for tickets on cancelled flights.

89.    Plaintiff and members of the Class may exercise their right to full refunds of all amounts paid for tickets on cancelled flights.

## COUNT IV

## FRAUDULENT MISREPRESENTATION

90.    Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

91.     Defendant intentionally misrepresented to Plaintiff and the Class Members regarding their rights to a refund on American cancelled flights, including but not limited to, as reflected in American's refund policies.

92.     Defendant intentionally and actively misrepresented to Plaintiff and Class Members that passengers on cancelled flights are limited to rebookings or travel vouchers.

93.     Defendant's representation was false.  At all times relevant, Plaintiff and members of the Class are entitled to refunds on cancelled flights, not just rebookings or travel vouchers.

94.     Defendant's misrepresentation was made fraudulently.  Defendant made its representations with knowledge that Plaintiff and Class Members were entitled to refunds on all cancelled flights.

95.     Instead, when American made the representation regarding the rights to refunds and/or post-American flight cancellation options, American intended that Plaintiff and the Class Members would rely on it.

96.     Plaintiff and the Class Members relied on Defendant's representations.

97.     The reliance by Plaintiff and the Class Members on Defendant's representations was reasonable.

98.     Defendant's representations proximately caused damage to Plaintiff and the Class Members. By misrepresenting that passengers on American cancelled

flights are limited to rebookings or travel vouchers, Defendant financially damaged Plaintiff and members of the Class.

## COUNT V

## BREACH OF CONTRACT

99.    Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

100.   Defendant made offers to Plaintiff and the Class Members to enter into a contract for Defendant to provide transportation services to Plaintiff and the Class Members through passenger tickets for air travel between specific locations, on specific flight numbers, on specific dates and times, at specific prices.

101.   Defendant's offer to provide transportation services to Plaintiff and the Class Members also included Defendant's offer that it would refund Plaintiff and the Class Members for all cancellations.  Such offers were specifically identified in Defendant's materially uniform Conditions of Carriage.

102.   Defendant made such offers in writing through the American's direct channels (such as American's direct-to-consumer sales website, www.aa.com, and the company's mobile applications) and through traditional travel agencies and online travel agencies.

103.   The terms of Defendant's offer to provide transportation services contained a definite promise by Defendant and gave Plaintiff and the Class Members

the power to agree to the terms of Defendant's offer to provide transportation services, including but not limited to, through the act of purchasing a ticket or accepting transportation on Defendant's aircraft.

104.   Plaintiff and the Class Members accepted Defendant's offer to provide transportation services, agreeing to the material terms contained in Defendant's offer.

105.   Plaintiff and the Class Members communicated their acceptance of Defendant's offer to Defendant by purchasing one or more tickets, booking transportation services with Defendant.

106.   The agreement between Plaintiff, the Class Members, and Defendant included an exchange of promises or value, i.e., consideration.  Here, Plaintiff and the Class Members provided Defendant with consideration in the form of amounts equal to the monetary value of the fare and all charges and taxes paid.

107.   Plaintiff and the Class Members performed all obligations and conditions required and expected of them or had a valid excuse for not performing any such obligations due to the COVID-19 pandemic.

108.   Defendant cancelled Plaintiff's and the Class Members' flights.

109.   Defendant has failed to provide and/or have outright refused to provide refunds to Plaintiff and the Class Members for such cancelled flights.  Defendant did so even though Defendant was contractually obligated to provide refunds to Plaintiff

and the Class Members in such circumstances.  As a result, Defendant has failed to perform and/or has materially breached its contracts with Plaintiff and the Class Members.

110.   Because of Defendant's failure to perform the contract, Plaintiff and the Class Members have been damaged and/or did not receive the benefits, payment, and/or performance to which they were entitled.

111.   As a result, Plaintiff and the Class Members are entitled to fair compensation in the form of complete refunds for all fares, charges, and taxes paid.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class Members request that the Court enter an order or judgment against Defendant including:

A. Certification of the action as a class action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, appointment of Plaintiff as Class Representative, and appointment of his counsel as Class Counsel;

B. Damages and refunds in the amount of unrefunded monies paid for American Airlines tickets;

C. Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited;

D. Pre-judgment and post-judgment interest on such monetary relief;

E. Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for cancelled flights;

F.  The costs of bringing this suit, including reasonable attorney's fees; and

G. All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## **JURY DEMAND**

Plaintiff demands trial by jury on his own behalf and on behalf of the Class Members.

DATED this 22nd day of April, 2020.

Respectfully submitted,

BY:   VAUGHT FIRM, LLC

*s/ Allen R. Vaught*
Allen R. Vaught
TX Bar No. 24004966

1910 Pacific Ave., Suite 9150
Dallas, TX 75201
(214) 675-8603
(214) 261-5159 (fax)
allen@vaughtfirm.com

Steve W. Berman
(*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
(206) 623-0594 (fax)
steve@hbsslaw.com

Daniel J. Kurowski
(*Pro Hac Vice* Forthcoming)
Whitney K. Siehl
(*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr.
Suite 2410
Chicago, IL 60611
(708) 628-4949
(708) 628-4950 (fax)
dank@hbsslaw.com
whitneys@hbsslaw.com

E. Adam Webb
(*Pro Hac Vice* Forthcoming)
G. Franklin Lemond, Jr.
(*Pro Hac Vice* Forthcoming)
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-9325
(770) 217-9950 (fax)
Adam@WebbLLC.com
Franklin@WebbLLC.com

*Attorneys for Plaintiff*