## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

_____ )

LEE WARD, JAMES SAUNDERS,        )
and WILLIAM HOLLOWAY,          )
on behalf of themselves and          )
all others similarly situated,         )      Case No. 4:20-cv-00371-O
                          )
      Plaintiffs,           )
                          )
v.                            )
                          )
AMERICAN AIRLINES, INC.,        )
                          )
      Defendant.          )
_____ )

## AMENDED COMPLAINT – CLASS ACTION

# TABLE OF CONTENTS

**Page**

NATURE OF ACTION ............................................................................................1

JURISDICTION AND VENUE ............................................................................3

PARTIES....................................................................................................................5

    A. Plaintiff Lee Ward ......................................................................................5

    B. Plaintiff James Saunders............................................................................8

    C. Plaintiff William Holloway .....................................................................10

    D. Defendant American Airlines, Inc...........................................................11

A.   Background ....................................................................................................11

B.   The Novel Coronavirus Shutdowns and American's Resulting Flight
    Cancellations .................................................................................................12

C.   American's Flight Cancellations Mount ......................................................17

D.   American's Refusal of Passenger Refunds for Cancelled Flights .................19

E.   The Department of Transportation Repeatedly Reminds Airlines
    Regarding Their Refund Obligations .............................................................21

F.   Complaints Regarding American's Refusal to Provide Passengers
    Refunds for Cancelled Flights Abound.........................................................23

CLASS ACTION ALLEGATIONS .......................................................................27

CAUSES OF ACTION ..........................................................................................35

    COUNT I BREACH OF CONTRACT .........................................................32

    COUNT II VIOLATIONS OF STATE CONSUMER PROTECTION ACTS 37

    COUNT III UNJUST ENRICHMENT ...........................................................43

    COUNT IV CONVERSION ..........................................................................45

    COUNT IV FRAUDULENT MISREPRESENTATION ................................46

PRAYER FOR RELIEF ........................................................................................47

JURY DEMAND ....................................................................................................48

Plaintiffs Lee Ward, James Saunders, and William Holloway, individually and on behalf of all others similarly situated (collectively referred to herein as "Plaintiffs"), based upon personal knowledge as to their own actions and based upon the investigation of counsel regarding all other matters, file this Amended Class Action Complaint against Defendant American Airlines, Inc. ("American"), alleging as follows:

## NATURE OF ACTION

1.      This Class Action Complaint comes during a time of unprecedented hardship for many Americans. Each day brings different news regarding the novel coronavirus COVID-19. Social distancing, sheltering-in-place, and efforts to "flatten the curve" have separated loved ones from their relatives, workers from their co-workers, and further isolated those already in or at risk of further isolation. Unemployment has skyrocketed nationwide. Nearly nine in ten Americans are or have been subject to a travel restriction, all to protect the health and welfare of the nation during this public health emergency.

2.      The separation caused by COVID-19 and related protective efforts has dramatically impacted travel, particularly air travel. The ability to travel is flat-out eliminated for many Americans, both financially and physically. A trip to the grocery store or pharmacy has been deemed a necessity and permitted; a spring break or summer trip with family or travel for a business meeting, is not.

3.      As a result, airlines, including Defendant, have slashed flight schedules, resulting in thousands of flight cancellations for thousands of passengers. But such passengers face additional hardship if they booked their flights with American. To add to the difficulties such passengers already face, American often refuses to issue monetary refunds to passengers with cancelled flights. It does so even though all airline passengers are entitled to a refund if the airline cancels a flight, regardless of the reason the airline cancels the flight. Instead, American represents it will only rebook and/or provide travel vouchers.

4.      The need for monetary refunds over travel vouchers remains pressing now. Travel vouchers provide little security in this public crisis, particularly where many individuals need money now to pay for basics like food and rent, not restrictive, temporary credits towards future travel.

5.      Reflecting the need to provide individuals with such assistance, the Coronavirus Aid, Relief, and Economic Security Act ("CARES") provided a bailout to the airlines, providing them about $58 billion in aid, including $5.8 billion to American alone.[1] But, despite the faucet of taxpayer money that has already begun to flow its way, American refuses to comply with the law or operate in the interests of its customers.

---

[1] http://s21.q4cdn.com/616071541/files/doc_news/American-Airlines-To-Receive-58-Billion-in-Payroll-Support-From-US-Department-of-the-Treasury-OPS-DIS-04-2020.pdf.

6.     American's actions have financially damaged Plaintiffs and the Class Members. Plaintiffs requested refunds for tickets on cancelled flights and were entitled to a refund. But, like so many other passengers, American denied those requests. Not only has American breached its contract with Plaintiffs and the Class, it has engaged in unfair and deceptive conduct through its policy to refuse refunds for cancelled and/or significantly delayed flights, thereby forcing customers into a rebooked flight or travel voucher instead of returning their money.

7.     As a result, Plaintiffs bring this action because Plaintiffs and the Class Members did not receive refunds for American cancelled flights, lost the benefit of their bargain, and/or suffered out-of-pocket loss and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter presented by this amended complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs.

9.      Plaintiffs allege that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiffs are citizens of the States of Arizona, Pennsylvania, and Texas, whereas Defendant is a citizen of Delaware and Texas for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Texas, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

10.     Venue is appropriate in this District because Defendant maintains its principal place of business within the Fort Worth Division of the Northern District of Texas. In addition, one of American's largest hubs (both in terms of passengers carried and the number of departures) is Dallas/Fort Worth International Airport, which is within the Northern District of Texas. Upon information and belief, events and transactions causing the claims herein, including American's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

11.     Furthermore, by purchasing a ticket and accepting Defendant's offer of air transportation, Plaintiffs, Class Members, and Defendant agreed to a choice of law provision that specifies Texas law applies. See Exhibit A.

## PARTIES

**A.     Plaintiff Lee Ward**

12.     Plaintiff Lee Ward is a citizen and resident of the State of Arizona. Plaintiff Ward is and continues to be immediately affected by the COVID-19 pandemic. Despite requesting and being entitled to a refund for his cancelled flight, American has refused to provide Plaintiff Ward a refund.

13.     On January 14, 2020, Plaintiff Ward purchased tickets for travel to occur March 12, 2020 through March 31, 2020. Plaintiff Ward was planning to travel to Lima, Peru from Las Vegas, Nevada, with a layover in Los Angeles. Plaintiff Ward's return flight was scheduled from Lima, Peru to Miami, Florida and then from Miami, Florida to Las Vegas, Nevada. The portion of this flight that was booked on American—the Miami to Las Vegas return leg—was cancelled by American. Plaintiff Ward purchased the tickets through American's agent, OneTravel.com, paying American and other airlines a total of $1,052.00 for the two tickets.

14.     On March 12, 2020, Plaintiff Ward traveled to Lima, Peru as planned.

15.     On or about March 27, 2020, OneTravel.com informed Plaintiff Ward that American and Latam Airlines had cancelled his return flights home.

16.     A few days prior to his return flight, Plaintiff Ward received a voicemail from an American Airlines customer service agent informing him that his March 31 flight from Lima, Peru to Las Vegas, Nevada had been cancelled and that the next flight American would be offering was on May 7.

17.     Plaintiff Ward also received two automated phone calls from American. The first call advised Mr. Ward that his March 31 flight from Miami to Las Vegas had been cancelled and that he had been re-booked on a flight from Miami to Dallas and then from Dallas to Las Vegas on April 1. The automated call also advised Plaintiff Ward that he could visit AA.com to view information regarding his flight or to see other available flights.

18.     Subsequently, Plaintiff Ward received a second automated call advising him that American Airlines had cancelled the April 1 flight from Miami to Dallas.

19.     At Plaintiff Ward's own expense he booked a return flight home from Peru on different airlines.

20.      Since returning from Peru, Plaintiff Ward has had repeated communications with Defendant requesting a refund.

21.     Defendant has formally acknowledged Plaintiff Ward's refund request and has provided regular updates about the status of that request. For example, on May 3, 2020, Defendant sent Plaintiff Ward an email stating, in part, as follows:

> Thank you for contacting American Airlines Customer Relations. This is an automated acknowledgement letting you know that we received

your comments. We typically respond within seven business days, but in some instances it may take a little longer. Should you need it, we have included a reference number assigned to your correspondence. It is located at the bottom of this message.

22.     Defendant did not respond within seven business days but, on May 15, 2020, sent a follow up email which also did not offer a refund or any information about the refund process. The email stated, in part:

> I've received your latest correspondence and the information has been noted.
>
> Regrettably, we are unable to forward copies of our previous correspondences; however, please feel free to share our prior response with whom you desire.
>
> Additionally, please know that American Airlines will only respond to customers/entities who contact us directly regarding any questions or concerns they may have.

23.     American has refused to refund Plaintiff Ward for its portion of his cancelled flight back to Las Vegas.

24.     On February 29, 2020, Plaintiff Ward purchased four tickets for travel to occur May 30, 2020 through August 3, 2020. Plaintiff Ward was planning to travel to Lima from Las Vegas, with a layover in Los Angeles. Plaintiff Ward's return flight was scheduled from Lima to Los Angeles and then to Las Vegas. The portion of this flight that was booked on American was the Los Angeles to Las Vegas portion of the return leg. Plaintiff Ward purchased the tickets through American's agent,

OneTravel.com, paying American and other airlines a total of $2,176.36 for the four tickets.

25.     American and other Airlines also cancelled.

26.     Plaintiff Ward has also requested a refund for his May 30, 2020 flight from American

27.     Despite Plaintiff Ward's repeated requests, American has refused to refund its portion of the May 30 fare.

28.     At the time of his ticket purchases, Plaintiff Ward understood that he would be entitled to a refund if his flight was cancelled. Plaintiff Ward was actually deceived by American regarding his right to a refund and his options following American cancelled flights. Plaintiff Ward seeks a refund because he does not know when or if he will be able to use a travel voucher.

**B.     Plaintiff James Saunders**

29.     Plaintiff James Saunders is a citizen and resident of the State of Pennsylvania. Plaintiff Saunders is and continues to be immediately affected by the COVID-19 pandemic. Despite requesting and being entitled to a refund for his cancelled flights, American has refused to provide Plaintiff Saunders a refund.

30.     On January 28, 2020, Plaintiff Saunders purchased five tickets for travel to occur April 9, 2020 through April 12, 2020. Plaintiff Saunders was planning to travel to New Orleans, Louisiana from Allentown, Pennsylvania, with a layover

in Charlotte, North Carolina. Plaintiff Saunders purchased the tickets through American's agent, Hotwire, paying American and other airlines a total of $4,167.05 for the five tickets.

31.    On or about April 4, 2020, American informed Plaintiff Saunders that it had cancelled his connecting flight between Charlotte, North Carolina and his final destination, New Orleans.

32.    American has refused to refund Plaintiff Saunders for his cancelled flights, despite extensive efforts with both American, as well as Hotwire. In April 2020, American's agents provided Plaintiff Saunders with mixed messages regarding his right to a refund, initially recognizing (correctly) that Plaintiff Saunders was eligible for a full refund, then later in the month rejecting his refund when the refund never arrived. After Plaintiff Saunders received a letter in the mail indicating that he could receive a refund, Plaintiff Saunders again called American and American's customer service agent informed him that "their I.T. person wrote the program weird so it said refund granted but it should have said refund not granted." Instead, American informed Plaintiff that he was limited to flight credits.

33.    At the time of his ticket purchase, Plaintiff Saunders understood that he would be entitled to a refund if his flight was cancelled. Plaintiff Saunders was actually deceived by American regarding his right to a refund and his options

following American cancelled flights. Plaintiff Saunders seeks a refund because he does not know when or if he will be able to use a travel voucher.

## C.   Plaintiff William Holloway

34.   Plaintiff William Holloway is a citizen and resident of the State of Texas. Plaintiff Holloway is and continues to be immediately affected by the COVID-19 pandemic. Despite requesting and being entitled to a refund for a cancelled trip, American has refused to provide Plaintiff Holloway a refund.

35.   On or about March 10, 2020, Plaintiff Holloway purchased two tickets for travel to occur on April 7, 2020. Plaintiff Holloway was planning to travel to Washington, D.C. from Austin, Texas, with a layover in Dallas-Fort Worth. Plaintiff Holloway purchased the tickets through American's agent, Expedia.com, paying American a total of $114.40 for the two tickets.

36.   Prior to his departure, American informed Plaintiff Holloway that it had cancelled his flights.

37.   Plaintiff Holloway's efforts to obtain a refund for his tickets have been unsuccessful. In April 2020, Plaintiff Holloway and/or his wife attempted to obtain a refund from Defendant for these cancelled flights, explaining the situation, and receiving standardized responses that American could not give him a refund. In addition, American agents told Plaintiff Holloway to speak with his travel agent,

while the travel agent's representative told him to speak with American, adding an additional layer of difficulty to Plaintiff Holloway's refund attempts.

38.    At the time of his ticket purchase, Plaintiff Holloway understood that he would be entitled to a refund if his flight was cancelled. Plaintiff Holloway was actually deceived by American regarding his right to a refund and his options following American cancelled flights. Plaintiff Holloway seeks a refund because he does not know when or if he will be able to use a travel voucher.

**D.    Defendant American Airlines, Inc.**

39.    Defendant American Airlines, Inc. is a Delaware corporation authorized to do business in Texas as a foreign corporation with a principal place of business at 1 Skyview Drive, Fort Worth, Texas 76155.

## FACTS

**A.    Background**

40.    In a typical service scenario, American operates 6,800 flights to over 350 airports in over 55 countries, with domestic hubs in Charlotte, Chicago–O'Hare, Dallas/Fort Worth, Los Angeles, Miami, New York–JFK, New York–LaGuardia, Philadelphia, Phoenix, and Washington, D.C.

41.    In 2019, American carried over 200 million customers, utilizing over 900 Airbus, Boeing, and Embraer aircraft. For its services, American posted $45.7 billion in operating revenue in the year ending December 31, 2019.

42.     American sells its airline seat inventory and fares through the American's direct channels (such as American's direct-to-consumer sales website, www.aa.com, and the company's mobile applications) and through traditional travel agencies and online travel agencies. With each ticket sale, American collects passenger identification information, including name, address, and telephone information.

43.     American has alliances with Air Tahiti Nui, Alaska Airlines, British Airways, Cape Air, Caribbean Airlines, Cathay Dragon, Cathay Pacific, China Southern Airlines, El Al, Fiji Airways, Finnair, Gol Transportes Aéreos, Hainan Airlines, Hawaiian Airlines, Iberia, Interjet, Japan Airlines, Jetstar Airways, Jetstar Japan, Korean Air, Malaysia Airlines, Qantas, Qatar Airways, Royal Jordanian, Seaborne Airlines, and SriLankan Airlines through its OneWorld alliance program.

44.     But regardless of the method by which American sells its tickets, American has breached its passenger contracts and engaged in unfair, deceptive, and unjust conduct through its refusal to issue refunds to passengers for coronavirus-related flight cancellations.

## B.     The Novel Coronavirus Shutdowns and American's Resulting Flight Cancellations

45.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that

had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus or COVID-19. By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

46.    Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

47.    The U.S. State Department warned travelers to avoid traveling to China and on January 31, 2020, the U.S. federal government restricted travel from China, thus beginning travel restrictions affecting passengers ticketed on domestic and international air travel to and from the United States.

48.    That same day, January 31, 2020, the U.S. Health and Human Services Secretary "determine[d] that a public health emergency exists and has existed since January 27, 2020, nationwide."[2]

49.    By February 29, 2020, COVID-19 restrictions continued to spread across the globe. As the number of global cases rose to nearly 87,000, the U.S. federal government issued its highest-level warning, known as a "do not travel" warning for areas in Italy and South Korea that are most affected by the virus. The

[2] https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx

The U.S. Department of Health & Human Services' declaration that a public health emergency exists was renewed on April 21, 2020, *see*
https://www.phe.gov/emergency/news/healthactions/phe/Pages/covid19-21apr2020.aspx.

government also banned all travel to Iran and barred entry to any foreign citizen who had visited Iran in the previous 14 days.

50.    On March 11, 2020, the World Health Organization declared COVID-19 a pandemic. That same day, U.S. officials announced yet another travel ban expansion, this time blocking most visitors from continental Europe to the United States.

51.    On March 13, 2020 the President of the United States of America issued the *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak ("Proclamation")*, proclaiming the COVID-19 outbreak constituted a national emergency in the United States, beginning March 1, 2020.[3]

52.    Travel restrictions domestically began on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of the drafting of this Class Action Amended Complaint, 316 million people in at least 42 states, 3 counties, 9 cities, the District of Columbia, and Puerto Rico are being urged to stay home.

---

[3] https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

53.    Indeed, various states, including Plaintiffs' home states and destinations, issued and implemented mandatory Stay-At-Home Orders. They are:

- Alabama, effective April 3, 2020

- Alaska, effective March 28, 2020

- Arizona, effective March 31, 2020

- California, effective March 19, 2020

- Colorado, effective March 26, 2020

- Connecticut, effective March 23, 2020

- Delaware, effective March 24, 2020

- District of Columbia, effective March 30, 2020

- Florida, effective April 3, 2020

- Georgia, effective April 3, 2020

- Hawaii, effective March 25, 2020

- Idaho, effective March 25, 2020

- Illinois, effective March 21, 2020

- Indiana, effective March 24, 2020

- Kansas, effective March 30, 2020

- Kentucky, effective March 26, 2020

- Louisiana, effective March 23, 2020

- Maine, effective April 2, 2020

- Maryland, effective March 30, 2020

- Massachusetts, effective March 24, 2020

- Michigan, effective March 24, 2020

- Minnesota, effective March 27, 2020

- Mississippi, effective April 3, 2020

- Missouri, effective April 3, 2020

- Montana, effective March 28, 2020

- Nevada, effective April 1, 2020

- New Hampshire, effective March 27, 2020

- New Jersey, effective March 21, 2020

- New Mexico, effective March 24, 2020

- New York, effective March 22, 2020

- North Carolina, effective March 30, 2020

- Ohio, effective, March 23, 2020

- Oklahoma, effective March 24, 2020

- Oregon, effective March 23, 2020

- Pennsylvania, effective April 1, 2020

- Rhode Island, effective March 28, 2020

- Tennessee, effective April 2, 2020

- Texas, effective April 2, 2020

- Virginia, effective March 30, 2020

- Vermont, effective March 25, 2020

- Washington, effective March 23, 2020

- West Virginia, effective March 24, 2020

- Wisconsin, effective March 25, 2020.

54.     On March 29, 2020, the President of the United States of America announced the extension of social distancing guidelines until April 30, 2020.

55.     On March 31, 2020, the United States Department of State issued a Global Level 4 Health Advisory not to travel.[4]

**C.     American's Flight Cancellations Mount**

56.     As the restrictions expanded and virus fears mounted, American cancelled flights in the United States because of the spreading impact of the coronavirus.

57.     On March 10, 2020, American announced it was reducing international capacity 10% and domestic capacity 7.5%, with continued adjustments as needed. Among the cuts was a 55% slash in trans-Pacific travel.

---

[4] https://travel.state.gov/content/travel/en/traveladvisories/ea/travel-advisory-alert-global-level-4-health-advisory-issue.html.

58.    On March 13, 2020, American announced it would be reducing its international flight capacity another 34%, including a 50% reduction in April trans-Atlantic flights.

59.    On March 16, 2020, American announced it was reducing international capacity by 75% year over year—from March 16 to May 6—and further anticipated that its domestic capacity in April would be reduced by 20% compared to last year, and May's domestic capacity will be reduced by 30% on a year over year basis.

60.    The announced reductions meant that American was grounding 55,000 flights in April and was parking 450 planes—about half of its fleet—in response to decreased demand and travel restrictions due to the COVID-19 pandemic.

61.    All long-haul international flights were suspended through May 6, including all routes from Miami International Airport to Aruba, Brazil, Chile, Colombia, Ecuador, Guatemala, El Salvador, Saint Maarten, and Peru.

62.    On March 27, 2020, American announced it was suspending 60% of its capacity in April as compared to the same period in 2019 and was planning to suspend up to 80% of its capacity in May compared to the same period in 2019.

63.    Ultimately, on April 2, 2020, American announced that it was suspending more than 60% of its total international capacity this summer compared to the same peak period in 2019, which included an 80% reduction in Pacific

capacity, 65% reduction in Atlantic capacity, and 48% reduction in Latin America capacity.

**D.    American's Refusal of Passenger Refunds for Cancelled Flights**

64.    As American announced flight cancellations (combined with decreased domestic bookings), American took a variety of steps to make it difficult, if not impossible, for consumers to receive any refund on pandemic cancelled flights. Defendant wanted to retain the money paid to Defendant, given the severe economic losses it is incurring related to pandemic flight cancellations. It did so despite consumers' right to receive a refund for unused transportation, even for non-refundable tickets.

65.    Pursuant to their Conditions of Carriage, if American cancelled a flight or changed a flight time by over four hours, passengers could receive a full refund, even for a "non-refundable" ticket.

66.    However, American is focused on keeping passenger money through providing travel credits, not refunds. The front page of www.aa.com has a "Coronavirus Travel Updates" banner and a blue link entitled "Travel updates and making changes to your trip" that encourage consumers to change or cancel their flight. The "Coronavirus Travel Updates" section of the website notes a customer is "allowed to make a change to your trip once" and details that American will waive the change fee.

67.    With regard to cancelled flights, the "Coronavirus Travel Updates" section of the website states "We'll send you an email with the information you'll need, including your ticket number. Keep this handy so you can refer to it when you call Reservations to rebook."

68.    A refund request form is not referenced on American's "Coronavirus Travel Updates," and is only located by searching the website specifically for the refund request form. American also informs customers that it will "process cash and check refunds within 20 days of receiving all your paperwork."

69.    American's policy changes due to the pandemic primarily focus on encouraging consumers to change their flight.

70.    Indeed, under its current Coronavirus Travel Updates page, American continues to hide passengers' rights to a refund for cancelled flights:[5]



⊙ If your flight is canceled

We'll send you an email with the information you'll need, including your ticket number. Keep this handy so you can refer to it when you call Reservations to rebook.

Contact Reservations »

71.    American's approach to refunds follows its stated liquidity concerns. As noted in the company's Form 10-Q Quarterly Report for the period ending March 31, 2020:[6]

> In light of the effect COVID-19 is having on demand for
> air travel and, in turn, capacity, we have seen an increase

---

[5] https://www.aa.com/i18n/travel-info/coronavirus-updates.jsp (last visited July 10, 2020).

[6] https://americanairlines.gcs-web.com/static-files/aa139a6e-987e-405c-912c-655b3662a641.

in demand from consumers for refunds on their tickets, and we anticipate this will continue to be the case for the near future. Requests for refunds may reduce our liquidity and risk triggering liquidity covenants in these processing agreements and, in doing so, could force us to post cash or other collateral with the credit card processing companies in respect of advance ticket sales. The imposition of holdback requirements, up to and including 100% of relevant advanced ticket sales, would materially reduce our liquidity. Likewise, other of our commercial agreements contain provisions that allow other entities to impose less-favorable terms, including the acceleration of amounts due, in the event of material adverse changes in our financial condition. For example, we maintain certain letters of credit, insurance- and surety-related agreements under which counterparties may require collateral, including cash collateral.

**E.    The Department of Transportation Repeatedly Reminds Airlines Regarding Their Refund Obligations**

72.    American's efforts to refuse and deny customers refunds also contradicts established transportation requirements that operate for the benefit and protection of airline consumers.

73.    According to the Department of Transportation: "If your flight is cancelled and you choose to cancel your trip as a result, you are entitled to a refund for the unused transportation—even for non-refundable tickets. You are also entitled to a refund for any bag fee that you paid, and any extras you may have purchased, such as a seat assignment."[7]

---

[7]https://www.transportation.gov/individuals/aviation-consumer-protection/flight-delays-cancellations.

74.     Put another way, "[a] passenger is entitled to a refund if the airline cancelled a flight, regardless of the reason, and the passenger chooses not to be rebooked on a new flight on that airline."[8]

75.     Passengers are similarly entitled to a refund if an airline makes "a significant schedule change and/or significantly delays a flight and the passenger chooses not to travel."[9]

76.     Not only is American refusing to refund passengers for cancelled flights, American is misleading passengers about their rights, including their rights under the Conditions of Carriage, by making it difficult to locate information about refunds, refusing refunds, unilaterally providing travel vouchers if a passenger is unable to contact an American customer service representative, and waiting until the last minute to cancel flights to induce passengers to cancel their flights.

77.     Indeed, under the Conditions of Carriage, American explicitly notes that such requirements apply to Plaintiffs and the Class Members: "If these Conditions of Carriage conflict with applicable laws, rules, or security directives from U.S. or foreign government agencies, the applicable laws, rules, or security directives will govern." See Exhibit A.

---

[8] https://www.transportation.gov/individuals/aviation-consumer-protection/refunds.

[9] Id.

**F.      Complaints Regarding American's Refusal to Provide Passengers Refunds for Cancelled Flights Abound**

78.      Customer complaints about Defendant's refund process have received widespread attention on the Internet and media outlets such as *USA Today* and the "Travel Troubleshooter" column in many newspapers. NBC5 in Dallas-Fort Worth even ran an expose on a local victim of Defendant. One example of the innumerable complaints illustrates the frustration of consumers seeking refunds from American:

### American Airlines is Openly Defying DOT Refund Regulations

We recently wrote about the rules for airline refunds. Those regulations dictate that an airline must process a credit card refund within 7 business day. The Department of Transportation even went so far as to put an enforcement notice out to airlines to remind them of its refund policies. Delta and other airlines have class action lawsuits filed already for alleged violations of these rules.

Well, I'm now having trouble getting my refund. Over 14 days ago, I contacted American Airlines to request a refund. My husband and I had a flight to Miami for the end of this week. American canceled our flight. Under AA's policy for tickets originally issued before April 8, 2020, that cancelation warrants a full refund if we decide to not want to take another flight. Due to the uncertainty of the outbreak, we decided to cancel the flight.

### AA Customer Relations

I received a refund denial email today claiming that we voluntarily canceled the flight. Immediately, I called AA and inquired about the response to our refund request. I mentioned that the agent told me the flight was refundable at the time of cancelation. I also mentioned DOT regulations require a full refund for canceled flights. Under AA's policy noted above and DOT regulations, the flight was fully refundable.

The customer service representative informed me that even if it was refundable, it is taking a long time to get refunds. Again, I noted the policy laid out by DOT that requires a processed refund within 7 business days. As of today, over two weeks after canceling, the refund isn't processed.

The agent called another customer relations agent. The agent informed her that we have to wait up to 10 <u>more</u> days for the refund to be processed. That means that it will be over three weeks by the time the refund will be processed since we originally canceled it.

## American Airlines Told Us To Be Flexible

The customer service representative then old us to be "flexible" because AA is going through a hard time. However, this is not a matter of a few days. AA was politely reminded of that rule and in response told us to be flexible. That means the airline is openly ignoring federal government regulations.

I am submitting a complaint to the DOT. I'm doing that because it's important to hold the airlines accountable during this time. It's interesting we got an email denying the refund, but as soon as we highlighted DOT regulations and AA's own policy, the agent told us the email was sent in error.

## When Do Airlines Give Flexibility?

It's interesting for AA to tell a customer to be flexible, when they are so inflexible on a day-to-day basis. In the normal course of their business, AA doesn't take the time to be flexible when its customers need them to. In fact, AA eliminated their bereavement leave policy for passengers several years ago. And when passengers are stuck at a destination due to weather or mechanical issues they don't exactly jump to try to help clients with dire needs. It doesn't matter what your reason for needing flexibility (a job loss, death in the family, etc.), there are few circumstances where AA will be flexible with you.

## Bottom Line

I'd like to see if this is a line given to other people while dealing with AA. Has an AA customer service representative told you to be "flexible"? Two customer service representatives used the same line, and the reality has been that we have waited more than double the amount of time required for a refund. So one has to believe this is AA's current policy. If that is the case, I hope DOT holds them accountable for openly defying regulations. Other airlines have class action lawsuits against them, but I haven't seen one yet for American. These regulations are in place to protect consumers, and that's an important thing to stand by right now.

79.    Clearly, the problems suffered by Plaintiffs were systematic and illustrate Defendant's uniform policy and practice to avoid refunds at all costs.

80.    On April 3, 2020, the U.S. Department of Transportation ("DOT") disclosed that it "is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed." The DOT reminded carriers, including American, of their "longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier."[10]

81.    And more recently, on May 12, 2020, the DOT reiterated that continued efforts by airlines, including United, resulted in the release of a second enforcement

_____

[10] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020.pdf.

notice.[11] Under that notice, the DOT restated that "airlines have an obligation to provide a refund to a ticketed passenger when the carrier cancels or significantly changes the passenger's flight, and the passenger chooses not to accept an alternative offered by the carrier."

82.    Sensitive to such consumer complaints, members of the U.S. Senate have urged American in a joint letter to provide full cash refunds to passengers with cancelled flights during the pandemic:

> We write to urge your airline to issue full cash refunds to all customers who cancel their flights during the COVID-19 crisis, and to American citizens who encounter flight cancellations while stranded in countries that implemented travel restrictions. The ongoing pandemic is placing enormous financial strain on millions of Americans, and families need cash to pay for essentials such as food, housing, and medical care. In light of this pressing need and the unprecedented bailout—to the tune of $25 billion—that the airline industry just received from Congress, we believe your company has a moral responsibility to provide real refunds, not travel vouchers, to consumers, and to support State Department efforts to repatriate any American citizens trying to come home.[12]

83.    American not only has a moral responsibility to provide real refunds, it has a legal obligation to do so, particularly in light of the substantial bailout it received from American taxpayers, including Plaintiffs and the Class Members.

---

[11] https://www.transportation.gov/sites/dot.gov/files/2020-05/Refunds-%20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%202020%29.pdf.

[12] Letter to Doug Parker, CEO of American Airlines, from U.S. Senator Edward J. Markey, et al. (March 31, 2020).

## CLASS ACTION ALLEGATIONS

84.    Plaintiffs sue under Rule 23(a), (b)(2), and 23(b)(3) of the Federal

Rules of Civil Procedure, on behalf of themselves and a Class defined as follows:

> All persons in the United States who purchased tickets for travel on
> American Airlines flights scheduled to operate to, from, or within the
> United States from March 1, 2020 to the date of class certification and
> who were not issued a refund for cancelled and/or significantly changed
> flights.

Plaintiffs also intend to certify subclasses for claims on behalf of Class Members in

their respective home states. Excluded from any Class or Subclass is Defendant, any

entity in which Defendant has a controlling interest, and Defendant's legal

representatives, predecessors, successors, assigns, and employees. Further excluded

from any Class or Subclass is this Court and its employees. Plaintiffs reserve the

right to modify or amend the Class definition, as appropriate, during this litigation.

85.    The definition of the Class is unambiguous. Plaintiffs are members of

the Class they seek to represent. Class Members can be notified of the class action

through ticketing contact information and/or address lists maintained in the usual

course of business by Defendant.

86.    Under Rule 23(a)(1), Class Members are so numerous and

geographically dispersed that their individual joinder of all Class Members is

impracticable. The total number of members of the proposed Class is greater than

100 and exceeds the number required for jurisdiction under 28 U.S.C. § 1332(d)(2)

and (d)(5)(B). Given the thousands of flight cancellations made by American, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

87.    American has acted or refused to act on grounds generally applicable to Plaintiffs and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2), particularly those aspects of injunctive relief that seek to require American adhere to its voluntary undertakings and agreements with Plaintiffs and the Class Members.

88.    Plaintiffs show that common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and (b)(3). Some of the common legal and factual questions include:

    a.    Whether Defendant engaged in the conduct alleged;

    b.    Whether Plaintiffs and the Class Members are owed refunds for cancelled and/or significantly delayed flights;

    c.    Whether Defendant has a policy and/or procedure of denying refunds to Plaintiffs and Class Members for cancelled flights;

d.  Whether Defendant's policy and/or procedure of denying refunds to passengers on cancelled flights is unfair, deceptive, and/or misleading;

e.  Whether Texas law applies to the nationwide class;

f.  Whether Defendant breached its contracts with Plaintiffs and the Class Members;

g.  Whether Defendant violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

h.  Whether Defendant violated the common law of unjust enrichment;

i.  Whether Defendant converted Plaintiffs' and the Class Members' refunds and/or rights to refunds;

j.  Whether Defendant made fraudulent misrepresentations to Plaintiffs and the Class Members;

k.  Whether the doctrine of promissory estoppel applies to bar Defendant from denying Plaintiffs' and the Class Members' refunds; and

l.    The nature and extent of damages and other remedies to which the conduct of Defendant entitles Plaintiffs and the Class Members.

89.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions pale by comparison to the numerous common questions that predominate.

90.    The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts under Rule 23(a)(2)—Defendant's breaches of an identical contract and misconduct. In each case Defendant has cancelled flights yet denied refunds to Class Members for such cancelled flights.

91.    The Class Members have been damaged by Defendant's breaches and misconduct through American's practice of cancelling flights, yet denying refunds to Class Members for such cancelled flights.

92.    Plaintiffs' claims are typical of the claims of the other Class Members as required by Rule 23(a)(3). Plaintiffs paid for airline tickets, did not receive a refund for their cancelled flights, and were actually deceived.

93.    Plaintiffs show they and their counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiffs are familiar with the

basic facts that form the bases of the Class Members' claims. Plaintiffs' interests do not conflict with the interests of the other Class Members they seek to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously. Plaintiffs' counsel has successfully prosecuted complex class actions, including breach of contract and consumer protection class actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class Members.

94.    Consistent with Rule 23(b)(3), the class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class Members. The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

95.    The Northern District of Texas is also a desirable forum under Rule 23(b)(3)(C) because Defendant is headquartered in the Northern District of Texas, made pertinent decisions within this District, and information and relevant documents are expected to exist within this District.

96.     Further, under Rule 23(b)(3)(D), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

97.     Plaintiffs allege that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6) due to the thousands of flight cancellations made by American.

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

98.     Plaintiffs restate, re-allege, and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

99.     Defendant made offers to Plaintiffs and the Class Members to enter into a contract for Defendant to provide transportation services to Plaintiffs and the Class

Members through passenger tickets for air travel between specific locations, on specific flight numbers, on specific dates and times, at specific prices.

100.   Defendant's offer to provide transportation services to Plaintiffs and the Class Members also included Defendant's offers and terms that it would refund passengers for all cancellations and/or significantly changed flights.

101.   At all times relevant, such offers and terms were specifically identified in Defendant's Conditions of Carriage entered into between Plaintiffs and the Class Members on one hand, and Defendant on the other, at the time of ticket purchases.

102.   The Conditions of Carriage reflect Defendant's self-imposed terms and obligations voluntarily undertaken by Defendant.

103.   Moreover, Plaintiffs and the Class Members did not draft the terms of the Conditions of Carriage, rather, on information and belief, Defendant (and/or Defendant's agents at Defendant's direction) drafted all terms therein.

104.   Defendant made such offers in writing through American's direct channels (such as American's direct-to-consumer sales website, www.aa.com, and the company's mobile applications) and through traditional travel agencies and online travel agencies.

105.   Numerous sections of the Conditions of Carriage applicable at the time Plaintiffs and the Class Members purchased their tickets confirm passengers'

contractual rights to refunds where a flight has been cancelled and/or significantly changed, regardless of the reason for a cancellation or delay.

106.   Relevant portions of American's Conditions of Carriage (see Exhibit A) applicable at the time of Plaintiffs' ticket purchases include the following:

---

**Rebooking your delayed/canceled flight**

When your flight is canceled or a delay will cause you to miss your connection, we'll rebook you on the next flight with available seats. If you decide not to fly because your flight was delayed or canceled, we'll refund the remaining ticket value and any optional fees.

---

**Refundable tickets**

If you bought a refundable ticket, decide not to travel and want a refund, we'll pay:

- The full amount of the ticket if travel hasn't started
- The value of the unused travel if the ticket is partially used

We'll refund the original credit card within 7 days (allow 1-2 billing cycles for credit to show). We'll process cash and check refunds within 20 days of receiving all your paperwork.

Some requests may take longer, for example, tickets bought outside the U.S. in another currency or tickets that require research or verification. We are not liable for longer processing times.

Refunds FAQs »

**Non-refundable tickets**

We don't refund cash for non-refundable tickets. However, if you cancel your trip before departure, you can use the value of your ticket toward future travel on American. You'll need to rebook and travel within 1 year and pay a change fee plus any difference in fare.

We will refund a non-refundable ticket (or the value of the unused segment of your trip) to the original form of payment if:

- You cancel within 24 hours of booking (and booked at least 2 days before departure)
- We cancel your flight
- We make a schedule change that results in a change of 61 minutes or more
- A passenger or their travel companion dies.*
- Military orders require you to cancel your trip.*

*Supporting paperwork is required.

---

**Events beyond our control (Force Majeure)**

When there's an event we can't control like weather, a strike or other civil disorder, we may have to cancel, divert or delay flights. If your ticket still has value (if you were, for example, re-accommodated in a different class of service) we'll refund the unused portion to the original form of payment, but beyond that we are not liable.

Such "Force Majeure" events include:

- Meteorological or weather conditions
- Civil disturbances including war, embargoes or unsettled international conditions (real or threatened)
- Acts of terror
- Labor disputes that involve or affect our service
- Government regulations or requirements
- Shortage of labor, fuel or facilities of American or others
- Any fact not reasonably foreseen or predicted by American

International air transportation liability is regulated by the Montreal Convention and Warsaw Convention.

Montreal Convention and Warsaw Conventions »

---

107.   The eligibility of Plaintiffs and the Class Members for such refunds applies not only to "refundable" tickets, but also "non-refundable" tickets.

108.   Furthermore, American's Conditions of Carriage also incorporates Plaintiffs' and the Class Members' rights to refunds as required by the U.S. government: "If these Conditions of Carriage conflict with applicable laws, rules or security directives from U.S. or foreign government agencies, the applicable laws, rules or security directives will govern."

109.   The terms of Defendant's offer to provide transportation services contained a definite promise by Defendant and gave Plaintiffs and the Class Members the power to agree to the terms of Defendant's offer to provide transportation services, including but not limited to, through the act of purchasing a ticket or accepting transportation on Defendant's aircraft.

110.   Plaintiffs and the Class Members accepted Defendant's offer to provide transportation services, agreeing to the material terms contained in Defendant's offer.

111.   Plaintiffs and the Class Members communicated their acceptance of Defendant's offer to Defendant by purchasing one or more tickets, booking transportation services with Defendant.

112.   The agreement between Plaintiffs, the Class Members, and Defendant included an exchange of promises or value, i.e., consideration. Here, Plaintiffs and

the Class Members provided Defendant with consideration in the form of amounts equal to the monetary value of the fare and all charges and taxes paid.

113.   Plaintiffs and the Class Members performed all obligations and conditions required and expected of them and/or had a valid excuse for not performing any such obligations due to the COVID-19 pandemic.

114.   Moreover, the various national and state guidelines, laws, rules, and regulations related to the pandemic have frustrated Plaintiffs' and Class Members' ability to benefit from the Conditions of Carriage and ability to travel, thus making their domestic and/or foreign air travel impossible, or at a minimum, impracticable.

115.   Defendant cancelled and/or significantly changed Plaintiffs' and the Class Members' flights.

116.   Defendant has failed to provide and/or has outright refused to provide refunds to Plaintiffs and the Class Members for such cancelled and/or significantly changed flights.

117.   Defendant did so even though Defendant was contractually obligated to provide refunds to Plaintiffs and the Class Members in such circumstances.

118.   As a result, Defendant has failed to perform and/or has materially breached its contracts with Plaintiffs and the Class Members.

119.   Because of Defendant's failure to perform under the contract, Plaintiffs and the Class Members have been damaged and/or did not receive the refunds, benefits, payment, and/or performance to which they were entitled.

120.   As a result, Plaintiffs and the Class Members are entitled to fair compensation in the form of complete refunds for all fares, charges, and taxes paid.

## COUNT II

## VIOLATIONS OF STATE CONSUMER PROTECTION ACTS

121.   Plaintiffs restate, re-allege, and incorporate herein by reference the preceding paragraphs as if fully set forth herein and further alleges as follows:

122.   Count II is brought by Plaintiffs individually and on behalf of all similarly situated residents of each of the 50 states for violations of the state consumer protection acts including:[13]

    a.    the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, et seq.;

    b.    the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, et seq.;

---

[13] Plaintiff Ward previously served notice on Defendant regarding claims under Alabama Code § 8-19-10(e); Alaska Statutes § 45.50.535; California Civil Code § 1782; Georgia Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes, Title 5 § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3); Texas Business & Commercial Code § 17.505; West Virginia Code § 46A-6-106(b); and Wyoming Statutes § 40-12-109.

c.      the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-
        101, et seq.;

d.      the California Unfair Competition Law, Bus. & Prof. Code §§
        17200, et seq. and 17500, et seq.;

e.      the California Consumers Legal Remedies Act, Cal. Civ. Code §
        1750, et seq.;

f.      the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. §
        6-1-101, et seq.;

g.      the Connecticut Unfair Trade Practices Act, Conn. Gen Stat.
        Ann. § 42-110, et seq.;

h.      the Delaware Consumer Fraud Act, 6 Del. Code § 2513, et seq.;

i.      the D.C. Consumer Protection Procedures Act, D.C. Code § 28-
        3901, et seq.;

j.      the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat.
        Ann. § 501.201, et seq.;

k.      the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, et
        seq.;

l.      the Idaho Consumer Protection Act, Idaho Code. Ann. § 48-601,
        et seq.;

m.   the Illinois Consumer Fraud and Deceptive Business Practices Act, § 815 ILCS 505/2, et seq.;

n.   the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, et seq.;

o.   the Iowa Consumer Fraud Act, Iowa Code § 714.16, et seq.;

p.   the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, et seq.;

q.   the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, et seq.;

r.   the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, et seq.;

s.   the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.;

t.   the Maryland Consumer Protection Act, Md. Code Ann. Com. Law, § 13-301, et seq.;

u.   the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen Laws Ann. Ch. 93A, et seq.;

v.   the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et seq.;

w.   the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, et seq.;

x.   the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, et seq.;

y.   the Nebraska Consumer Protection Act, Neb. Rev. St. § 59-1601, et seq.;

z.   the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, et seq.;

aa.   the New Hampshire Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. § 358-A:1, et seq.;

bb.   the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, et seq.;

cc.   the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, et seq.;

dd.   the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, et seq.;

ee.   the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, et seq.;

ff.   the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15, et seq.;

gg.     the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, et seq.;

hh.     the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, et seq.;

ii.     the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, et seq.;

jj.     the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.;

kk.     the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-5.2(B), et seq.;

ll.     the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et seq.;

mm.     the South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, et seq.;

nn.     the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.;

oo.     the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann., Bus. & Con. § 17.41, et seq.;

pp.     the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13-11-175, et seq.;

qq.     the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, et seq.;

rr.     the Virginia Consumer Protection Act of 1977, Va. Code Ann. §
        59.1-199, et seq.;

ss.     the Washington Consumer Protection Act, Wash. Rev. Code §
        19.86.010, et seq.;

tt.     the West Virginia Consumer Credit And Protection Act, W. Va.
        Code § 46A, et seq.;

uu.     the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §
        100.18, et seq.; and

vv.     the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-
        12-101, et seq.

123.   Defendant's refusals to provide refunds for cancelled and/or significantly delayed flights—occurring in the course of conduct involving trade or commerce—constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes.

124.   Defendant's acts and practices regarding refunds for cancelled and/or significantly delayed flights were unfair and created a likelihood of confusion or misunderstanding and misled, deceived, or damaged Plaintiffs and Class Members in connection with the sale and refunds of airline tickets. Defendant's conduct also constituted the use or employment of deception, fraud, false pretense, false promise,

misrepresentation, or the knowing concealment, suppression, or omission of a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services, whether or not a person has in fact been misled, deceived, or damaged in violation of each of the above-enumerated statutes.

125.   Plaintiffs, on behalf of themselves and the Class Members, seek refunds, monetary damages, treble damages, and such other and further relief as set forth in each of the above-enumerated statutes.

## COUNT III

## UNJUST ENRICHMENT

126.   Plaintiffs restate, re-allege, and incorporate herein by reference the preceding paragraphs as if fully set forth herein. Plaintiffs allege this Count in the alternative to the extent an express contract controls the terms of the parties' agreement.

127.   At all times relevant hereto, Defendant sold Plaintiffs and the Class Members airline tickets for travel to, from, and within the United States.

128.   American has benefitted from its unlawful acts by receiving payments for the sale of tickets on cancelled flights, though American has no right to deny Plaintiffs and the Class Members refunds for tickets purchased on cancelled flights.

129.   Plaintiffs and members of the Class conferred upon Defendant a benefit in the form of money for tickets on specific flights. In paying for such flights, Plaintiffs and the Class Members conferred benefits that were non-gratuitous.

130.   Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiffs and members of the Class.

131.   Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness that, because of Defendant's unconscionable wrongdoing, Plaintiffs and members of the Class are entitled to refunds for cancelled flights.

132.   Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and the Class Members under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

133.   Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Plaintiffs and the Class Members are entitled to, and seek disgorgement and restitution, of Defendant's wrongful profits, ticket revenue on American cancelled flights, and benefits in a manner established by the Court.

## COUNT IV

## CONVERSION

134.   Plaintiffs restate, re-allege, and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

135.   Plaintiffs and the other members of the Class have an undisputed right to immediate refunds in lieu of rebookings and/or travel vouchers for their purchase of tickets on flights cancelled and/or significantly delayed by American.

136.   American wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiffs and members of the Class by limiting passengers on cancelled flights to either a rebooked flight or a travel voucher. All the while, Defendant has unlawfully retained the monies Plaintiffs and the Class Members paid for tickets on cancelled and/or significantly delayed flights.

137.   American deprived Plaintiffs and the other members of the Class of the value they paid for tickets on cancelled flights as well as their right to a refund.

138.   Plaintiffs and members of the Class have requested and/or demanded that American issue refunds for cancelled flights.

139.   This interference with the rights and services for which Plaintiffs and members of the Class paid damaged Plaintiffs and Class Members, in that they purchased tickets and, as such, American has deprived Plaintiffs and Class Members

of the right to their property, in this case, the amounts paid for tickets on cancelled flights.

140.   Plaintiffs and members of the Class may exercise their right to full refunds of all amounts paid for tickets on cancelled flights.

## COUNT IV

## FRAUDULENT MISREPRESENTATION

141.   Plaintiffs restate, re-allege, and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

142.   Defendant intentionally misrepresented to Plaintiffs and the Class Members regarding their rights to a refund on American cancelled flights, including as reflected in American's refund policies.

143.   Defendant intentionally and actively misrepresented to Plaintiffs and Class Members that passengers on cancelled flights are limited to rebookings or travel vouchers.

144.   Defendant's representations were false. At all times relevant, Plaintiffs and members of the Class are entitled to refunds on cancelled and/or significantly delayed flights, not just rebookings or travel vouchers.

145.   Defendant's misrepresentations were made fraudulently.

146.   Defendant made its representations with knowledge that Plaintiffs and Class Members were entitled to refunds on all cancelled and/or significantly delayed flights.

147.   Instead, when American made the representation regarding the rights to refunds and/or post-American flight cancellation options, American intended that Plaintiffs and the Class Members would rely on it.

148.   Plaintiffs and the Class Members relied on Defendant's representations.

149.   The reliance by Plaintiffs and the Class Members on Defendant's representations was reasonable.

150.   Defendant's representations proximately caused damage to Plaintiffs and the Class Members. By misrepresenting that passengers on American cancelled and/or significantly delayed flights are limited to rebookings or travel vouchers, Defendant financially damaged Plaintiffs and members of the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class Members request that the Court enter an order or judgment against Defendant including:

A. Certification of the action as a class action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, appointment of Plaintiffs as Class Representatives, and appointment of their counsel as Class Counsel;

B. Damages and refunds in the amount of unrefunded monies paid for American Airlines tickets;

C. Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited;

D. Pre-judgment and post-judgment interest on such monetary relief;

E. Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for cancelled flights;

F. The costs of bringing this suit, including reasonable attorney's fees; and

G. All other relief to which Plaintiffs and members of the Class may be entitled by law or in equity.

## **JURY DEMAND**

Plaintiffs demand trial by jury on their own behalf and on behalf of the Class Members.

DATED this 15th day of July, 2020.    Respectfully submitted,

VAUGHT FIRM, LLC

*/s/ Allen R. Vaught*
Allen R. Vaught
TX Bar No. 24004966
1910 Pacific Ave., Suite 9150
Dallas, TX 75201
(214) 675-8603 | (214) 261-5159 (fax)
allen@vaughtfirm.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292 | (206) 623-0594 (fax)
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949 | (708) 628-4950 (fax)
dank@hbsslaw.com
whitneys@hbsslaw.com

E. Adam Webb (*Pro Hac Vice*)
G. Franklin Lemond, Jr. (*Pro Hac Vice*)
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, Georgia 30339
(770) 444-9325 | (770) 217-9950 (fax)
Adam@WebbLLC.com
Franklin@WebbLLC.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on July 15, 2020, a true and correct copy of the foregoing was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record.

/s/ Allen R. Vaught
Allen R. Vaught