# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

LEE WARD, JAMES SAUNDERS, and )
WILLIAM HOLLOWAY, )
on behalf of themselves and all )
others similarly situated, )
                            )
      Plaintiffs, )
                            )
      v. )     Civil Action No.
                            )     4:20-cv-371
AMERICAN AIRLINES, INC., )
                            )
      Defendant. )

---

## DEFENDANT AMERICAN AIRLINES, INC.'S
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
## AND COMPEL ARBITRATION AND MEMORANDUM IN SUPPORT

Dee J. Kelly Jr., TX No. 11217250
Lars L. Berg, TX No. 00787072
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102-3194
Phone: 817-878-3524
Fax: 817-878-9280
Email: dee.kelly.2@khh.com
Email: lars.berg@kellyhart.com

James E. Brandt (admitted pro hac vice)
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Phone: (212) 906-1278
Fax: (212) 751-4864

Michael E. Bern (admitted pro hac vice)
Tyce R. Walters (admitted pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Email: michael.bern@lw.com
Email: tyce.walters@lw.com
Phone: (202) 637-2200
Fax: (202) 637-2201

Dated: August 13, 2020

# **TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     BACKGROUND ...........................................................................................4

     A.     Mr. Saunders and Mr. Holloway's Agreements To Arbitrate .................4

     B.     American's Conditions of Carriage .....................................................6

     C.     Plaintiffs' Claims .............................................................................7

III.    LEGAL STANDARD....................................................................................10

IV.    ARGUMENT................................................................................................11

     A.     Mr. Saunders And Mr. Holloway Should Be Required To Arbitrate Their Claims. ...........................................................................................11

     B.     Any Claims Not Subject To Arbitration Should Be Dismissed............16

           1.     The Airline Deregulation Act Preempts Plaintiffs' Claims .......16

                  a.     Plaintiffs' Claims Have A Connection With Or Reference To Airline Rates And Services ......................................18

                  b.     Plaintiffs' Claims Seek To Enforce State Law, Not Voluntary Obligations.................................................20

           2.     Plaintiffs Fail To State A Claim For Breach Of Contract.........21

                  a.     Mr. Saunders ...................................................................21

                  b.     Mr. Holloway ...................................................................22

                  c.     Mr. Ward...........................................................................23

V.      CONCLUSION.............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACE Am. Ins. Co. v. Huntsman Corp.*,
    255 F.R.D. 179 (S.D. Tex. 2008) ........................................................................................14

*Alford v. Dean Witter Reynolds, Inc.*,
    975 F.2d 1161 (5th Cir. 1992) ...........................................................................................16

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
    513 U.S. 265 (1995) ...........................................................................................................12

*Am. Airlines, Inc. v. Wolens*,
    513 U.S. 219 (1995)...............................................................................................2, 17, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................................10

*Associated Builders, Inc. v. Alabama Power Co.*,
    505 F.2d 97 (5th Cir. 1974) ...............................................................................................22

*Aviles v. Russell Stover Candies, Inc.*,
    No. 3:12-CV-01409-BF, 2012 WL 5508378 (N.D. Tex. Nov. 13, 2012) ...............................4

*Bar Group, LLC v. Bus. Intelligence Advisors, Inc.*,
    215 F. Supp. 3d 524 (S.D. Tex. 2017) ...............................................................................22

*Baumeister v. Deutsche Lufthansa, AG*,
    811 F.3d 963 (7th Cir. 2016) .............................................................................................24

*Brown v. United Airlines, Inc.*,
    720 F.3d 60 (1st Cir. 2013)................................................................................................20

*Buck v. Am. Airlines, Inc.*,
    476 F.3d 29 (1st Cir. 2007)........................................................................................19, 20

*Burcham v. Expedia, Inc.*,
    2009 WL 586513 (E.D. Mo. Mar. 6, 2009) ........................................................................15

*Cattaneo v. Am. Airlines, Inc.*,
    No. 15-CV-01748-BLF, 2015 WL 5610017 (N.D. Cal. Sept. 24, 2015) .................................3

*Chandler v. Phoenix Servs.*,
    419 F. Supp. 3d 972 (N.D. Tex. 2020) ...............................................................................22

*Crawford v. Beachbody, LLC*,
  No. 14–CV–1583, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)...........................................15

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)...........................................................................................................12

*Diveroli v. Am. Airlines, Inc.*,
  2019 U.S. Dist. LEXIS 190519 (S.D. Fla. 2019)...................................................................3

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)......................................................................................................11

*Ferrell v. Air EVAC EMS, Inc.*,
  900 F.3d 602 (8th Cir. 2018) .............................................................................................20

*Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*,
  No. 11 C 775, 2014 WL 551589 (N.D. Ill. Feb. 12, 2014)....................................................23

*Grant v. Houser*,
  469 F. App'x 310 (5th Cir. 2012) .......................................................................................11

*Green v. Serv. Corp. Int'l*,
  333 F. App'x 9 (5th Cir. 2009) ..........................................................................................13

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
  921 F.3d 522 (5th Cir. 2019) .............................................................................................13

*Hanna v. Ivy Funding Co., LLC*,
  No. 3:20-CV-231-L, 2020 WL 4220445 (N.D. Tex. July 23, 2020)......................................16

*Harrington v. Delta Air Lines, Inc.*,
  No. CIV.A. 04-12558-NMG, 2006 WL 1581752 (D. Mass. Feb. 21, 2006).........................20

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019).......................................................................................................13

*Hodges v. Delta Airlines, Inc.*,
  44 F.3d 334 (5th Cir. 1995) ..............................................................................................18

*Howell v. Alaska Airlines, Inc.*,
  994 P.2d 901 (Wash. App. 2000).......................................................................................19

*Iberiabank Corp. v. Ill. Union Ins. Co.*,
  953 F.3d 339 (5th Cir. 2020) .............................................................................................22

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*,
  920 F.3d 890 (5th Cir. 2019) ......................................................................................10, 11

*Jia v. Nerium Int'l LLC*,
    No. 3:17-CV-03057-S, 2018 WL 4491163 (N.D. Tex. Sept. 18, 2018).................................13

*Jones v. Halliburton Co.*,
    583 F.3d 228 (5th Cir. 2009) .................................................................................................12

*JP Morgan Chase & Co. v. Conegie*,
    492 F.3d 596 (5th Cir. 2007) ..........................................................................................13, 14

*King v. American Airlines, Inc.*,
    284 F.3d 353 (2d Cir. 2002).....................................................................................................24

*Luna v. Compania Panamena De Aviacion, S.A.*,
    851 F. Supp. 826 (S.D. Tex. 1994) ........................................................................................23

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
    283 F.3d 282 (5th Cir. 2002) .................................................................................................19

*Marsh v. First USA Bank, N.A.*,
    103 F. Supp. 2d 909 (N.D. Tex. 2000) ....................................................................................4

*Martin v. United Airlines, Inc.*,
    2017 WL 3687347 (April 18, 2017 W.D. Okla.)....................................................................19

*May v. Expedia, Inc.*,
    2018 U.S. Dist. LEXIS 167118 (W.D. Tex. July 19, 2018) ...................................................16

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)..................................................................................................17, 19, 20

*Moreno v. Expedia*,
    2018 WL 3059617 (W.D.N.C. June 20, 2018) .......................................................................15

*Northwest, Inc. v. Ginsberg*,
    134 S. Ct. 1422 (2014).............................................................................................................16

*Northwest, Inc. v. Ginsburg*,
    572 U.S. 273 (2014)............................................................................................................1, 17

*Onoh v. Northwest Airlines, Inc.*,
    613 F.3d 596 (5th Cir. 2010) .....................................................................................17, 18, 21

*Price v. Santander Consumer USA Inc.*,
    No. 3:19-CV-0742-B, 2019 WL 4318883 (N.D. Tex. Sept. 12, 2019) .............................11, 16

*Qatalys, Inc. v. Mountain Med. Techs., Inc.*,
    No. 3:14-CV-1784-L, 2015 WL 1401220 (N.D. Tex. Mar. 27, 2015)....................................22

*Rowe v. N.H. Motor Transp. Ass'n*,
 552 U.S. 364 (2008)........................................................................................................17

*Sanchez v. Aerovias De Mexico, S.A. De C.V.*,
 590 F.3d 1027 (9th Cir. 2010) .......................................................................................20

*Sherer v. Green Tree Servicing LLC*,
 548 F.3d 379 (5th Cir. 2008) ....................................................................................13, 14

*Starke v. Gilt Groupe, Inc.*,
 No. 13–CV–5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ..........................................15

*Statland v. Am. Airlines*,
 998 F.2d 539 (7th Cir. 1999) .......................................................................................1, 19

*Swift v. Zynga Game Network, Inc.*,
 805 F. Supp. 2d 904 (N.D. Cal. 2011) ...............................................................................15

*United Airlines, Inc. v. Mesa Airlines, Inc.*,
 219 F.3d 605 (7th Cir. 2000) ..........................................................................................20

*United States v. Allick*,
 No. CRIM.A. 2011-020, 2012 WL 32630 (D.V.I. Jan. 5, 2012)..............................................8

*Van Den Heuvel v. Expedia Travel*,
 2017 WL 5133270 (E.D. Cal. Nov. 6, 2017), *report and recommendation adopted*,
 2017 WL 6512945 (E.D. Cal. Dec. 20, 2017) .....................................................................15

*Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*,
 495 F.3d 191 (5th Cir. 2007) ..........................................................................................10

## STATUTES

9 U.S.C.
 § 2.........................................................................................................................11, 12
 § 3...............................................................................................................................16

49 U.S.C.
 § 40101(a)(6) .................................................................................................................17
 § 40101(a)(12)(A) ..........................................................................................................17
 § 41713(b)(1) .................................................................................................................17

## RULES

Fed. R. Civ. P. 12(b)(6)..........................................................................................................10

## REGULATIONS

19 C.F.R. § 122.49d ...............................................................................................................3

44 Fed. Reg. 9948, 9951 (Feb. 15, 1979) ..................................................................19

# OTHER AUTHORITIES

Convention for the Unification of Certain Rules for International Carriage by Air.....................24

https://en.wikipedia.org/wiki/Airline_codes#Accounting_number_or_prefix_code .....................9

https://en.wikipedia.org/wiki/Validating_carrier...........................................................9

https://www.census.gov/foreign-trade/reference/codes/aircarrier/archive/acprefix0.html........9, 23

https://www.latam.com/en_ca/travel-information/how-to-find-your-ticket-number/ .....................9

U.S. Dep't of Transp., FAQ Regarding Airline Ticket Refunds Given the Unprecedented
    Impact of the Covid-19 Public Health Emergency on Air Travel (May 12, 2020)
    (available at https://www.transportation.gov/sites/dot.gov/files/2020-05/Refunds-
    %20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%202020%
    29.pdf ....................................................................................................2

## I.     PRELIMINARY STATEMENT

Pursuant to Rules 12(b)(3), 12(b)(6), and the Federal Arbitration Act, American hereby respectfully moves this Court to compel arbitration and dismiss Plaintiffs' claims with prejudice.

In this case, three named plaintiffs bring a putative nationwide class action asserting that they are due refunds under the terms of American's Conditions of Carriage—which govern its contractual relationship with its customers—as well as under various state laws.  Those claims, however, should be dismissed for multiple, independent reasons.

To begin with, two of the three named plaintiffs in this action entered into binding arbitration agreements when purchasing their tickets from Expedia and Hotwire.  First Amended Complaint (FAC) ¶¶ 30, 35.  Those agreements expressly state that the purchaser must bring any claims against travel suppliers (like American) in individual arbitration or small claims court, and that travel suppliers like American are intended beneficiaries of the agreements to arbitrate.  As such, those plaintiffs' claims must be resolved by an arbitrator, and should be dismissed from this case with prejudice.

Any claim by any Plaintiff that this Court does not send to arbitration should be dismissed.  First, Plaintiffs' claims are all barred by the Airline Deregulation Act of 1978 (ADA), which preempts state law claims "having a connection with or reference to airline prices, routes, or services."  *Northwest, Inc. v. Ginsburg*, 572 U.S. 273, 283-284 (2014).  Suits demanding the refund of ticket prices for cancelled flights bear an obvious connection to airline rates and services.  As such, "states cannot regulate American's ticket refund practices either by common law or by statute."  *Statland v. Am. Airlines*, 998 F.2d 539, 542 (7th Cir. 1999). Plaintiffs' common law and statutory claims for unjust enrichment, conversion, fraudulent

1

misrepresentation, and purported violations of state consumer protection acts are therefore all preempted and should be dismissed.

Plaintiffs' contractual claims are likewise preempted by the ADA. While the ADA does not preempt contractual claims that would merely enforce a defendant's voluntary contractual commitments, *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232 n.8 (1995), breach-of-contract claims that seek to *expand* American's obligations beyond the scope of its Conditions of Carriage—and in particular those (like the ones asserted here) that seek to impose obligations that American expressly disclaimed—are preempted.

Second, Plaintiffs' contractual claims fail on the merits. Under the terms of American's Conditions of Carriage, passengers who hold valid tickets issued by American generally may request and obtain refunds from American if American cancels their flights. FAC Ex. A. at 24. But American "do[es]n't refund cash for non-refundable tickets" when *passengers themselves* "cancel [their] trip before departure." *Id.* Rather, such passengers may instead apply the "value of [their] ticket toward future travel on American," after "pay[ing] a change fee plus any difference in fare." *Id.* The Department of Transportation has similarly affirmed that airlines are not required to pay refunds to such passengers.

> Passengers who purchase a non-refundable ticket on a flight to, within, or from the United States that is still being operated without a significant change, but would like to change or cancel their reservation, are generally not entitled to a refund or a travel voucher for future use on the airline. This is true even if the passenger wishes to change or cancel due to concerns related to the COVID-19 public health emergency.[1]

---

[1] U.S. Dep't of Transp., FAQ Regarding Airline Ticket Refunds Given the Unprecedented Impact of the Covid-19 Public Health Emergency on Air Travel at 2 (May 12, 2020) ("DOT Guidance") (available at https://www.transportation.gov/sites/dot/files/2020-05/Refunds-%20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%202020%29.pdf).

Here, the ticket records on which Plaintiffs James Saunders and William Holloway's claims are premised confirm that they cancelled their tickets when their flights remained scheduled to operate.[2]  *See infra* at 7-8, 21-22.  As such, they are not owed a refund under American's Conditions of Carriage.

The claims of the final named plaintiff, Mr. Ward, fail for an even more basic reason: Mr. Ward did not purchase tickets issued by American.  While each of the two tickets for which he seeks a refund involved segments on multiple airlines, including American, Mr. Ward bought his tickets from a Chilean airline, LATAM.  Because Plaintiff admittedly never traveled on American, American never received any payment from LATAM (or Mr. Ward); there is thus nothing for American to refund.  In any event, even if Mr. Ward could establish a contractual relationship with American, he cannot show that American breached it.  Rather, American's Conditions of Carriage make clear that American "will only refund tickets *issued by American Airlines*."  FAC Ex. A at 25 (emphasis added).  Because his tickets were issued by LATAM, American had no contractual obligation to prove a refund.  Because no plaintiff states a claim on which relief can be granted, this action should be dismissed with prejudice.[3]

---

[2] The Amended Complaint repeatedly references and is premised on the ticket and travel records (including the ticket numbers and "passenger name records" or "PNRs") of all three Plaintiffs. Those records—which maintain information about a passenger's ticket reservation, *see, e.g.*, 19 C.F.R. § 122.49d—are integral to Plaintiffs' claims, *see, e.g.*, FAC ¶¶ 12-38, 42, 92, 99, 111, 127, 129, 139, and incorporated by reference in light of their complaint.  *See, e.g.*, *Diveroli v. Am. Airlines, Inc.*, 2019 U.S. Dist. LEXIS 190519 at *17 (S.D. Fla. 2019) (considering PNR on motion to dismiss); *Cattaneo v. Am. Airlines, Inc.*, No. 15-CV-01748-BLF, 2015 WL 5610017, at *1 (N.D. Cal. Sept. 24, 2015) ("The Court considers Plaintiff's itinerary under the incorporation by reference doctrine, as Plaintiff's complaint makes express reference to purchase of her airplane ticket and the details of her flight.").

[3] The complaint should be dismissed with prejudice.  After Mr. Ward filed his complaint in this case, American researched the facts of Mr. Ward's case and contacted Plaintiffs' counsel to explain that Mr. Ward's ticket was issued by LATAM and that American had received no money in relation to Mr. Ward's ticket.  American also provided documentation of both facts.

3

Much of Plaintiffs' complaint is devoted to making unfounded claims about American's treatment of its passengers in the wake of the COVID-19 pandemic. In reality, American has consistently met—and in many respects gone beyond—its contractual responsibilities to accommodate customers whose travel plans were affected by COVID-19. But Plaintiffs' rhetoric aside, this is ultimately a straightforward case. Because two of three named plaintiffs agreed to arbitrate, and all three plaintiffs fail to state a claim on which relief can be granted, the complaint should be dismissed.

## II.   BACKGROUND

### A.   Mr. Saunders and Mr. Holloway's Agreements To Arbitrate

The claims of Plaintiffs James Saunders and William Holloway each relate to tickets that they purchased through Hotwire and Expedia, respectively. FAC ¶¶ 30, 35. In the course of purchasing their tickets, Mr. Saunders and Mr. Holloway were required to accept the Hotwire and Expedia terms of use, including provisions requiring individual arbitration of claims brought against travel suppliers like American (who are expressly made beneficiaries of the arbitration agreement).[4]

To complete his booking with Hotwire, Mr. Saunders was required to click on a red "Complete Booking" button, which appeared next to the statement "I acknowledge that I have read and accept the … Terms of Use." App. 8. The words "Terms of Use" provided a hyperlink

---

Plaintiffs' counsel responded by indicating that they planned to amend the complaint to add additional plaintiffs. As shown, *infra*, those new Plaintiffs' claims are foreclosed by their arbitration agreement and fail to state viable claims in any event. Accordingly, Plaintiffs and their counsel have already had successive bites at the apple.

[4] Courts are free to consider evidence in support of a motion to compel arbitration. *See, e.g.*, *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 914 (N.D. Tex. 2000); *Aviles v. Russell Stover Candies, Inc.*, No. 3:12-CV-01409-BF, 2012 WL 5508378, at *4 (N.D. Tex. Nov. 13, 2012).

to the Hotwire Terms, which are prefaced with the following statement: "Please read …

carefully, as they contain important information about limitations of liability and resolution of

disputes through arbitration rather than in court."  App. 10.  The Hotwire Terms provide, among

other things:

- "You and Hotwire agree that any and all Claims will be resolved by binding arbitration, rather than in court, except that you and we may assert Claims on an individual basis in small claims court if they qualify.  This includes any Claims you assert against us, our subsidiaries, travel suppliers or any companies offering products or services through us (which are beneficiaries of this arbitration agreement)."  App. 11-12.

- "Any and all proceedings to resolve Claims will be conducted only on an individual basis and not in a class, consolidated, or representative action.  The arbitrator will have authority to decide issues as to the scope of this arbitration agreement and the arbitrability of Claims."  App. 12.

Similarly, to complete his booking with Expedia, Mr. Holloway was required to click on

a yellow "Complete Booking" button, which appeared next to the statement "I acknowledge that

I have read and accept the … Terms and Conditions."  App. 36.  The words "Terms and

Conditions" provided a hyperlink to the Expedia Terms of Use, which are prefaced with the

following statement: "Please read … carefully, as they contain important information about

limitations of liability and resolution of disputes through arbitration rather than in court."  App.

39.  The Expedia Terms of Use provide, in relevant part:

- "Any and all Claims will be resolved by binding arbitration, rather than in court, except that you and we may assert Claims on an individual basis in small claims court if they qualify. This includes any Claims you assert against us, our subsidiaries, travel suppliers or any companies offering products or services through us (which are beneficiaries of this arbitration agreement). This also includes any Claims that arose before you accepted these Terms of Use, regardless of whether prior versions of the Terms of Use required arbitration." App. 40.

- "Any and all proceedings to resolve Claims will be conducted only on an individual basis and not in a class, consolidated, or representative action. If for any reason a Claim proceeds in court rather than in arbitration, you and we each waive any right to a jury trial."  App. 41.

5

Both arbitration agreements are thus expressly applicable to claims against third-party travel suppliers like American, who are named as beneficiaries of the respective arbitration agreement. *See* FAC ¶ 30 (alleging American offered services through Hotwire); FAC ¶ 35 (alleging American offered services through Expedia).

### B.   American's Conditions of Carriage

When purchasing a ticket issued by American, the ticket incorporates American's Conditions of Carriage—a document setting forth a passenger's contractual rights and responsibilities on flights operated by American. FAC ¶ 101; *see also* FAC Ex. A at 8.[5] Those Conditions of Carriage expressly address when refunds are available in the event that a passenger elects to change or cancel his or her nonrefundable ticket. As the contract makes clear, American generally "do[es] not refund cash for non-refundable tickets." FAC Ex. A at 24. Instead, when a customer "cancel[s] [a] trip before departure," the Conditions of Carriage permit a customer to "use the value of [the] ticket toward future travel on American," so long as the passenger rebooks and travels within one year and pays a change fee plus any fare difference. *Id.*

The federal government has confirmed that passengers are not entitled to refunds for tickets they voluntarily cancel as a result of COVID-19 concerns. In particular, the Department of Transportation ("DOT") has explained that "[p]assengers who purchase a non-refundable ticket on a flight to, within, or from the United States that is still being operated without a

---

[5] Customers who purchase tickets via Hotwire or Expedia expressly agree to abide by American's conditions of carriage by agreeing the Hotwire or Expedia terms and conditions. *See* App. 42 ("[I]if you have purchased an airfare, please ensure you read the full terms and conditions of carriage issued by the Supplier, which can be found on the Supplier's website. You agree to abide by the terms of use of purchase imposed by any supplier with whom you elect to deal."); *see also* App. 14 (same).

significant change, but would like to change or cancel their reservation, are generally *not entitled to a refund or a travel voucher for future use on the airline. This is true even if the passenger wishes to change or cancel due to concerns related to the COVID-19 public health emergency*." *See supra* at 2 n.1.

By contrast, when *American* cancels a passenger's flight on American, a passenger with a valid ticket issued by American is generally entitled to request a refund for the value of his or her ticket (or the value of the unused segment of the passenger's trip), if the passenger opts not to fly on another available flight. *See* FAC Ex. A at 24; *see also id.* at 18 ("When your flight is canceled … we'll rebook you on the next flight with available seats. If you decide not to fly because your flight was … canceled, we'll refund the remaining ticket value and any optional fees."). The Conditions of Carriage specify, however, that American "will only refund tickets issued by American Airlines." *Id.* at 25.

### C.      Plaintiffs' Claims

Plaintiffs each allege that they were scheduled to fly on American flights in March, April, or May of 2020. Plaintiffs assert claims for breach of contract, violation of state consumer protection acts, unjust enrichment, conversion, and fraudulent misrepresentation, all principally due to American's alleged refusal to refund the costs of their nonrefundable tickets. FAC ¶¶ 98-150. Plaintiffs seek to represent a putative class consisting of all persons who purchased tickets for travel on American flights in the United States from March 1, 2020 onward and who were not issued a refund for cancelled or changed flights. FAC ¶ 84. The amended complaint asserts claims on behalf of three named plaintiffs:

**<u>Mr. Saunders</u>**:

Plaintiff James Saunders alleges that he purchased tickets with "American and other airlines" to travel on April 9-12, 2020, from Allentown, Pennsylvania to New Orleans,

Louisiana, with a layover in Charlotte, North Carolina.  FAC ¶ 30.  Mr. Saunders purchased his

tickets through the online travel agency (OTA) Hotwire.  *Id.*

Mr. Saunders' ticket records reveal that, on March 12, 2020, he called American's

reservations department and cancelled his tickets.  App. 66 at ¶ 12.[6]  Two weeks later, on March

28, 2020, Mr. Saunders called American to seek a refund.  App. 64 at ¶ 14.  Mr. Saunders does

not claim that his flights were cancelled, however, until April 4, 2020, FAC ¶ 31—nearly a

month after he cancelled his ticket.

**Mr. Holloway:**  Plaintiff William Holloway alleges that on March 10, 2020, he

purchased tickets for himself and another passenger for one-way flights on April 7, 2020 from

Washington, D.C. to Austin, Texas, with a layover in Dallas-Fort Worth.  FAC ¶ 35.  Mr.

Holloway purchased his tickets through the OTA Expedia.com.  *Id.*

Mr. Holloway's ticket records reveal that, on March 25, he cancelled his tickets with

American while those flights were scheduled to operate.  App. 72 at ¶ 7.[7]  Notably, he does not

allege that his flights were cancelled before that date; instead he vaguely alleges that American

cancelled his flights "[p]rior to his departure."  FAC ¶ 36.  In fact, his flights were not cancelled

until April 6—weeks after Mr. Holloway had already cancelled his ticket.  App. 79-84 (flight

record from FlightStats.com); *see United States v. Allick,* No. CRIM.A. 2011-020, 2012 WL

32630, at *4 & n.7 (D.V.I. Jan. 5, 2012) (taking judicial notice of FlightStats.com flight records).

**Mr. Ward:**

---

[6] The code "XS" stands for "segment cancelled."  *See* App. 76.  The "Received From" marker
indicates that the cancellation was made by Mr. Saunders.

[7] The code "XS" again stands for a cancelled segment.  *See* App. 76.  The "Received From" code
"EXP" indicates that Mr. Holloway cancelled his flight via Expedia (the parent of Hotwire).

Plaintiff Lee Ward's claims arise from two separate tickets.  FAC ¶ 13.  Mr. Ward first purchased a roundtrip ticket from LATAM Airlines via a travel agency named OneTravel.com. *Id.* at ¶¶ 13, 24.  That ticket (number 0457491357873) involved travel scheduled to depart on March 12, 2020 from Las Vegas, Nevada to Lima, Peru, via Los Angeles, California, and to return on March 31, 2020 from Lima to Las Vegas via Miami, Florida.  *Id.*; *see* App. 86; App. 92-93 at ¶ 1.  Pursuant to an interline agreement, LATAM has the ability to sell seats on American flight segments as part of the tickets that it sells to its customers.  One of the four segments that LATAM sold Mr. Ward—his return flight from Miami to Las Vegas—would have involved an American flight segment.  FAC ¶ 28.  The other segments were on other airlines. *See* App. 86-93.

Mr. Ward also purchased a second roundtrip ticket from LATAM via OneTravel.com. That ticket (number 0457506817764) involved travel from Las Vegas to Lima via Los Angeles, scheduled to depart on May 30, 2020, and returning to Las Vegas via Los Angeles on August 3, 2020.  FAC ¶ 24; *see also* App. 94, 99 at ¶ 1.  Again, only one of those four segments (from Los Angeles to Las Vegas on August 3) involved travel on an American flight segment.  FAC ¶ 12.

Mr. Ward does not allege that any of his tickets were issued by American.  In fact, they were not.  Each airline ticket is prefaced by a three-digit prefix corresponding to the carrier that issued the ticket.[8]  The two tickets about which Mr. Ward complains both begin with the prefix 045—corresponding to LATAM (formerly LAN)—not 001, the prefix applicable to flights issued by American.  *See, e.g.*, https://www.census.gov/foreign-trade/reference/codes/aircarrier/archive/acprefix0.html (noting American and LATAM's prefix

---

[8] *See* https://en.wikipedia.org/wiki/Airline_codes#Accounting_number_or_prefix_code; *see also* https://en.wikipedia.org/wiki/Validating_carrier.

numbers); https://www.latam.com/en_ca/travel-information/how-to-find-your-ticket-number/ (noting that tickets on LATAM begin with 045).  While LATAM is authorized to sell seats on American flight segments pursuant to an interline agreement with American, the tickets at issue were both unmistakably issued by LATAM.

Pursuant to the terms of its interline agreement with LATAM, American receives no funds from LATAM unless and until a passenger travels on American.  App. 113 (§ 8.1) ("Each issuing airline agrees to pay to each carrying airline the transportation charges applicable to the transportation *performed* by such carrying airline.") (emphasis added).[9]  Because Plaintiff admits that he did not actually travel on an American flight with respect to either ticket, American received no funds in relation to either ticket, and thus has no funds to refund.

## III.   LEGAL STANDARD

American brings this motion pursuant to Federal Rule of Procedure 12(b)(6) and the Federal Arbitration Act ("FAA").

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 679.  The "complaint's allegations must make relief plausible, not merely conceivable, when taken as true."  *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899-900 (5th Cir. 2019) (citation omitted).  Allegations "that are merely consistent with a defendant's liability, stop short of the

---

[9] Because Mr. Ward alleges that he purchased a ticket including flight segments on both LATAM and American, for which both carriers would receive money, FAC ¶¶ 13-15, this Court can consider the contract governing the issuance of such tickets, and the compensation of each carrier, to be incorporated by reference.  *See Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir. 2007).

line between possibility and plausibility of entitlement to relief, and thus are inadequate." *Id.* (citation omitted). When a motion to dismiss attaches documents referenced in the complaint, "the court can also properly consider those documents." *Id.*

Congress in enacting the Federal Arbitration Act directed courts to treat arbitration agreements as "valid, irrevocable, and enforceable." *See Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1621 (2018) (citing 9 U.S.C. § 2). The FAA establishes "a liberal federal policy favoring arbitration agreements." *Id.* (citation omitted). A party seeking to compel arbitration must only prove the existence of an agreement by a preponderance of the evidence. *Price v. Santander Consumer USA Inc.*, No. 3:19-CV-0742-B, 2019 WL 4318883, at *1 (N.D. Tex. Sept. 12, 2019) (citing *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (per curiam)). In determining "if evidence in support of a motion to compel arbitration is admissible, courts apply a similar standard as that applied to a motion for summary judgment." *Id.*

## IV.    ARGUMENT

### A.    Mr. Saunders And Mr. Holloway Should Be Required To Arbitrate Their Claims.

This Court should first grant American's motion to compel Plaintiffs Saunders and Holloway to arbitrate their claims, and subsequently dismiss their claims with prejudice. Those Plaintiffs, in purchasing their tickets through Expedia and Hotwire, agreed to resolve any claims against Expedia's or Hotwire's travel suppliers (such as American) through binding, individual arbitration[10]—and further agreed that that arbitration agreement could be enforced by travel suppliers such as American. App. 11-12, 40-41. The Federal Arbitration Act ("FAA") provides that these written agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C.

---

[10] Alternatively, Saunders and Holloway could attempt to pursue their claims in small claims court if their claims otherwise qualify. *See* App. 11, 40.

§ 2.  As such, Plaintiffs Saunders and Holloway must submit their claims to individual

arbitration.  *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Allied-*

*Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273 (1995).

In deciding whether to compel arbitration, courts in this Circuit follow a two-step inquiry.

First, they ask whether "the party has agreed to arbitrate the dispute" by determining "(1) is there

a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope

of that arbitration agreement." *Jones v. Halliburton Co.*, 583 F.3d 228, 233–34 (5th Cir. 2009)

(citation omitted).  Second, courts ask whether "any federal statute or policy renders the claims

nonarbitrable." *Id.* (citation omitted)).  Here, that analysis confirms that arbitration is proper.

Plaintiffs Saunders and Holloway entered into valid, enforceable arbitration agreements

that apply to their claims against American.  The Hotwire terms of service, for instance, provide

that "any and all Claims will be resolved by binding arbitration, rather than in court, except that

you and we may assert Claims on an individual basis in small claims court if they qualify."

Importantly, the terms further specify that this agreement to arbitrate "includes any Claims you

assert against … travel suppliers or any companies offering products or services through us

(which are beneficiaries of this arbitration agreement)."  App. 12.  Expedia's terms are materially

identical.  App. 40.  Both sets of terms also provide that "[a]ny and all proceedings to resolve

Claims will be conducted only on an individual basis and not in a class, consolidated, or

representative action."  App. 12, 41.  Those broad provisions govern claims brought by Plaintiffs

against American—a travel supplier to both Hotwire and Expedia.  And there is certainly no

federal statute or policy rending Plaintiffs' claims non-arbitrable.

There can be no serious question that Plaintiffs' arbitration agreements expressly cover

these particular claims.  But to the extent that Plaintiffs argue otherwise, resolution of that

question is itself contractually committed to the arbitrator, not this Court. In particular, the terms to which Mr. Saunders agreed expressly state that "[t]he arbitrator will have authority to decide issues as to the scope of this arbitration agreement and the arbitrability of Claims." App. 12. Moreover, both Saunders and Holloway's arbitration agreements provide that disputes will be governed by the arbitration rules of the American Arbitration Association (AAA). App. 12, 41. As the Supreme Court has explained, because those rules leave to the arbitrator "the power to resolve arbitrability questions," an agreement to adopt AAA rules amounts to a contractual agreement to allow the arbitrator to decide whether particular claims are arbitrable. *Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 528, 531 (2019); *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 537 (5th Cir. 2019) (by incorporating AAA's rules into arbitration agreement, "parties reached a clear and unmistakable agreement that the arbitrator would decide its jurisdiction and the arbitrability of any claim or counterclaim concerning disputes between parties who had agreed to arbitrate claims between them" (citation omitted)). Where, as here, "there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Jia v. Nerium Int'l LLC*, No. 3:17-CV-03057-S, 2018 WL 4491163, at *3 (N.D. Tex. Sept. 18, 2018) (citing cases).

American is entitled to enforce Plaintiffs' commitments to arbitrate. The Expedia and Hotwire terms and conditions expressly set forth Plaintiffs' agreement to arbitrate claims against third party travel suppliers, like American, and further provides that travel suppliers like American are intended beneficiaries of that provision. *See supra* at 5-6. The Fifth Circuit has made clear that if an "agreement specifies the circumstances in which a signatory is required to arbitrate his claims against a non-signatory, the terms of the contract govern." *Green v. Serv. Corp. Int'l,* 333 F. App'x 9, 11 (5th Cir. 2009) (citing *Sherer v. Green Tree Servicing LLC*, 548

F.3d 379, 381 (5th Cir. 2008)); *see also JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 600 (5th Cir. 2007) (non-signatory may invoke arbitration clause as a third-party beneficiary "if the intent to make someone a third-party beneficiary is clearly written or evidenced in the contract"). As such, "if an agreement specifically names a nonsignatory as a recipient of benefits under the contract, the third-party beneficiary theory will bind the nonsignatory to the agreement." *ACE Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 199 (S.D. Tex. 2008).

Here, the Expedia arbitration agreement expressly extends to "[c]laims you assert against us, our subsidiaries, travel suppliers or any companies offering products or services through us (*which are beneficiaries of this arbitration agreement*")."  App. 40 (emphasis added); *see also* App. 12 (same in Hotwire Terms).  There is no doubt, therefore, that American is entitled to invoke the arbitration agreement and that Plaintiffs are required to arbitrate their claims against American.  *See Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 382 (5th Cir. 2008) (finding motion to compel proper because the "terms of the Loan Agreement clearly identify when [the signatory to the arbitration agreement] may be compelled to arbitrate with a nonsignatory").

There is also no question that Plaintiffs are bound by their respective arbitration agreements.  To complete his booking, Mr. Saunders was required to click on a red "Complete Booking" button, which appeared next to the statement "By selecting to complete this booking I acknowledge that I have read and accept the … Terms of Use."  App. 8.  The words "Terms of Use" provided a highlighted hyperlink to the Hotwire Terms, which are prefaced with the following statement: "Please read … carefully, as they contain important information about limitations of liability and resolution of disputes through arbitration rather than in court."  App. 10.  Similarly, Mr. Holloway was required to click on a yellow "Complete Booking" button, which appeared next to the statement "By selecting to complete this booking I acknowledge that

14

I have read and accept the … Terms and Conditions."  App. 36.  The words "Terms and

Conditions" provided a highlighted hyperlink to the Expedia Terms, which are prefaced with the

following statement: "Please read … carefully, as they contain important information about

limitations of liability and resolution of disputes through arbitration rather than in court."  App.

39.

Courts routinely enforce terms and conditions to which Plaintiffs assent by affirmative

action, upon being informed that the action in question will constitute acceptance of those terms

and conditions.  *See Crawford v. Beachbody, LLC*, No. 14–CV–1583, 2014 WL 6606563, at *3

(S.D. Cal. Nov. 5, 2014) (forum selection clause binding where consumer clicked on button

marked "Place Order" and above button was statement informing user that by clicking the button

user was subject to the website's 'terms and conditions,' available via hyperlink); *Starke v. Gilt

Groupe, Inc.*, No. 13–CV–5497, 2014 WL 1652225, at *1–3 (S.D.N.Y. Apr. 24, 2014)

(arbitration clause in "terms of use" binding where consumer clicked "Shop Now" button next to

statement that informed user that "the consumer will become a Gilt member and agrees to be

bound by the "Terms of Membership," which were available next to the button as a hyperlink);

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 912 (N.D. Cal. 2011) (arbitration

clause enforceable where user clicked on button marked "accept," below which was statement in

small grey font indicating that clicking on the button meant accepting the hyperlinked "terms of

service").  Indeed, courts repeatedly have enforced the Expedia Terms in particular—including

its arbitration provisions.  *See, e.g.*, *Moreno v. Expedia*, 2018 WL 3059617, at *3 (W.D.N.C.

June 20, 2018) (granting motion to compel arbitration); *Van Den Heuvel v. Expedia Travel*, 2017

WL 5133270, at *2 (E.D. Cal. Nov. 6, 2017), *report and recommendation adopted*, 2017 WL

6512945 (E.D. Cal. Dec. 20, 2017) (same); *Burcham v. Expedia, Inc.*, 2009 WL 586513, *2, 4

15

(E.D. Mo. Mar. 6, 2009) (enforcing forum selection clause); *cf. May v. Expedia, Inc.,* 2018 U.S. Dist. LEXIS 167118 at *9-10 (W.D. Tex. July 19, 2018) (enforcing arbitration clause of Expedia subsidiary to which plaintiff assented by clicking "Continue").

Because Plaintiffs are required to arbitrate all of their claims against American, this Court should dismiss Saunders and Holloway's claims with prejudice.  Although the FAA provides by its terms for a "stay [of] the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."  *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Hanna v. Ivy Funding Co.*, *LLC*, No. 3:20-CV-231-L, 2020 WL 4220445, at *2 (N.D. Tex. July 23, 2020) (dismissing action with prejudice); *Price v. Santander Consumer USA Inc.*, No. 19-CV-0742, 2019 WL 4318883, at *6 (N.D. Tex. Sept. 12, 2019) (same).  Here, because all of the issues raised by Saunders and Holloway must be submitted to arbitration, their claims should be dismissed with prejudice.  That resolution particularly makes sense because the only other named plaintiff's claims warrant dismissal, *see infra* at 18-21, 23-24, such that "retaining jurisdiction and staying the action will serve no purpose."  *Alford*, 975 F.2d at 1164.  Accordingly, dismissal is appropriate.  At minimum, however, this Court should stay the proceeding pending resolution of the arbitration.

**B.      Any Claims Not Subject To Arbitration Should Be Dismissed**

**1.      The Airline Deregulation Act Preempts Plaintiffs' Claims**

In 1978, Congress enacted the ADA in order to "promote 'efficiency, innovation, and low prices' in the airline industry through 'maximum reliance on competitive market forces and on actual and potential competition.'"  *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1428 (2014) (quoting 49 U.S.C. §§ 40101(a)(6), (12)(A)).  The ADA sharply circumscribed state power to

regulate the airline industry "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992).

To effectuate those goals, the ADA expressly preempts "a State, political subdivision of a State, or political authority" from "enact[ing] or enforce[ing] a law, regulation, or other provision having the force and effect of a law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1)). This language "express[es] a broad preemptive purpose." *Morales*, 504 U.S. at 383. In keeping with that purpose, the ADA preempts any state regulatory or enforcement action targeting any conduct having "a connection with, or reference to airline rates, routes, or services," *id.* at 384-85, "even if a state law's effect on rates, routes, or services 'is only indirect,'" *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008). And because "the ADA's deregulatory aim can be undermined just as surely by a state common-law rule as it can by a state statute or regulation," the ADA preempts state common law to the extent it relates to airline rates, routes, or services. *See Northwest, Inc.*, 572 U.S. at 283-284; *Onoh v. Northwest Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010) (citation omitted).

In contrast to Plaintiffs' other claims, Plaintiffs' breach-of-contract claim is subject to different considerations. The ADA does not prevent courts from "affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995). That is because such suits do not constitute "state-imposed regulation of air carriers," but instead are merely "enforcement of contract terms *set by the parties themselves*." *Id.* at 222 (emphasis added). This "distinction between what the State dictates and what the airline itself undertakes confines Courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. As such, when a plaintiff cannot show

that "the airline breached its own, self-imposed undertaking," even breach-of-contract claims are "barred" by the ADA.  *Onoh*, 613 F.3d at 600-01.

These principles together dispose of Plaintiffs' claims, which are directly aimed at American's rates and services.  Because Plaintiffs' non-contractual claims seek to enforce state law and policies, not an airline's self-imposed obligations, the ADA preempts them.  And because Plaintiffs' final claim for breach of contract seeks to enlarge American's obligations beyond the scope of its agreement, that claim too is barred.

> a.    **Plaintiffs' Claims Have A Connection With Or Reference To Airline Rates And Services**

On their face, Plaintiffs' claims target American's rates and services.  Most obviously, the terms under which an airline will refund the rate paid by a customer plainly have a "connection with or reference to" that rate.  Additionally, Plaintiffs' claims relate to American's services.  As the Fifth Circuit has held, it is the "contractual features of air transportation" that "Congress intended to de-regulate as 'services' and broadly to protect from state regulation." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc) (citation and brackets omitted).  These "[e]lements of the air carrier service bargain include items such as ticketing … in addition to the transportation itself" that "are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline." *Id.*  Indeed, the government agency responsible for implementing the ADA noted shortly after the ADA's passage that because "a state may not interfere with the services that carriers offer in exchange for their rates and fares," mandating "liquidated damages for bumping (denial of boarding) … would clearly be 'service' regulation within the meaning of [the ADA]." *Id.* at 337 (quoting 44 Fed. Reg. 9948, 9951 (Feb. 15, 1979)).  The same is true of state law efforts to require refunds.

For those reasons, it is no surprise that courts repeatedly have held that claims for refunds are "related to the price, route, or service of an airline" and are pre-empted. *See, e.g., Martin v. United Airlines, Inc*., 2017 WL 3687347, at \*5 (April 18, 2017 W.D. Okla.) (concluding "there is no dispute that [issuance of money-credits for cancelled flights] relate to defendant's prices and services," and therefore are pre-empted); *Buck v. Am. Airlines, Inc.,* 476 F.3d 29, 36 (1st Cir. 2007) (holding that claim for refund of taxes and fees was pre-empted because it related to an air carrier price and rates) (collecting cases); *Statland v. Am. Airlines, Inc.,* 998 F.2d 539, 542 (7th Cir. 1993) (finding it "obvious that canceled ticket refunds relate to rates"); *Howell v. Alaska Airlines, Inc.,* 994 P.2d 901, 905 (Wash. App. 2000) ("challenge to [airline's] refusal to refund the price of a nonrefundable ticket is preempted by the ADA"). The Fifth Circuit, too, has recognized that the ADA preempts "application of Texas common law in a way that would regulate American's pricing policies … and reservation practices." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.,* 283 F.3d 282, 287 (5th Cir. 2002).[11]

The ADA also preempts not only those claims that expressly reference airlines' rates and services, but also those that would have a "significant impact upon the fares they charge." *Morales*, 504 U.S. at 390. Here, "beyond Plaintiffs' claims' express reference to fares, it is clear as an economic matter that those claims would have the forbidden significant effect upon fares." *Id.* at 388. Obviously, altering an airlines' obligations to refund the costs of flights would necessarily impact the fares charged. *See Buck v. Am. Airlines, Inc.,* 476 F.3d 29, 36 (1st Cir. 2007) ("freshman-year economics" dictates that claim for refund of taxes and fees was pre-

---

[11] Even other plaintiffs seeking refunds from other airlines have acknowledged that the ADA preempts non-contractual claims like those Plaintiffs advance here. Mem. in Support of Transfer, *IN RE: COVID-19 Airfare Refund Litigation*, MDL No. 2957 (June 16, 2020) ("Each of the Actions alleges breach of contract. Most of them allege it as the sole cause of action because other claims are likely preempted by the Airline Deregulation Act of 1978.").

empted because it would have a significant impact on fares); *Sanchez v. Aerovias De Mexico, S.A. De C.V.*, 590 F.3d 1027, 1030 (9th Cir. 2010) (same).

> b.    **Plaintiffs' Claims Seek To Enforce State Law, Not Voluntary Obligations**

Plaintiffs' claims are therefore preempted except insofar as they "seek[] recovery solely for the airline's alleged breach of its own, self-imposed undertakings," with "no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 228, 233. Plaintiffs' claims cannot fit within that narrow exception.

Plaintiffs' claims for violation of state consumer protection acts, unjust enrichment, conversion, and fraudulent misrepresentation each on their face seek to enforce state law and policy; not one of those claims enforces an obligation voluntarily assumed by American. Indeed, the Supreme Court has specifically held—twice—that the ADA prohibits "enforcement of [states'] general consumer protection statutes." *Morales*, 504 U.S. at 378; *Wolens*, 513 U.S. at 224-25 (holding that ADA preempted application of Illinois Consumer Fraud and Deceptive Business Practices Act, as applied to airline mileage programs). And federal courts have similarly rejected attempts to enforce state common law doctrines of the sort that Plaintiffs raise here. *See, e.g.*, *Brown v. United Airlines, Inc.*, 720 F.3d 60, 71 (1st Cir. 2013) ("Unjust enrichment claims do not fall within the *Wolens* exception. Virtually by definition, unjust enrichment turns on sources external to any agreement between the parties."); *Ferrell v. Air EVAC EMS, Inc.*, 900 F.3d 602, 607 (8th Cir. 2018) (unjust enrichment); *Harrington v. Delta Air Lines, Inc.*, No. CIV.A. 04-12558-NMG, 2006 WL 1581752, at *1 (D. Mass. Feb. 21, 2006) (unjust enrichment); *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir. 2000) (fraudulent inducement). Accordingly, Plaintiffs' non-contractual claims are preempted.

Breach of contract claims, by contrast, are not *per se* preempted by the ADA.  But as the Fifth Circuit has explained, even breach of contract claims will be held preempted unless "(1) the claim alleged only concerns a self-imposed obligation; and 2) no enlargement or enhancement of the contract occurs based on state laws or policies external to the agreement."  *Onoh*, 613 F.3d at 600.  Here, however, as discussed below, Plaintiffs are not entitled to a refund under the terms of Americans' Conditions of Carriage.  Because Plaintiffs seek to impose an obligation to provide a refund that extends beyond any obligation that American voluntarily assumed, this claim too is preempted.

### 2.    Plaintiffs Fail To State A Claim For Breach Of Contract

Finally, Plaintiffs' contractual claims fail on their own terms.  Under the terms of American's Conditions of Carriage, customers who hold valid tickets issued by American generally may elect a refund when American cancels their flights.  FAC Ex. A at 18  But as the ticket records on which their claims are premised make clear, none of the Plaintiffs are such customers.  Accordingly, Plaintiffs fail to state a contractual claim on which relief can be granted.

#### a.    Mr. Saunders

There can be no serious dispute that under the terms of American's Conditions of Carriage, a passenger who voluntarily cancels his or her non-refundable ticket is not entitled to a refund.  *See* FAC Ex. A at 24 ("We don't refund cash for non-refundable tickets" when passengers themselves "cancel [their] trip before departure.").  Rather, such passengers may instead apply the "value of [their] ticket toward future travel on American," after "pay[ing] a change fee plus any difference in fare."  *Id.*  The Department of Transportation has likewise affirmed that airlines are not obligated to provide refunds in such a case.  *See supra* at 2 & n.1.

21

Mr. Saunders asserts that on April 4, 2020, American informed him that it had cancelled the segment of his itinerary between Charlotte, NC and New Orleans, LA.  FAC ¶ 31.  That flight was scheduled for April 9, 2020.  FAC ¶ 30.  The ticket records on which Saunders premises his cause of action, however, establish that he cancelled his ticket *one month earlier*, on March 12, 2020.  App. 64-66.[12]  His ticket records further show that he called American on March 28, 2020 to request a refund—over a week *before* he claims his flight was cancelled by American.  App. 64 at ¶ 14.  Because Mr. Saunders voluntarily cancelled his non-refundable ticket, he is not entitled to a refund under the terms of American's Conditions of Carriage.  *See* FAC Ex. A at 24.

b.    **Mr. Holloway**

The same considerations doom Mr. Holloway's claim.  Mr. Holloway's ticket records indicate that on March 25, 2020, he cancelled his flight via Expedia, the OTA with whom he initially booked his flight.  App. 72 at ¶ 7.  Because Mr. Holloway cancelled his ticket when his flights were still scheduled to operate, he is not entitled to a refund under American's Conditions of Carriage.  As such, his breach of contract claim likewise fails.

---

[12] Because Plaintiffs' ticket records are the basis of their complaint and are attached to this motion, they are properly considered in support of American's motion to dismiss.  *See, e.g.*, *Chandler v. Phoenix Servs.*, 419 F. Supp. 3d 972, 980 (N.D. Tex. 2020); *Bar Group, LLC v. Bus. Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, 541 (S.D. Tex. 2017); *Iberiabank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020).  Any allegations contradicted by those documents are properly disregarded.  *See, e.g.*, *Qatalys, Inc. v. Mountain Med. Techs., Inc.,* No. 3:14-CV-1784-L, 2015 WL 1401220, at *5 (N.D. Tex. Mar. 27, 2015) (collecting cases); *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

c.    **Mr. Ward**

Mr. Ward's claim fails for a host of reasons: because his tickets were issued by LATAM and he never flew on American, American never received any money for his tickets; it therefore has no money to refund. And even if Mr. Ward could establish a contractual relationship with American, American's Conditions of Carriage make clear that it pays refunds only with respect to tickets issued by American. As a result, Mr. Ward does not come close to stating a claim for breach of contract against American.

To begin with, Mr. Ward is seeking a refund from the wrong party. Mr. Ward's tickets were issued by LATAM—not American. As explained above, the two tickets on which Mr. Ward premises his claim are numbered 0457491357873 and 0457506817764. *See* App. 86, 94; *supra* at 8-10. It is public record that tickets beginning with 045 are issued by LATAM (formerly LAN)—whereas 001 is the prefix applicable to flights issued by American. *See supra* at 9-10; https://www.census.gov/foreign-trade/reference/codes/aircarrier/archive/acprefix0.html.

American received no money in relation to Mr. Ward's tickets. Mr. Ward's tickets were issued by LATAM under a so-called "interline" agreement, in which one airline (the issuing airline) is "authorized to make reservations and issue tickets" for another airline (the carrier airline). *Luna v. Compania Panamena De Aviacion, S.A.*, 851 F. Supp. 826, 828–29 (S.D. Tex. 1994). Under such an agreement, the issuing airline receives a customer's payment for the overall ticket and separately makes payment to the carrier airline. *Id.; Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, No. 11 C 775, 2014 WL 551589, at *2–3 (N.D. Ill. Feb. 12, 2014) (under interline agreement, one airline "will act as an agent to issue tickets, check baggage and book reservations for transportation via other carriers").

Pursuant to its interline agreement with LATAM, American does not receive any funds unless and until American actually provides carriage to that passenger. *See* App. 113 § 8.1

23

("Each issuing airline agrees to pay to each carrying airline the transportation charges applicable to the transportation *performed* by such carrying airline.") (emphasis added).  Because Mr. Ward admittedly never flew on American, *see, e.g.*, FAC ¶¶ 13, 25, American never received any funds in relation to his tickets.  As such, American has no funds to refund, and Plaintiff must instead seek a refund from LATAM or OneTravel.com.  *See* DOT Guidance ¶ 3.

This Court need resolve that issue, however.  To the extent that Mr. Ward has a contractual relationship with American at all,[13] he cannot show that American has breached it.  Rather, American's Conditions of Carriage are clear that "[w]e will only refund tickets *issued by American Airlines*."  FAC Ex. A at 25 (emphasis added).  Because Plaintiff's tickets were issued by LATAM, not American, American is *not* obligated to provide a refund.  That is the beginning and end of his claim.[14]

---

[13] Because Mr. Ward's tickets were issued by LATAM, it is hardly clear that he has adequately alleged a contractual relationship with American.  He does not allege that he interacted directly with American, that he purchased a ticket issued by American, or—as just noted—that American ever received payment, either from him or from LATAM.  And other courts considering codeshare agreements (akin to an interline agreement) have found that passengers do not enter into contractual relationships with the carrier airline itself when the ticket is sold by a different airline.  *See, e.g.*, *Baumeister v. Deutsche Lufthansa, AG*, 811 F.3d 963, 967 (7th Cir. 2016).

[14] It is probable that Mr. Ward's contract claim fails for an additional reason: It is likely preempted by the Convention for the Unification of Certain Rules for International Carriage by Air (the Montreal Convention), which applies to "all international carriage of persons, baggage or cargo performed by aircraft for reward."  Article 1.  Article 19 of the Montreal Convention contains significant limitations on liability for delays of passengers, and Article 29 generally preempts contract claims brought under domestic law; instead, passengers "must bring their claims under the terms of the Convention or not at all."  *King v. American Airlines, Inc.*, 284 F.3d 353, 357 (2d Cir. 2002).  Because the application of the Montreal Convention is highly factbound, however, American does not press this argument at this procedural stage.

24

## V.    CONCLUSION

For the foregoing reasons, American prays that this Court compel Plaintiffs Saunders and

Holloway to submit any claims to individual arbitration and/or to dismiss with prejudice the First

Amended Complaint.


Dated:  August 13, 2020                                     Respectfully submitted,


*/s/ Dee J. Kelly Jr.*

Dee J. Kelly Jr., TX No. 11217250                    James E. Brandt (admitted pro hac vice)
Lars L. Berg, TX No. 00787072                         LATHAM & WATKINS LLP
Kelly Hart & Hallman LLP                                885 Third Avenue
201 Main Street, Suite 2500                            New York, NY 10022-4834
Fort Worth, TX 76102-3194                             Phone: (212) 906-1278
Phone: 817-878-3524                                        Fax: (212) 751-4864
Fax: 817-878-9280
Email: dee.kelly.2@khh.com                           Michael E. Bern (admitted pro hac vice)
Email: lars.berg@kellyhart.com                        Tyce R. Walters (admitted pro hac vice)
                                                                  LATHAM & WATKINS LLP
                                                                  555 Eleventh Street, N.W., Suite 1000
                                                                  Washington, D.C.  20004-1304
                                                                  Email: michael.bern@lw.com
                                                                  Email: tyce.walters@lw.com
                                                                  Phone:  (202) 637-2200
                                                                  Fax:  (202) 637-2201

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(b), on April 13, 2020, counsel for American Airlines, Inc. conferred with Plaintiffs' counsel regarding the foregoing Motion to Compel Arbitration by American.  Plaintiffs' counsel stated that they were opposed to the relief requested in the Motion.

*/s/ Dee J. Kelly Jr.*
Dee J. Kelly Jr.

## CERTIFICATE OF SERVICE

On this 13th day of August, 2020, I electronically submitted the foregoing Motion by American with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Dee J. Kelly Jr.
Dee J. Kelly Jr.