# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| LEE WARD, JAMES SAUNDERS, and WILLIAM HOLLOWAY, on behalf of themselves and all others similarly situated, | No. 4:20-cv-00371-O |
| Plaintiffs, | |
| v. | |
| AMERICAN AIRLINES, INC., | |
| Defendant. | |

## PLAINTIFFS' RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

Allen R. Vaught
TX Bar No. 24004966
VAUGHT FIRM, LLC
1910 Pacific Ave., Suite 9150
Dallas, TX 75201
(214) 675-8603 | (214) 261-5159 (fax)
allen@vaughtfirm.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292 | (206) 623-0594 (fax)
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949 | (708) 628-4950 (fax)
dank@hbsslaw.com
whitneys@hbsslaw.com

E. Adam Webb (*Pro Hac Vice*)
G. Franklin Lemond, Jr. (*Pro Hac Vice*)
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, Georgia 30339
(770) 444-9325 | (770) 217-9950 (fax)
Adam@WebbLLC.com
Franklin@WebbLLC.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ...................................................................................................2

III. ARGUMENT .......................................................................................................3

    A. American has not submitted admissible evidence regarding any agreement to arbitrate. ........................................................................................................3

    B. American cannot enforce arbitration provisions because it is not a party to either the Hotwire or Expedia Terms of Use. ...........................................................5

    C. American is not a third-party beneficiary to the Hotwire/Expedia Terms of Use. .................................................................................................................9

    D. Plaintiffs' claims also fall outside the scope of the Hotwire/Expedia Terms of Use. ...............................................................................................................11

    E. American relinquished any extra-contractual rights when it entered into the Conditions of Carriage with Plaintiffs. ..................................................................14

    F. Federal law and regulations prohibit American from adding external requirements or contractual terms to enhance its contractual rights and obligations................................................................................................................15

IV. CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Airlines v. Wolens*,
    513 U.S. 219 (1995)................................................................................17

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011)...............................................................................3

*Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, LLC*,
    782 F.3d 186 (5th Cir. 2015) ......................................................................3

*Bacon v. Avis Budget Group, Inc.*,
    959 F.3d 590 (3d Cir. 2020)....................................................................4, 5

*Bacon v. Avis Budget Grp., Inc.*,
    357 F. Supp. 3d 401 (D.N.J. 2018), *aff'd*, 959 F.3d 590 (3d Cir. 2020)...................................9

*Barrios v. Great Am. Assur. Co.*,
    No. CIV.A. H-10-3511, 2011 WL 3608510 (S.D. Tex. Aug. 16, 2011) ............................9, 10

*BMO Harris Bank, N.A. v. Lailer*,
    No. 16-cv-545-JPS, 2016 WL 4126471 (E.D. Wis. Aug. 2, 2016) ........................................12

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
    345 F.3d 347 (5th Cir. 2003) ....................................................................11

*Calderon v. Sixt Rent a Car, LLC*,
    No. 19-CV-62408-SINGHAL, 2020 WL 700381 (S.D. Fla. Feb. 12, 2020) ................. *passim*

*Combined Energies v. CCI, Inc.*,
    514 F.3d 168 (1st Cir. 2008)....................................................................11

*Delta Air Lines, Inc. v. Black*,
    116 S.W.3d 745 (Tex. 2003).....................................................................15

*Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,
    141 F.3d 243 (5th Cir. 1998) ...................................................................11

*Gluckman v. Am. Airlines, Inc.*,
    844 F. Supp. 151 (S.D.N.Y. 1994)....................................................14, 15, 16

*Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*,
    921 F.3d 522 (5th Cir. 2019) .....................................................................3

*Kay v. Minacs Group (USA), Inc.*,
  580 Fed. App'x. 327 (6th Cir. 2014) ........................................................12

*NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*,
  922 A.2d 417 (Del. Ch. 2007).....................................................................9

*Pacanowski v. Alltran Fin., LP*,
  271 F. Supp. 3d 738 (M.D. Pa. 2017) .........................................................9

*Thompson v. Bank of Am. Nat'l Ass'n*,
  783 F.3d 1022 (5th Cir. 2015) ....................................................................5

*United States Fire Ins. Co. v. Waterfront Assocs., Inc.*,
  No. 1:15-cv-46, 2016 WL 6600622 (S.D. Ohio Nov. 8, 2016) ...............12

*White v. Sunoco, Inc.*,
  870 F.3d 257 (3d Cir. 2017).......................................................................8

## OTHER AUTHORITIES

Airline Deregulation Act..................................................................................17

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* .........................................3, 11

14 C.F.R. § 253.1, *et seq.*....................................................................15, 16, 17

14 C.F.R. § 259.6(c)........................................................................................16

## I.   INTRODUCTION

Rather than face the merits of Plaintiffs' claims in a federal court located mere miles from Defendant American Airlines, Inc.'s ("American") headquarters, American seeks to compel arbitration. It does so by attempting to interject an arbitration provision not found in American's Conditions of Carriage with Plaintiffs Saunders and Holloway, but buried in the websites of two non-party travel agents, Hotwire and Expedia.[1]

For a variety of reasons, American's motion to compel arbitration must be denied.[2] To start, American's motion suffers from significant, threshold evidentiary issues: it has not presented admissible evidence confirming that the agreements it contends govern applied to Plaintiffs' purchases from American. But even if the Court disregarded these important evidentiary gaps, American's motion suffers from other fatal defects. It cannot enforce the arbitration provisions because it is not a party to either the Hotwire or Expedia Terms of Use, nor is it a third-party beneficiary to such terms. And even if it could somehow avail itself of the Terms of Use, and it cannot, (1) Plaintiffs' claims against American—which center on American's breach of its Conditions of Carriage—fall outside the scope of the respective Terms of Use, and (2) American relinquished any extra-contractual rights it may have had when it entered into the Conditions of Carriage with Plaintiffs. And on top of all these issues,

---

[1] American does not seek to compel arbitration with respect to Plaintiff Lee Ward. *See* Dkt. 41 at 1.

[2] American filed its Motion to Dismiss Plaintiffs' First Amended Complaint and Compel Arbitration on August 13, 2020. Per the Court's order directing expedited briefing on American's motion to compel arbitration, *see* Dkt. 45, Plaintiff responds only to those arguments therein as they relate to the issue of arbitration. Plaintiff will separately respond to all other motion to dismiss arguments under the ordinary schedule set by Local Rule 7.1(e).

American's position runs counter to specific federal regulations ensuring that airlines fully disclose all terms governing the relationship between passengers and airlines.

Ultimately, American's request has broad ramifications with implications well beyond the contours of this case. American's requested relief would open the door to forced arbitration of millions of potential claims for the millions of travelers that purchase tickets, hotels, or rental cars with travel agents where the website has an arbitration clause. So if a passenger was injured in an airline crash, or a hotel patron is assaulted by an employee, or a rental car provider negligently maintains its cars, they avoid court simply because reservations were booked through an online travel site. Fortunately, the Terms of Use and the law do not support American's position.

## II.      BACKGROUND

Plaintiffs James Saunders and William Holloway are two American passengers who requested refunds for cancelled flights, which American has denied. Am. Compl. ¶¶ 29, 34. Plaintiff Saunders purchased tickets for domestic travel on American Airlines operated flights through a non-party online travel agent, Hotwire. *Id.* ¶ 30. Following the purchase of his ticket, but before he was scheduled to depart, American cancelled one or more of Plaintiff Saunders' flight legs but has refused to issue a refund for such flights. *Id.* ¶¶ 31–32. Similarly, Plaintiff Holloway purchased tickets for domestic travel on American Airlines operated flights through a non-party online travel agent, Expedia.com. *Id.* ¶ 35. Following the purchase of his ticket, but before he was scheduled to depart, American cancelled one or more of Plaintiff Holloway's flight legs but has refused to issue a refund for such flights. *Id.* ¶¶ 36–37. As a result, Plaintiffs sued American because they (along with the members of the Class they seek to represent) did not receive refunds for American cancelled flights, despite contractual language and regulatory requirements

mandating refunds under the circumstances. *Id.* ¶¶ 7, 72–77. Plaintiffs assert no claims against Hotwire or Expedia, and their claims do not arise out of any purported contract or agreement with either travel agent or the tasks they completed, such as comparing prices and booking travel reservations. Rather, the claims that Plaintiffs assert involve solely an analysis of American's Conditions of Carriage (*Id.* ¶¶ 98–120) or American's conduct (*Id.* ¶¶ 121–50).

## III.    ARGUMENT

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1742 (2011). "A party seeking to compel arbitration must first show that a valid arbitration agreement exists *between the parties*, a determination governed by traditional state contract principles." *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) (citation omitted and emphasis added). "Under these principles, the court must determine whether an arbitration agreement exists based on the parties' intent as expressed in the terms of the contract." *Id.* (citation omitted). "[W]hile the strong federal policy favoring arbitration applies to the scope of an arbitration agreement, 'the policy does not apply to the initial determination whether there is a valid agreement to arbitrate.'" *Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, LLC*, 782 F.3d 186, 196–97 (5th Cir. 2015) (quoting *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004)). Against these standards, American's motion to compel arbitration must be denied.

### A.    American has not submitted admissible evidence regarding any agreement to arbitrate.

As a threshold matter, while American claims that "[c]ourts are free to consider evidence in support of a motion to compel arbitration," Dkt. 41 at 4 n.4, American has not submitted admissible evidence. Instead, American submits a declaration from one counsel, Lars Berg,

attempting to submit purportedly "true and correct copies" of Hotwire's and Expedia's purported

Terms of Use and the process that visitors to those third-party websites must purportedly click to

be bound by the arbitration agreements. Dkt. 42 at Ex. A. *See also id.* at APP0005–60; Dkt. 41 at

14–15. Such efforts do not carry the high burden necessary to prevent speculative "evidence"

from taking away individual rights before this Court.

American's evidentiary faults echo those that the Third Circuit recently considered in

*Bacon v. Avis Budget Group, Inc.*, 959 F.3d 590 (3d Cir. 2020). In *Bacon*, the Third Circuit

affirmed the district court's evidentiary finding that an individual employed by the defendant

Avis lacked "direct knowledge" about how the websites of non-party travel booking companies

(including Hotwire and Expedia) appeared when the plaintiffs accessed them. *Id.* at 604.

> Authenticating evidence under Federal Rule of Evidence 901 may
> be satisfied by testimony of a witness with personal knowledge
> "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1);
> United States v. Bansal, 663 F.3d 634, 667 (3d Cir. 2011).
> Defendants offered the Certification of Matthew Enderle, Avis
> Online Travel Account Manager, to authenticate website
> screenshots. His certification provides that he is "generally familiar
> with the terms and conditions on Expedia.com, Hotwire.com, and
> Priceline.com, which [he] review[s] and reference[s] from time to
> time as part of [his] job, including during the spring and summer of
> 2016." J.A. 232. Attached to the certification are screenshots of the
> process for booking a rental through Expedia.com, Hotwire.com,
> and Priceline.com, taken in December 2017. Thus, the 2017
> screenshots Enderle presented captured images of websites as they
> existed not in 2016, when Plaintiffs made their reservations, but
> rather as they were some eighteen months later.

*Id.* at 603–04. *See also id.* at 604 ("Enderle did not have 'direct knowledge' about how the

websites appeared when [p]laintiffs accessed them in 2016. His lack of direct knowledge is no

surprise. Enderle is an Avis employee, and he provided only his views about websites that 'were

created and maintained' by companies other than Avis without explaining how he had personal

knowledge that the website screen shots he presented were accurate depictions of the websites

[p]laintiff saw."). Avis "failed to produce admissible evidence concerning the layouts or contents of the websites [p]laintiffs accessed" so "the District Court had no basis to determine whether [p]laintiffs had assented to the websites' terms." *Id.* at 604. In reaching its decision, the *Bacon* court cited the Fifth Circuit's decision in *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1027 (5th Cir. 2015), as holding "that witness affidavits did not authenticate an online log because the affidavits did not 'say that [the witnesses] have personal knowledge of the online log or that it represents an unaltered version of the website . . . likely because . . . th[e] log[ ] w[as] created and maintained by' a third party rather than by the witnesses." Here, Mr. Berg lacks the personal knowledge necessary and he has not (and cannot) establish that the Terms of Use and screenshots he presented were the terms or websites that Plaintiffs viewed as they existed on the date Plaintiffs' made their online reservations. As a result, the Court should exclude such evidence and outright deny American's motion to compel arbitration for this reason.

**B.     American cannot enforce arbitration provisions because it is not a party to either the Hotwire or Expedia Terms of Use.**

Next, even if the Court disregarded the significant threshold evidentiary issues inherent in American's motion to compel arbitration, and without waiver of Plaintiffs' evidentiary arguments, other reasons exist that call for the denial of American's motion to compel. American identifies no language in either Hotwire's or Expedia's Terms of Use that allows American to invoke arbitration as a non-party to those Terms of Use. This is because Hotwire and Expedia tailored the arbitration clause to apply only to parties to their respective Terms of Service. Because American is not a party to the Terms of Use, it cannot enforce the arbitration provisions.

Specifically, the Terms of Use are contracts between the customers making the reservation, Plaintiffs Saunders and Holloway, and Hotwire and Expedia respectively, not

American. The language in the substantively identical Terms of Use provisions only grants the

ability to invoke arbitration to Hotwire, Expedia, and the respective consumers:

| Dispute Resolution Provisions | |
|---|---|
| Hotwire Provision | Expedia Provision |
| **DISPUTES; ARBITRATION**<br><br>Hotwire is committed to customer satisfaction, so if **you** have a problem or dispute, **we** will try to resolve your concerns. But if **we** are unsuccessful, **you or we** may pursue claims as explained in this section.<br><br>To give **us** an opportunity to resolve informally any disputes between **you and us** arising out of or relating in any way to the Website, these Terms of Use, our Privacy Policy, any services or products provided, any dealings with **our** customer service agents, or any representations made by **us** ("Claims"), **you** agree to communicate **your** Claim to Hotwire by contacting Hotwire Customer Support or calling 1-877-787-7186. **You** agree not to bring any suit or to initiate arbitration proceedings until 60 days after the date on which **you** communicated **your** Claim to Customer Support have elapsed. If **we** are not able to resolve **your** Claim within 60 days, **you** may seek relief through arbitration or in small claims court, as set forth above.<br><br>**You and Hotwire** agree that **any and all Claims will be resolved by binding arbitration, rather than in court**, except that you and we may assert Claims on an individual basis in small claims court if they qualify. This includes any Claims you assert against us, our subsidiaries, travel suppliers or any companies offering products or services through us (which are beneficiaries of this arbitration agreement). This also includes any Claims that arose before you accepted these Terms of Use, | **DISPUTES**<br><br>Expedia is committed to customer satisfaction, so if **you** have a problem or dispute, **we** will try to resolve your concerns. But if **we** are unsuccessful, **you** may pursue claims as explained in this section.<br><br>**You** agree to give **us** an opportunity to resolve any disputes or claims relating in any way to the Website, any dealings with **our** customer service agents, any services or products provided, any representations made by **us**, or **our** Privacy Policy ("Claims") by contacting Expedia Customer Support or 1-877-787-7186. If **we** are not able to resolve your Claims within 60 days, **you** may seek relief through arbitration or in small claims court, as set forth below.<br><br>Any and all Claims will be resolved by binding arbitration, rather than in court, except **you** may assert Claims on an individual basis in small claims court if they qualify. This includes any Claims you assert against us, our subsidiaries, travel suppliers or any companies offering products or services through us (which are beneficiaries of this arbitration agreement). This also includes any Claims that arose before you accepted these Terms of Use, regardless of whether prior versions of the Terms of Use required arbitration.<br><br>Dkt. 42 at APP0040 (bold italicized emphasis added). |

| | |
|---|---|
| regardless of whether prior versions of the Terms of Use required arbitration.<br><br>Dkt. 42 at APP011 (bold italicized emphasis added). | |

While the pronoun "you" refers to Hotwire and Expedia's customers, the other pronouns used throughout the Terms of Use refer only to Hotwire and Expedia. Hotwire and Expedia, as the drafters of the contract, specifically defined the terms, "we," "us," and "our" to refer to Hotwire and Expedia, and their subsidiaries and corporate affiliates. Again, American is not included within the scope of the terms "you," "we," "us," or "our" as the definitions confirm:

| Terms of Use Party Definitions | |
|---|---|
| Hotwire Definitions | Expedia Definitions |
| The terms "we," "us," "our" and "Hotwire" refer to Hotwire, Inc., a Delaware corporation, and its subsidiaries and corporate affiliates, including Travelscape, LLC, (collectively the "Hotwire Companies"), The term "you" refers to the customer visiting the Website and/or booking a reservation through us on this Website, or through our customer service agents.<br>APP0010 (Hotwire definitions) | The terms "we", "us", "our", "Expedia" and "Expedia, Inc." refer to Expedia, Inc., a Washington corporation, and its subsidiaries and corporate affiliates, including Travelscape, LLC, (collectively, the "Expedia Companies"). "Expedia Partner" means any co-branded and/or linked website through which we provide links, content or service. The term "you" refers to the customer visiting the Website and/or booking a reservation through us on this Website, or through our customer service agents. |

Against such a backdrop of specific terms, American's request to compel arbitration cannot succeed because American is not a party to the Terms of Use. The parallel sections of Hotwire's and Expedia's respective Terms of Use (which includes the arbitration clause) explicitly state they govern how "disputes between you and us get resolved"—with "us" defined as Hotwire and Expedia. *See* Dkt. 42 at APP00011, 40. There is, plainly, no intent to allow third parties to invoke the arbitration clause.

Earlier this year the Court in *Calderon v. Sixt Rent a Car, LLC*, No. 19-CV-62408-SINGHAL, 2020 WL 700381, at *1 (S.D. Fla. Feb. 12, 2020), considered substantively identical language to reject a rental car provider's attempt to compel arbitration through applying an online travel agency's terms of use. The *Calderon* court correctly noted that the rental car company "cannot enforce the arbitration clause in the Terms of Use for a very simple reason: It is not a party to the contract." *Id.* at *9. As the *Calderon* court explained:

> The Terms of Use is a contract between the customer making the reservation (here, Marin) and *Orbitz*, not *Sixt*. The Court makes this finding for a number of reasons. First, the arbitration clause states, "You and Orbitz agree that any and all Claims will be resolved by binding arbitration, rather than in court." See Ex. 1 to Arbitration Mot. (DE [12-1]) (emphasis added). Under a plain-and-common-sense construction of this clause, the second-person pronoun "you" clearly refers to the customer (again, in this case, Marin), not Sixt. Even if the term "you" applied to Sixt, that would render the parties to this arbitration clause as Sixt and *Orbitz*, not *the customer*.
>
> Further, while the second-person pronoun "you" refers to the customer, the first-person pronouns used throughout the Terms of Use refer only to *Orbitz*. To be sure, Orbitz, as the drafter of this contract, specifically decided to define the term "we": "'Orbitz' or 'we' means Orbitz Worldwide, LLC, and its subsidiaries and Corporate Affiliates, including Travelscape, LLC." See Ex. 2 to Arbitration Mot. (DE [12-2]). Sixt has no corporate affiliation with Orbitz and they fail to satisfy this definition. The other first-person used in the Terms of Use is "us." In relevant part, the Terms of Use provides: "You and Orbitz agree that any and all Claims will be resolved by binding arbitration, rather than in court.... This includes any Claims you assert against us...." (*Id.* (emphasis added)). But, again, applying the plain and ordinary meaning of the terms, "us" is simply a synonym of "we" and carries the same meaning as Orbitz's specifically defined term "we." *See State v. Davis*, 110 So. 3d 27, 31–32 (Fla. 2d DCA 2013) (construing "vessel" as having the same definition of "boat" as defined in the statute).
>
> Thus, under no reasonable reading can it be said that Sixt was a party to the Terms of Use. Orbitz, the drafter of this contact, made its intention clear that the parties to the contract were Orbitz and the customer.

*Id.* (emphases in original). So too here. While not as cogently on point as *Calderon*, other courts have likewise limited the right to compel arbitration to the parties to the agreement. *See, e.g.*, *White v. Sunoco, Inc.*, 870 F.3d 257, 267–68 (3d Cir. 2017) (affirming denial of motion to

compel arbitration where defendant did not have the right to compel arbitration under a third-party credit card contract); *Pacanowski v. Alltran Fin., LP*, 271 F. Supp. 3d 738 (M.D. Pa. 2017) (same). *See also Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401, 432 (D.N.J. 2018), *aff'd*, 959 F.3d 590 (3d Cir. 2020) ("Should both assent and the particulars of the Terms of Use be established, many issues will remain before arbitration can be ordered. One such issue is choice of law, which may play out differently vis-à-vis the websites than it did in relation to the in-person car rental agreements. Another is whether, under whatever law applies, a non-signatory may compel arbitration under these circumstances."). Because American is not included in the definition of "we" or "you," it is not a party and so American cannot invoke arbitration under the Terms of Use.

## C.   American is not a third-party beneficiary to the Hotwire/Expedia Terms of Use.

Besides not being a party to the Terms of Use, American is not a third-party beneficiary either. American argues that it "is entitled to enforce Plaintiffs' commitment to arbitrate," contending that "[t]he Expedia and Hotwire terms and conditions expressly set forth Plaintiffs' agreements to arbitrate claims against third party travel suppliers, like American, and further provides that travel suppliers, like American are intended beneficiaries of that Provision." Dkt. 41 at 13. They are not.

"Texas law has a presumption against third-party beneficiaries." *Barrios v. Great Am. Assur. Co.*, No. CIV.A. H-10-3511, 2011 WL 3608510, at *3 (S.D. Tex. Aug. 16, 2011) (citations omitted).[3] "In deciding whether a third party may enforce or challenge a contract

---

[3] Plaintiffs point to Texas law because such law governs Plaintiffs' interactions with American under the Conditions of Carriage. The Hotwire and Expedia Terms of Service however cite to a Delaware choice of law provision. Under Delaware law, these notions are effectively the same. *See NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007)

between others, it is the contracting parties' intent (not that of the claimed beneficiary) that controls." *Id.* (citing *First Union*, 168 S.W.3d at 928–29). "If there is any reasonable doubt as to the intent of the contracting parties to confer a direct benefit on the third party, then the third-party beneficiary claim must fail." *Id.* (quoting *First Union*, 168 S.W.3d at 929). Such reasonable doubt exists here.

Again, *Calderon* is on point. Like American here, the rental car's "primary argument is that the Terms of Use compels arbitration of '[a]ny and all Claims . . . you assert against . . . travel suppliers or any companies offering products or services through [Orbitz], including Suppliers (which are beneficiaries of this arbitration agreement).'" *Calderon*, 2020 WL 700381, at *9. However, the Court disagreed that the rental car company was a third-party beneficiary under the terms of use before it:

> Its primary argument is that the Terms of Use compels arbitration of "[a]ny and all Claims . . . you assert against . . . travel suppliers or any companies offering products or services through [Orbitz], including Suppliers (which are beneficiaries of this arbitration agreement)." *See* Ex. 2 to Arbitration Mot. (DE [12-2] ). Sixt insists it is a "supplier" under the Terms of Use. The Court disagrees.
>
> Once again, the Terms of Use provided a specific definition: "'Supplier' means Orbitz's licensors, suppliers, information providers, and travel and leisure service providers." (*Id.*). This alone might support Sixt's argument. However, the Terms of Use provides another term-definition that the Court thinks more appropriately fits Sixt: "'Travel Services' means the airline travel, hotel accommodation, car rental, ground transportation, tours, theater tickets, attractions, travel insurance, and other items available through the Services." (Id. (emphasis added)). And the arbitration clause is devoid of any mention of "Travel Services."
>
> To read the Terms of Use according to Sixt's pleasure would be to cherry-pick, applying only the provisions that best fits its argument. The Court declines to take

("As a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions. Mere incidental beneficiaries have no legally enforceable rights under a contract. A third-party beneficiary is an incidental beneficiary unless the parties to the contract intended to confer a benefit upon it.").

> this approach. The Court reads the Terms of Use as a whole and cannot find a
> way to read it such that Sixt would fit under the term "Suppliers" when it
> undeniably fits under the term "Travel Services."

*Id.* at *10. The logic and conclusion from *Calderon* similarly apply here. Like in *Calderon*,

American seeks to cherry-pick provisions of the Terms of Use, ignoring the whole of the

document. *Cf. Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 363 (5th Cir. 2003)

("Bridas has not brought to our attention a case where a third-party beneficiary has been bound

to arbitrate a dispute, arising under an agreement to which it is not a party, that the third-party

itself did not initiate in court. We decline to do so for the first time today."). The Court should

deny American's attempt to invoke an arbitration clause under a third-party beneficiary theory.

**D.      Plaintiffs' claims also fall outside the scope of the Hotwire/Expedia Terms of Use.**

Fourth, arbitration cannot be compelled because Plaintiffs' claims do not "arise out of"

the Hotwire/Expedia Terms of Use. Section 2 of the FAA clarifies that while an agreement to

submit an "existing controversy" to arbitration may fall under the FAA, it only does so if the

controversy in question arises out of such a contract. 9 U.S.C. § 2 ("A written provision in any

maritime transaction or a contract evidencing a transaction involving commerce to settle by

arbitration a controversy thereafter arising out of such contract or transaction . . . ."). Where the

claims alleged do not arise out of the contract that contains the arbitration provision, arbitration

cannot be compelled. *See* 9 U.S.C. § 2; *see also Dr. Kenneth Ford v. NYLCare Health Plans of

Gulf Coast, Inc.*, 141 F.3d 243, 252 (5th Cir. 1998) (affirming decision by the district court that

the action did not arise out of an agreement between parties with an arbitration provision where

"the agreement will likely play, even as a purely evidentiary matter, a very minor role in the

ultimate litigation" and was therefore "not subject to the agreement's arbitration clause");

*Combined Energies v. CCI, Inc.*, 514 F.3d 168, 172 (1st Cir. 2008) (allegations in the complaint

did not arise out of the purchase agreement as "necessary to confer arbitrability in the case");

*BMO Harris Bank, N.A. v. Lailer*, No. 16-cv-545-JPS, 2016 WL 4126471, at *5 (E.D. Wis. Aug.

2, 2016) (denying motion to stay and compel arbitration where the "contract at the core of this

case does not contain any arbitration clause" and the arbitration clause sought to be enforced was

in a separate agreement); *Kay v. Minacs Group (USA), Inc.*, 580 Fed. App'x. 327, 330 (6th Cir.

2014) (reversing order compelling arbitration where the "arbitration provision does not cover

[plaintiff's] civil rights claims because there is no contract language indicating that his claims

arise from or relate to the employee handbook"); *United States Fire Ins. Co. v. Waterfront

Assocs., Inc.*, No. 1:15-cv-46, 2016 WL 6600622, at *5  (S.D. Ohio Nov. 8, 2016) (noting that in

interpreting whether a claim arises out of a contract with an arbitration clause, "[a] proper

method of analysis here is to ask if an action could be maintained without reference to the

contract . . . at issue. If it could, it is likely outside the scope of the arbitration agreement")

(citation and quotation omitted, alteration in original).

    The distinction matters here where neither Hotwire nor Expedia are defendants, nor

should they be, since Plaintiffs' claims relate to *American's* breach of the Conditions of Carriage

and relate to *American's* policy and practice of refusing refunds due to its passengers. Not one of

Plaintiffs' claims refer, rely on, or call for an evaluation, analysis, or construction of any

agreement between Plaintiffs and Hotwire/Expedia. Again, *Calderon* addressed this issue in a

similar context, rejecting arguments that a dispute between the car rental company and an Orbitz

customer. The *Calderon* court first noted that the arbitration clause covered "disputes between

Orbitz's customers and Orbitz" and the court did "not read the Terms of Use as covering disputes

between customers of Orbitz and Sixt." *Calderon*, 2020 WL 700381, at *10. And the court did

not read "the Terms of Use as covering disputes related to the use of rental cars provided by

12

Sixt." *Id.* Here too, the "Claims" potentially subject to arbitration are limited to disputes between Plaintiffs and Hotwire or Expedia. *See, e.g.*, Dkt. 42 at APP0011 (Hotwire Terms of Use: "[t]o give us an opportunity to resolve informally any disputes between you and us arising out of or relating in any way to the Website, these Terms of Use, our Privacy Policy, any services or products provided, any dealings with our customer service agents, or any representations made by us ('Claims') . . . ."); *id.* at APP0040 (Expedia Terms of Use: "You agree to give us an opportunity to resolve disputes or claims relating in any way to the Website, any dealings with our customer service agents, any services or products provided, any representations made by us, or our Privacy Policy ('Claims') . . . ."). As the court in *Calderon* noted reviewing similar language:

> Thus, "Claims" in the defined-term sense include: "[A]ny disputes . . . arising out of or relating in any way to the Website, the[ ] Terms of Use, our Privacy Policy, and services or products provided, any dealing with [Orbitz's] customer service agents, or any representations made by [Orbitz]."
>
> Marin's claims here do not fall qualify [*sic*] as any of these "Claims." The allegations against Sixt do not involve his use of Orbitz.com. Nor is he contesting any contractual provisions of the Terms of use, Orbitz's Privacy Policy, dealings with customer service agents, or representations made by Orbitz.
>
> The only arguable way to interpret Marin's cause of action as falling within the scope of the Terms of Use is to understand it as a dispute "arising out of or relating in any way to . . . service or products provided . . . by Orbitz." See Ex. 2 to Arbitration Mot. (DE [12-2] ). But, once again, the Court cannot adopt this reading of the Terms of Use because it belies the very definitions provided for in the Terms of Use.

*Calderon*, 2020 WL 700381, at *10 (alterations in original). Plaintiffs' allegations against American do not involve their use of Hotwire or Expedia, nor are they contesting any contractual provisions of any Terms of Use, any Privacy Policy, any dealings with Hotwire/Expedia customer service agents, or representations made by Hotwire/Expedia. American cannot compel Plaintiffs to arbitrate their claims under the Hotwire/Expedia Terms of Use.

**E.      American relinquished any extra-contractual rights when it entered into the Conditions of Carriage with Plaintiffs.**

Fifth, even if American was a party or a third-party beneficiary to the Plaintiff/Hotwire/Expedia Terms of Use, and it is neither, American relinquished any rights when it imposed its Conditions of Carriage on Plaintiffs. Here, unless in conflict with laws, rules, or security directives, American's Conditions of Carriage confirms it is the complete and exclusive agreement between Plaintiffs and American.

American's Conditions of Carriage clearly states that only the Conditions of Carriage governs the relationship between Plaintiffs and American, covering "*all*" of Plaintiffs' rights and responsibilities as a passenger:

## The contract between you, the passenger, and us, American Airlines

At American Airlines, we fly over borders – across the country and the world – to connect people and communities. Providing this service and making the world a smaller, more inclusive place, is a huge part of who we are.

These conditions cover all of your rights and responsibilities as a passenger on flights operated by American Airlines. We've simplified this contract to make our policies clearer and easier to understand.

Dkt. 37-1 at ECF 2 of 26. As the Conditions of Carriage further provide:

### ⊙ Contract details

- Texas law applies to this contract.
- This contract cannot be modified or waived unless authorized in writing by an American Airlines corporate officer.
- We provided links to our website for additional information, however the content displayed on those links are not part of this contract.
- If these Conditions of Carriage conflict with applicable laws, rules or security directives from U.S. or foreign government agencies, the applicable laws, rules or security directives will govern.

Dkt. 37-1 at ECF 3 of 26. *See, e.g.*, *Gluckman v. Am. Airlines, Inc.*, 844 F. Supp. 151, 160 (S.D.N.Y. 1994) ("The tariff constitutes the incorporated terms of the contract between

passenger and airline, and if valid, conclusively and exclusively govern[s] the rights and liabilities between the parties.") (internal citation and quotation omitted).

However, American's requested arbitration relief directly increase Plaintiffs' responsibilities with respect to American, *i.e.*, calling for Plaintiffs to initiate arbitration while simultaneously attempting to take away their rights to sue American in federal court. But the Conditions of Carriage governs the parties' agreement, unless applicable governmental laws, rules, or security directives apply. Dkt. 37-1 at ECF 3 of 26. Furthermore, American's Conditions of Carriage does not incorporate Hotwire or Expedia's Terms of Use. *Id.* In such circumstances, American's Conditions of Carriage makes clear that it relinquished any purported rights to compel arbitration given American's efforts to ensure that only the Conditions of Carriage governs the relationship between Plaintiffs and American. Thus, the Court should reject American's attempt to enlarge its contract with Plaintiffs.

**F.      Federal law and regulations prohibit American from adding external requirements or contractual terms to enhance its contractual rights and obligations.**

Sixth, American seeks to enhance its bargain with Plaintiffs by relying on external contracts Plaintiffs may have with non-parties to enlarge its rights based on state law. Such an approach not only runs afoul of federal regulations but American's own rhetoric.

American's Conditions of Carriage is subject to specific regulations regarding contracts of carriage and must comply with various disclosure requirements. *See* 14 C.F.R. § 253.1; *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 754 (Tex. 2003) ("When [passenger] purchased the airline tickets, a binding contract of carriage was created between Black and Delta. Pursuant to the regulatory authority conferred by Congress under the ADA, the DOT promulgated comprehensive regulations interpreting the ADA. [Passenger's] and Delta's contract for carriage incorporates these regulations."). Federal regulations require clear disclosure to passengers of all

terms and conditions that govern the relationship between passengers and an air carrier. *See* 14 C.F.R. § 253.11; 14 C.F.R. § 259.6(c) ("Each U.S. air carrier that has a website and each foreign air carrier that has a website marketed to U.S. consumers shall post its current contract of carriage on its website in easily accessible form."). However, American's efforts to compel arbitration contradict such disclosure requirements and numerous federal regulations.

First, while American may incorporate other contract terms by reference (*i.e.*, without stating their full text), such an effort must "be accompanied by notice to the passenger," and American "may not claim the benefit as against the passenger of, and the passenger shall not be bound by, any contract term incorporated by reference if notice of the term has not been provided to that passenger . . . ." 14 C.F.R. § 253.4. Here, American identifies no notice that it provided to Plaintiffs (because none occurred), nor did it indicate before its motion to compel arbitration that it seeks to incorporate non-party contracts generally or arbitration provisions specifically. *See also Gluckman*, 844 F. Supp. at 161 (asking "whether the carrier did all it reasonably could to inform the passenger that the terms and conditions incorporated in the ticket were important matters of contract affecting his or her rights").

Next, American cannot "retroactively apply to persons who have already bought a ticket any material amendment to its contract of carriage that has significant negative implications for consumers." 14 C.F.R. § 253.9. As a result, American cannot seek to amend its Conditions of Carriage to include a non-party arbitration provision as such a material amendment would have significant negative implications for consumers, taking away their rights to sue in federal court. But that is exactly what American seeks to do here.

Third, American cannot legally impose "any contract of carriage provision containing a choice-of-forum clause that attempts to preclude a passenger, or a person who purchases a ticket

for air transportation on behalf of a passenger, from bringing a claim against a carrier in any court of competent jurisdiction, including a court within the jurisdiction of that passenger's residence in the United States (provided that the carrier does business within that jurisdiction)." 14 C.F.R. § 253.10. So while Plaintiffs seek to bring a claim against American in this Court of competent jurisdiction, American asks this Court to allow it to do indirectly what it cannot do directly: preclude Plaintiffs from bringing a claim against them in this Court. In such circumstances, American's request to compel arbitration cannot be granted.

Additionally, American's own rhetoric undermines its case for compelling arbitration. As American writes in its memorandum:

> The ADA does not prevent courts from "affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *American Airlines v. Wolens*, 513 U.S. 219, 232–33 (1995). That is because such suits do not constitute "state-imposed regulation of air carriers," but instead are merely "enforcement of contract terms *set by the parties themselves*." *Id.* at 222 (emphasis added). This "distinction between what the State dictates and what the airline itself undertakes confines Courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233.

Dkt. 41 at 17. So on one hand American seeks to limit the case to enforcing terms *set by the parties*, but on the other American seeks to invoke sources *external* to the Conditions of Carriage to limit its liability. Such an effort runs contrary to the Airline Deregulation Act, *Wolens*, and cannot stand. American must be estopped from attempting to rely on sources other than its own Conditions of Carriage.

## IV.   CONCLUSION

For the reasons provided above and for good cause shown, Plaintiffs respectfully request that the Court completely deny Defendant's motion to compel arbitration.

17

Dated: August 21, 2020

Respectfully submitted,

 /s/ Daniel J. Kurowski

Allen R. Vaught
TX Bar No. 24004966
VAUGHT FIRM, LLC
1910 Pacific Ave., Suite 9150
Dallas, TX 75201
(214) 675-8603 | (214) 261-5159 (fax)
allen@vaughtfirm.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292 | (206) 623-0594 (fax)
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949 | (708) 628-4950 (fax)
dank@hbsslaw.com
whitneys@hbsslaw.com

E. Adam Webb (*Pro Hac Vice*)
G. Franklin Lemond, Jr. (*Pro Hac Vice*)
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, Georgia 30339
(770) 444-9325 | (770) 217-9950 (fax)
Adam@WebbLLC.com
Franklin@WebbLLC.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on August 21, 2020, a true and correct copy of the foregoing was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record.

_/s/ Daniel J. Kurowski_____