# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| LEE WARD, JAMES SAUNDERS, and WILLIAM HOLLOWAY, on behalf of themselves and all others similarly situated, | No. 4:20-cv-00371-O |
| Plaintiffs, | |
| v. | |
| AMERICAN AIRLINES, INC., | |
| Defendant. | |

## <u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

Allen R. Vaught
TX Bar No. 24004966
VAUGHT FIRM, LLC
1910 Pacific Ave., Suite 9150
Dallas, TX 75201
(214) 675-8603 | (214) 261-5159 (fax)
allen@vaughtfirm.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292 | (206) 623-0594 (fax)
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949 | (708) 628-4950 (fax)
dank@hbsslaw.com
whitneys@hbsslaw.com

E. Adam Webb (*Pro Hac Vice*)
G. Franklin Lemond, Jr. (*Pro Hac Vice*)
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, GA 30339
(770) 444-9325 | (770) 217-9950 (fax)
Adam@WebbLLC.com
Franklin@WebbLLC.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTS COMMON TO THE ENTIRE CLASS .................................................3

    A.    American's Contract Language Requiring Refunds Is Common to
        the Class. ...................................................................................................3

    B.    The Department of Transportation Regulations Also Require
        Refunds for American Cancelled Flights. .................................................3

    C.    American Cancels Thousands of Flights in Response to Decreased
        Consumer Demand and Defies Its Contract Provisions Regarding
        Refunds. ....................................................................................................4

    D.    Plaintiffs Are Typical American Passengers and Were Denied
        Refunds. ....................................................................................................7

    E.    Description of the Proposed Class. ...........................................................8

III.  ARGUMENT ........................................................................................................8

    A.    A Class Certification Hearing Is Premature Given Defendant's
        Refusal to Produce Documents During the Pendency of Its
        Motions to Dismiss and Stay Discovery. ..................................................8

    B.    The Court Should Certify the Class Under Rule 23(b)(2) and
        (b)(3). .....................................................................................................10

        1.    Plaintiffs satisfy all four Rule 23(a) requirements. ...................10

            a.    Rule 23(a)(1): Joinder is impracticable given
                American's cancellation of thousands of flights
                across the country. ........................................................10

            b.    Rule 23(a)(2): Numerous common issues exist
                surrounding American's flight cancellations and
                failure to provide refunds. ............................................11

            c.    Rule 23(a)(3): Plaintiffs' claims are typical as they
                were booked to fly on an American-cancelled flight
                and they have not received a refund. .............................13

            d.    Rule 23(a)(4): Plaintiffs and class counsel will
                fairly and adequately protect the interests of the
                proposed Class. .............................................................14

2.     The proposed class satisfies the predominance and
       superiority requirements of Rule 23(b)(3). ..................................16

       a.     Common questions of law and fact predominate..........................16

       b.     A class action is a superior method for adjudicating
              this controversy..............................................................18

3.     The proposed Class satisfies Rule 23(b)(2), because
       American Airlines has acted on grounds generally
       applicable to the entire Class. ....................................................20

4.     The Class is ascertainable given American's records of
       every single passenger booked on cancelled flights. ...............................22

C.   Plaintiffs Satisfy the Additional Requirements of Local Rule 23.2.....................23

1.     Local Rule 23.2 (b)(1): approximate number of class
       members.......................................................................23

2.     Local Rule 23.2(c): financial responsibility to fund the
       action.........................................................................23

3.     Local Rule 23.2(d): basis for determining any required
       jurisdictional amount. .........................................................23

4.     Local Rule 23. 2(e): type and estimated expense of notice. ......................24

5.     Local Rule 23.2(g): arrangements for payment of plaintiffs'
       attorney's fees. ...............................................................24

D.   Hagens Berman and Webb, Klase & Lemond Should Be
     Appointed Class Counsel..........................................................24

IV.  CONCLUSION.......................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abboud v. Agentra, LLC*,
   2020 WL 5526557 (N.D. Tex. Sept. 14, 2020)......................................................10

*ABS Entm't, Inc. v. CBS Corp.*,
   908 F.3d 405 (9th Cir. 2018) ................................................................9

*Adams v. United Ass'n of Journeyman & Apprentices*,
   2001 WL 360998 (5th Cir. Mar. 22, 2001)......................................................9

*Ahmad v. Old Republic Nat'l Title Ins. Co.*,
   690 F.3d 698 (5th Cir. 2012) ................................................................11

*Allapattah Servs., Inc. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005) ...................................12

*Allison v. Citgo Petro. Corp.*,
   151 F.3d 402 (5th Cir. 1998) ................................................................21

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................10, 16

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)........................................................18

*Bardales v. Fontana & Fontana, LLC*,
   2020 WL 5819873 (E.D. La. Sept. 30, 2020) ......................................................13

*Beley v. City of Chicago*,
   2015 WL 8153377 (N.D. Ill. Dec. 7, 2015)......................................................17

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
   242 F.3d 290 (5th Cir. 2001) ................................................................17

*Carpenter v. Davis*,
   424 F.2d 257 (5th Cir. 1970) ................................................................22

*Chi. Teachers Union, Local No.1 v. Bd. of Educ. of City of Chi.*,
   797 F.3d 426 (7th Cir. 2015) ................................................................18

*Cruson v. Jackson Nat'l Life Ins. Co.*,
   954 F.3d 240 (5th Cir. 2020) ........................................................10, 17

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) ................................................18

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ..........................................11, 19

*In re Deepwater Horizon*,
    785 F.3d 1003 (5th Cir. 2015) .........................................17, 22

*DeOtte v. Azar*,
    332 F.R.D. 188 (N.D. Tex. 2019) ....................................14, 22

*Dockery v. Fischer*,
    253 F. Supp. 3d 832 (S.D. Miss. 2015)...............................11

*Flanagan v. Allstate Ins. Co.*,
    242 F.R.D. 421 (N.D. Ill. 2007).............................................12

*Frey v. First Nat'l Bank Sw.*,
    602 F. App'x 164 (5th Cir. 2015) ..........................................22

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
    695 F.3d 330 (5th Cir. 2012) ................................................16

*Garza v. Bank of Am., N.A.*,
    2014 WL 5315088 (N.D. Tex. Oct. 17, 2014).......................17

*Gray v. Hearst Commcn's, Inc.*,
    444 F. App'x 698 (4th Cir. 2011) ..........................................12

*Hackler v. Tolteca Enters., Inc.*,
    2019 WL 7759523 (W.D. Tex. Sept. 9, 2019).......................11

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...............................11

*Holmes v. Serv. Corp. Int'l*,
    2014 WL 3046971 (S.D. Tex. July 3, 2014)..........................13

*James v. City of Dallas, Tex.*,
    254 F.3d 551 (5th Cir. 2001) ................................................13

*Jenkins v. Raymark Indus., Inc.*,
    782 F.2d 468 (5th Cir. 1986) ................................................14

*Kolbe v. BAC Home Loans Servicing, LP*,
    738 F.3d 432 (1st Cir. 2013)..................................................17

*McKeage v. TMBC, LLC,*
 847 F.3d 992 (8th Cir. 2017) ............................................................................17

*Richardson v. Dir. Fed. Bureau of Prisons,*
 829 F.3d 273 (3d Cir. 2016)..............................................................................10

*Seeligson v. Devon Energy Prod. Co.,*
 753 F. App'x 225 (5th Cir. 2018) .....................................................................22

*Seeligson v. Devon Energy Prod. Co.,*
 761 F. App'x 329 (5th Cir. 2019) .....................................................................11

*Slade v. Progressive Sec. Ins. Co.,*
 856 F.3d 408 (5th Cir. 2017) ............................................................................14

*Slipchenko v. Brunel Energy, Inc.,*
 2013 WL 4677918 (S.D. Tex. Aug. 30, 2013) .................................................18

*Tyson Foods, Inc. v. Bouaphakeo,*
 136 S. Ct. 1036 (2016)......................................................................................16

*In re U.S. FoodService Inc. Pricing Litig.,*
 729 F.3d 108 (2d Cir. 2013)..............................................................................12

*Villagran v. Cent. Ford, Inc.,*
 524 F. Supp. 2d 866 (S.D. Tex. 2007) ..............................................................13

*Wal-Mart Stores, Inc. v. Dukes,*
 564 U.S. 339 (2011)...........................................................................11, 13, 20

*Yates v. Collier,*
 868 F.3d 354 (5th Cir. 2017) ......................................................................20, 21

*Zeidman v. J. Ray McDermott & Co.,*
 651 F.2d 1030 (5th Cir. 1981) ..........................................................................10

## OTHER AUTHORITIES

1 McLaughlin on Class Actions § 5:56 (15th ed. 2018) ................................................12

14 C.F.R. § 259.5(b)(5)...................................................................................................6

2 William B. Rubenstein, Newberg on Class Actions § 3.24 .......................................17

Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01 (Apr. 25, 2011) ......6

# I.    INTRODUCTION

American Airlines carried over 200 million customers in 2019.[1] As COVID-19 restrictions reduced passenger demand, American made an economic decision. It cancelled tens of thousands of flights, including 55,000 flights in April 2020 alone.[2] As American announced flight cancellations, it shifted the costs of the pandemic onto its customers by refusing to issue refunds for flights, breaching its Conditions of Carriage ("Contract") with passengers.[3] Plaintiffs Lee Ward, James Saunders, and William Holloway are three such passengers due to travel on flights cancelled by American and bring this putative class action for breach of contract.

As will be more fully developed when discovery starts, the evidence and legal issues regarding whether American breached its Contract are common to the Class. Resolving Plaintiffs' claims class-wide will be far more economical than individual adjudications. The legal issues considered by the Court and the evidence considered by the jury will not vary among class members. In these circumstances, Rule 23(a)'s requirements for class certification are satisfied. There are thousands of injured passengers across the country, meeting numerosity. Commonality exists because customers were injured in the same way—American's cancellation of and refusal to issue refunds for such cancelled flights. The claims of the three passengers serving as proposed class representatives are typical of the entire proposed Class, having booked tickets on cancelled flights and were denied refunds. The class representatives have common interests with

---

[1] FAC ¶ 41; *see also* App. 1 at PLS_APP-12–13, available at https://americanairlines.gcs-web.com/static-files/d46a00e3-db05-4a91-af7a-fbe0fc2a7f08/ (last visited Oct. 29, 2020).

[2] FAC ¶¶ 56–63. *see also* App. 2 at PLS_APP-21, available at https://dfw.cbslocal.com/2020/03/19/in-the-fight-of-our-lives-american-airlines-ceo-cancels-55000-flights-grounds-almost-1-2-fleet/ (last visited Oct. 29, 2020).

[3] FAC ¶¶ 105–106; App. 3 at PLS_APP-24–49.

the proposed Class as they assert the same claims and seek the same relief, satisfying Rule 23(a)'s adequacy requirement.

Rule 23(b)(3) requires common issues to predominate over individual ones and a class action is superior to a host of individual cases. Plaintiffs assert breach of contract claims. Common issues of law predominate as Texas law applies to Plaintiffs' breach of contract claim. Common issues of fact predominate as well, given American's failure to provide refunds for flights it cancelled, in violation of its Contract. The evidence comes from the Contract, the U.S. Department of Transportation's documents, and American's records. Class members are entitled to full refunds of the amounts they paid for cancelled flights. Class treatment is also superior to other available methods for fairly and efficiently adjudicating the controversy because (i) no class member has an interest in individually prosecuting American, (ii) there are no pending related cases against American, on behalf of class members, (iii) it is expedient to concentrate the litigation before this Court, where American is located, and (iv) there are no likely difficulties in managing a class action here.

Additionally, the Class should be certified under Rule 23(b)(2) because American acted on grounds that apply to the entire Class, making any declaratory and injunctive relief appropriate for the Class as a whole. American's refusal to provide refunds for cancelled flights affected all class members, and whether it conflicted with American's Conditions of Carriage will apply equally to the Class. American's common conduct means it can be enjoined or declared unlawful only as to all class members or as to none of them.

Rule 23's requirements are met. The Court should grant Plaintiffs' motion.

## II.    FACTS COMMON TO THE ENTIRE CLASS

**A.    American's Contract Language Requiring Refunds Is Common to the Class.**

The terms of American's Conditions of Carriage apply to all class members. Under the plain terms of American's agreement with its passengers, passengers have contractual rights to refunds where a flight has been cancelled and/or significantly changed, regardless of the reason for a cancellation or delay.[4] The Conditions of Carriage provide that if a passenger "decide[s] not to fly because your flight was delayed or cancelled, we'll refund the remaining ticket value and any optional fees."[5] Even for "nonrefundable" tickets, American explicitly states "[w]e will refund a non-refundable ticket (or the value of the unused segment of your trip) to the original form of payment if … [w]e cancel your flight" or "[w]e make a schedule change that results in a change of 61 minutes or more."[6]

**B.    The Department of Transportation Regulations Also Require Refunds for American Cancelled Flights.**

As the U.S. Department of Transportation ("DOT") explains regarding passenger refund rights: "If your flight is cancelled and you choose to cancel your trip as a result, you are entitled to a refund for the unused transportation—even for non-refundable tickets. You are also entitled to a refund for any bag fee that you paid, and any extras you may have purchased, such as a seat assignment."[7] "Put another way, '[a] passenger is entitled to a refund if the airline cancelled a flight, regardless of the reason, and the passenger chooses not to be rebooked on a new flight on

---

[4] FAC ¶¶ 105–106; App. 3 at PLS_APP-24–49.

[5] FAC ¶ 106; App. 3 at PLS_APP-41.

[6] *Id.*; App. 3. at PLS_APP-47.

[7] FAC ¶ 73; *see also* App. 4, Flight Delays & Cancellations, U.S. Department of Transportation at PLS_APP-52, available at https://www.transportation.gov/individuals/aviation-consumer-protection/flight-delays-cancellations) (last visited Oct. 26, 2020).

that airline.'"[8] Passengers are similarly entitled to a refund if an airline makes "a significant

schedule change and/or significantly delays a flight and the passenger chooses not to travel."[9]

Moreover, under the Conditions of Carriage, American explicitly notes that such requirements

apply to Plaintiffs and class members: "If these Conditions of Carriage conflict with applicable

laws, rules, or security directives from U.S. or foreign government agencies, the applicable laws,

rules, or security directives will govern."[10]

**C.    American Cancels Thousands of Flights in Response to Decreased Consumer Demand and Defies Its Contract Provisions Regarding Refunds.**

American experienced an extensive decline in demand for air travel as COVID-19

spread. As American described the impact on the airline to the SEC:

> The COVID-19 outbreak, along with the measures governments
> and private organizations worldwide have implemented in an
> attempt to contain the spread of this pandemic, has resulted in a
> severe decline in demand for air travel, which has adversely
> affected our business, operations and financial condition to an
> unprecedented extent. Measures ranging from travel restrictions,
> "shelter in place" and quarantine orders, limitations on public
> gatherings to cancellation of public events and many others have
> resulted in a precipitous decline in demand for both domestic and
> international business and leisure travel. In response to this
> material deterioration in demand, we have taken a number of
> aggressive actions to ameliorate our business, operations and
> financial condition. We have focused on reducing our capacity,
> making structural changes to our fleet, implementing cost
> reductions, preserving cash and improving our overall liquidity
> position. We have reduced our system-wide capacity and will

---

[8] FAC ¶ 74; *see also* App. 4, Refunds, U.S. Department of Transportation at PLS_APP-55, available at https://www.transportation.gov/individuals/aviation-consumer-protection/refunds. (last visited Oct. 26, 2020).

[9] FAC ¶ 75; App. 4 at PLS_APP-55.

[10] FAC ¶ 77; App. 3 at PLS_APP-26.

> continue to monitor conditions and to proactively evaluate and
> adjust our schedule to match demand.[11]

In response, American took "aggressive actions to mitigate the effect of COVID-19 on our business including deep capacity reductions"—i.e., flight cancellations.[12] Capacity reductions allowed American to lower its expenses, with the company estimating "that we have reduced our 2020 operating and capital expenditures by approximately $17.0 billion[,] primarily through capacity reductions."[13] Reflective of the extensive number of affected passengers, to stem a hemorrhage of cash during a time of decreased revenue and demand, American converted approximately $2.5 billion dollars from tickets into flight credits:

> In response to COVID-19, we extended the contract duration for
> certain tickets to December 31, 2021, principally those with travel
> scheduled March 1, 2020 through December 31, 2020. As of
> September 30, 2020, the air traffic liability included approximately
> $2.5 billion of travel credits related to these unused tickets for
> travel prior to September 30, 2020.[14]

But despite the clear language in its passenger contract, American gave passengers a hard time about refunds, even for flights that American cancelled. Many customers complained extensively about American's open efforts to defy its refund obligations.[15] Customer complaints about American's failure to issue refunds sparked widespread attention online and coverage in

---

[11] App. 5, American Airlines, Form 10-Q for the Quarterly Period Ending September 30, 2020 at PLS_APP-65, available at https://americanairlines.gcs-web.com/static-files/77f7b7d9-9216-4feb-a16b-4028bd14a7f4 (last visited Oct. 27, 2020).

[12] *Id.* at PLS_APP-62.

[13] *Id.* at PLS_APP-63.

[14] *Id.* at PLS_APP-64.

[15] FAC ¶¶ 78–83; *see also* App. 6, American Airlines Is Openly Defying DOT Refund Regulations, The Winglet, at PLS_APP-68–70, available at https://thewinglet.boardingarea.com/american-airlines-is-openly-defying-dot-refund-regulations/ (last visited Oct. 29, 2020); App. 12–16 at PLS_APP-109, 119, 129, 139, 149.

media.[16] Given the substantial volume of passenger complaints being lodged against airlines, including American, on April 3, 2020, the DOT disclosed that it "is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed."[17] The DOT reminded carriers, including American, of their "longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier."[18] However, the continued failures of American and other airlines to provide refunds consistent with longstanding obligations prompted the DOT to release a second enforcement notice on May 12, 2020.[19]

As stated in its monthly Air Travel Consumer Reports, the DOT reported minimal consumer complaints against American in the "refund" category of consumer complaints in the beginning of 2020, with just 11 complaints reported for January 2020[20] and 14 complaints

---

[16] FAC ¶ 78. *see also* App. 7, Where's My Airline Refund? What to Know if Your Flight Was Cancelled By an Airline, at PLS_APP-72–74, available at https://www.nbcchicago.com/consumer/wheres-my-airline-refund-what-to-know-if-your-flight-was-canceled-by-an-airline/2267784/ (last visited Oct. 29, 2020); App. 12–16 at PLS_APP-109, 119, 129, 139, 149.

[17] FAC ¶ 80; App. 8 at PLS_APP-76, available at https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20 Notice%20Final%20April%203%202020.pdf; *see also* 14 C.F.R. § 259.5(b)(5); Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011).

[18] *Id.*; App. 8 at PLS_APP-76–77.

[19] FAC ¶ 81; App. 9 at PLS_APP-79–81, available at https://www.transportation.gov/sites/dot.gov/files/2020-05/Refunds%20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%202020% 29.pdf.

[20] App. 10 at PLS_APP-89, available at https://www.transportation.gov/individuals/aviation-consumer-protection/march-2020-air-travel-consumer-report.

6

reported for February 2020.[21] However, consumer refund complaints against American increased

extensively starting in March 2020, with 138 refund complaints reported in March 2020,[22] 1,173

in April 2020,[23] 1,024 in May 2020,[24] 607 in June 2020,[25] and 504 in July 2020.[26] Even members

of the United States Senate urged American to provide full cash refunds to passengers with

cancelled flights during the pandemic.[27]

**D.     Plaintiffs Are Typical American Passengers and Were Denied Refunds.**

The three proposed class representatives, Plaintiffs Lee Ward, James Saunders, and

William Holloway, are among the many passengers negatively affected by American's breach of

contract. Plaintiffs were all ticketed passengers for travel on American flights.[28] Like so many

passengers, American cancelled Plaintiffs' flights and denied them refunds.[29]

---

[21] App. 11 at PLS_APP-99, available at https://www.transportation.gov/individuals/aviation-consumer-protection/april-2020-air-travel-consumer-report.

[22] App. 12 at PLS_APP-109, available at https://www.transportation.gov/individuals/aviation-consumer-protection/may-2020-air-travel-consumer-report.

[23] App. 13 at PLS_APP-119, available at https://www.transportation.gov/individuals/aviation-consumer-protection/june-2020-air-travel-consumer-report.

[24] App. 14 at PLS_APP-129, available at https://www.transportation.gov/individuals/aviation-consumer-protection/july-2020-air-travel-consumer-report.

[25] App. 15 at PLS_APP-139, available at https://www.transportation.gov/individuals/aviation-consumer-protection/august-2020-air-travel-consumer-report.

[26] App. 16 at PLS_APP-149, available at https://www.transportation.gov/individuals/aviation-consumer-protection/september-2020-air-travel-consumer-report.

[27] FAC ¶ 82; App. 17 at PLS_APP-153–155, Letter to Doug Parker, CEO of American Airlines, from U.S. Senator Edward J. Markey, et al. (March 31, 2020).

[28] FAC ¶¶ 13, 24, 30, 35; App. 18–20 at PLS_APP-157–158, 161, 164.

[29] FAC ¶¶ 12, 15–17, 20, 23, 25, 27, 31–32, 36–37, 115; App. 2; App. 18–20 at PLS_APP-157–158, 161, 164.

**E.     Description of the Proposed Class.**

Plaintiffs propose to certify the following Class under Rule 23(a), (b)(2) and 23(b)(3):[30]

> All persons in the United States who purchased tickets for travel on American Airlines flights scheduled to operate to, from, or within the United States from March 1, 2020 to the date of Class certification and who were not issued a refund for cancelled and/or significantly changed flights.[31/32]

Plaintiffs reserve the right to subclass, modify, or amend the class definition as appropriate.

## III.     ARGUMENT

**A.     A Class Certification Hearing Is Premature Given Defendant's Refusal to Produce Documents During the Pendency of Its Motions to Dismiss and Stay Discovery.**

To start, and per Local Rule 23.2(f), a class certification hearing is premature: Defendant has produced no documents due to the pending motions to dismiss and to stay discovery.

On July 22, 2020, Plaintiffs served their Requests for Production, including in their requests topics of discovery necessary, not only for this Motion, but also any hearing.[33] But before filing its responses and objections to the RFPs, on August 13, 2020, Defendant moved "for an order temporarily staying discovery until the Court has ruled on the Motion to Dismiss Plaintiffs' First Amended Complaint and Compel Arbitration, filed concurrently with [its] Motion to Stay on August 13, 2020."[34] Plaintiffs opposed Defendant's motion to stay discovery on August 21, 2020.[35] When Defendant responded to Plaintiffs' RFPs, it objected to Plaintiffs'

---

[30] *See also* Local Rule 23.2(a).

[31] Excluded from any class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from any class is this Court and its employees.

[32] *See also* Local Rule 23.2(b)(2).

[33] *See* App. 21 at PLS_APP-167–187 (Pls.' First RFPs).

[34] ECF No. 43 at 1.

[35] *See generally* ECF No. 48.

requests by asserting discovery is premature pending a ruling on the motion to stay.[36] As the Court has not yet ruled on Defendant's disputed motion to stay, Defendant has not produced the documents necessary for a fulsome certification motion and hearing.

And, while American served its Rule 26(a) initial disclosures on August 28, 2020, in doing so, it produced no documents.[37] But the disclosures reveal a variety of witnesses and document categories that would aid Plaintiffs' in their class certification presentation. Such areas include: (1) Defendant's policies and processes regarding tickets booked on American flights; (2) American's passenger name records, including how to determine which fares may have a refund or a credit for a cancelled or changed flight; (3) American's refund and credit policies, including how refunds and credits are managed within American's systems; and (4) American's policies regarding flights cancelled due to COVID-19 and the Contract.[38]

Following denial of Defendant's motions to dismiss and stay discovery, Plaintiffs request a 120-day discovery period to gather and submit additional evidence to supplement this Motion. Such evidence will aid Plaintiffs in their Rule 23 presentation and will ensure the Court is presented with a more evidentiary submission benefiting from discovery.[39/40]

---

[36] *See* App. 22 at PLS_APP-189–209 (Defendant's Responses and Objections).

[37] *See* App. 23 at PLS_APP-211–217 (Defendant's Rule 26(a) Initial Disclosures).

[38] *See id.* at 212–213.

[39] The parties initially submitted a case schedule that called for the filing of the motion for class certification by March 19, 2021, with discovery to close on June 11, 2021. ECF No. 25 at ¶¶ 4, 8. In its Scheduling Order, the Court initially set October 5, 2020, as the deadline to file class certification and a May 28, 2021 discovery completion deadline. ECF No. 38 at 1–2. The Court found good cause existed for a short extension of the class briefing deadlines given the pending motions to dismiss and stay. ECF No. 58 at 1.

[40] *Compare ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018) ("The propriety of a class action cannot be determined in some cases without discovery; To deny discovery in [such cases] would be an abuse of discretion.") (citation and quotation omitted), *with Adams v. United Ass'n of Journeyman & Apprentices*, 2001 WL 360998, at *1 (5th Cir.

**B.      The Court Should Certify the Class Under Rule 23(b)(2) and (b)(3).**

Notwithstanding the absence of discovery from American, American's conduct indicates that Plaintiffs meet the class certification requirements, satisfying Rule 23(a)'s four threshold requirements, and the requirements of Rule 23(b)(2) and (b)(3).[41]

**1.      Plaintiffs satisfy all four Rule 23(a) requirements.**

**a.      Rule 23(a)(1): Joinder is impracticable given American's cancellation of thousands of flights across the country.**

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable."[42] Although no set number of class members renders joinder impossible, "[t]he Fifth Circuit has implied … a class of over forty people will suffice."[43] Other facts which may relate to the numerosity inquiry include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim."[44] Here, the proposed Class has thousands of members all over the country,[45] so joinder is impracticable, satisfying the numerosity requirement. American's thousands of flight cancellations and abundant consumer complaints provide further support Plaintiffs' numerosity

---

Mar. 22, 2001) (finding "no abuse of the trial court's broad discretion has been shown in the instant denial of class certification" where "[t]he denial was based on a full evidentiary hearing following extensive discovery" and "came after refusal to dismiss on motion"). *See also Richardson v. Dir. Fed. Bureau of Prisons*, 829 F.3d 273, 284 (3d Cir. 2016) ("Parties need sufficient time to develop an adequate record.") (quotation and citation omitted).

[41] *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 252 (5th Cir. 2020); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997).

[42] Fed. R. Civ. P. 23(a)(1).

[43] *Abboud v. Agentra, LLC*, 2020 WL 5526557, at *3 (N.D. Tex. Sept. 14, 2020) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)).

[44] *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (noting common-sense assumptions can support a finding of numerosity).

[45] FAC ¶¶ 3, 56–63, 86; App. 12–16 at PLS_APP-109, 119, 129, 139, 149; Local Rule 23.2(b)(1) and (b)(3).

showing. The thousands of DOT refund complaints and the approximately $2.5 billion of travel credits for unused tickets reported by American further supports a numerosity finding.[46]

### b.   Rule 23(a)(2): Numerous common issues exist surrounding American's flight cancellations and failure to provide refunds.

Rule 23(a)(2) requires "questions of law or fact common to the class."[47] Plaintiffs' claims "'must depend on a common contention,' and the common contention 'must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"[48] The threshold for commonality is not high: the Supreme Court and the Fifth Circuit has clarified, "*even a single [common] question will do*."[49] Not all questions of fact and law need be identical to satisfy the rule.[50] It is unnecessary for class members to "share every fact in common."[51] This requirement "can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse."[52]

The breach of contract claim in this action is based on the same conduct by American: refusing to provide refunds for flights changed or cancelled during the COVID-19 pandemic.

---

[46] *See supra* at Section II(C), p. 5; App. 5 at PLS_APP-64.

[47] Fed. R. Civ. P. 23(a)(2).

[48] *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (quoting *Dukes*, 131 S. Ct. at 2551)).

[49] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 339, 359 (2011) (emphasis added); *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (citations omitted).

[50] *Hackler v. Tolteca Enters., Inc.*, 2019 WL 7759523, at *3 (W.D. Tex. Sept. 9, 2019) (citing *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)).

[51] *Dockery v. Fischer*, 253 F. Supp. 3d 832, 849 (S.D. Miss. 2015) (citing *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012)); *see also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012).

[52] *Seeligson v. Devon Energy Prod. Co.*, 761 F. App'x 329, 334–35 (5th Cir. 2019) (quoting *In re Deepwater Horizon*, 739 F.3d at 810-11).

Each member of the proposed Class is subject to American's contractual provisions that they are entitled to a refund if American changes or cancels their flight. This raises numerous common questions that can be proved with common evidence, including:

> Whether Defendant engaged in the conduct alleged;
>
> Whether Plaintiffs and class members are owed refunds for cancelled and/or significantly delayed flights;
>
> Whether Defendant has a policy and/or procedure of denying refunds to Plaintiffs and class members for cancelled flights;
>
> Whether Defendant breached its contracts with Plaintiffs and class members;
>
> The nature and extent of damages and other remedies to which the conduct of Defendant entitles Plaintiffs and class members.[53]

Breach of contract claims often involve common issues of law or fact, and class certification is appropriate.[54] American's conduct toward class members was consistent, resulting from a desire to avoid providing refunds to passengers at all costs. Commonality is met.

---

[53] Local Rule 23.2(b)(4).

[54] *See* 1 McLaughlin on Class Actions § 5:56 (15th ed. 2018) ("Breach of contract claims arising out of a standardized, form contract ordinarily are suitable for class certification...."); *see also Gray v. Hearst Commcn's, Inc.*, 444 F. App'x 698, 702 (4th Cir. 2011) ("determination of whether [defendant] breached its standard distribution obligation will resolve in one stroke an issue that is central to the validity of the class members' breach of contract claims"); *In re U.S. FoodService Inc. Pricing Litig.*, 729 F.3d 108, 124 (2d Cir. 2013) (approving certification of nationwide Class asserting breach of contract claims where record supported conclusion that the relevant "contracts [we]re substantially similar in all material respects"); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("Because all of the dealer agreements were materially similar[,] … [w]hether [defendant] breached [its] obligation[s] was a question common to the class and the issue of liability was appropriately determined on a class-wide basis"), *aff'd*, 545 U.S. 546 (2005); *Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 428 (N.D. Ill. 2007) ("Claims arising out of form contracts are particularly appropriate for class action treatment…. Additionally, our courts have often found a common nucleus of operative facts when the defendants are, as here, alleged to have directed standardized conduct toward the putative class members.") (internal citations omitted).

  **c.**  **Rule 23(a)(3): Plaintiffs' claims are typical as they were booked to fly on an American-cancelled flight and they have not received a refund.**

Rule 23(a)(3) requires that the "claims … of the representative parties [be] typical of the claims … of the class."[55] The "test for typicality is not demanding" and "focuses on the general similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."[56] Typicality focuses on whether the "class representative's claims have the same essential characteristics of those of the putative class."[57] "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."[58] The Supreme Court recognized "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."[59]

Plaintiffs' claims arise from a common course of conduct and legal theory: American's cancellation of flights and failure to issue requested refunds, breaching its Contract.[60] Their breach of contract claims are based on the same conduct by Defendant. While the damage differs based on the price of the flight ticket, the nature of the claims and the conduct upon which they are based are the same. "The bottom-line question under commonality and typicality is whether the relief the named plaintiffs seek from the Court will resolve all [c]lass members' legal

---

[55] Fed. R. Civ. P. 23(a)(3).

[56] *Bardales v. Fontana & Fontana, LLC*, 2020 WL 5819873, at *4 (E.D. La. Sept. 30, 2020) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999)) (citation omitted); *see also Holmes v. Serv. Corp. Int'l*, 2014 WL 3046971, at *6 (S.D. Tex. July 3, 2014) ("The extent to which *Dukes* changed the threshold for typicality is unclear.").

[57] *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001).

[58] *Villagran v. Cent. Ford, Inc.*, 524 F. Supp. 2d 866, 883 (S.D. Tex. 2007) (quoting *James v. City of Dall.*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012)).

[59] *Dukes*, 564 U.S. at 349 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 (1982)).

[60] *See, e.g.*, FAC ¶ 1.

claims."[61] Plaintiffs' requested relief for the breach of contract claims does so here. The claims and relief sought by Plaintiffs are typical of those of the Class they seek to represent.

> **d.      Rule 23(a)(4): Plaintiffs and class counsel will fairly and adequately protect the interests of the proposed Class.**

Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class."[62] The requirement is met when (1) class counsel prosecute the action zealously and competently; (2) representative parties are willing and able to take an active role in and control the litigation and protect the interests of absentee class members; and (3) there are no conflicts of interest between the representative parties and class members.[63] Adequate representation includes an absence of "interests antagonistic to the unnamed members."[64] Plaintiffs and proposed class counsel can and will adequately represent the Class.

First, proposed class counsel, the law firms of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Webb, Klase & Lemond, LLC satisfy the adequacy requirement as competent and zealous advocates committed to the case. Plaintiffs have employed counsel with the unquestionable qualifications, experience, and resources necessary to prosecute this case to a successful resolution.[65] Both firms have experience handling large consumer class actions, like this case, and have served as lead counsel in numerous class actions around the country.[66]

---

[61] *DeOtte v. Azar*, 332 F.R.D. 188, 200 (N.D. Tex. 2019) (O'Connor, J.).

[62] Fed. R. Civ. P. 23(a)(4).

[63] *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017).

[64] *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

[65] App. 21–22. Plaintiffs request the Court Appoint Hagens Berman Sobol Shapiro LLP and Webb, Klase & Lemond, LLC as class counsel for the proposed Class.

[66] App. 24–25 at PLS_APP-219–273, 275–280.

Hagens Berman and Webb, Klase & Lemond can and will zealously and competently represent the interests of the proposed Class.

Second, Plaintiffs Ward, Saunders, and Holloway have taken actives roles and will continue to take active roles in and control this litigation.[67] Plaintiffs participated in the case thus far, including the Amended Complaint, gathering documents, providing declarations supporting the opposition to the motion to dismiss, and declarations supporting the motion to certify the Class.[68] Plaintiffs understand this case is a class action and seek to serve as class representatives.[69] They understand their duties to prosecute the case vigorously and in the best interests of all class members.[70] Plaintiffs will continue to actively participate and are available to testify at deposition or trial.[71]

Finally, Plaintiffs do not have interests antagonistic to or in conflict with the interests of the class they seek to represent. All class members allege losses from American's cancellation of flights and failure to provide the requested refunds. Plaintiffs and the entire Class have the same interests in recovering the damages caused by American's breach of its Contract to provide refunds for cancelled flights. Therefore, the interests of Plaintiffs and class members are aligned. Plaintiffs can and will adequately represent the interests of the Class.

---

[67] *See* Plaintiff Declarations, App. 18–20, PLS_APP-157–159, 161–162, 164–165.

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.*

15

2.     **The proposed class satisfies the predominance and superiority requirements of Rule 23(b)(3).**

      a.     **Common questions of law and fact predominate.**

Fed. Rule Civ. P. 23 (b)(3) requires that the "questions of law or fact common to all members of the class predominate over questions pertaining to individual members."[72] Predominance and commonality are closely related, though predominance is often considered "more demanding."[73] Rule 23(b)(3) predominance tests if the proposed class is "sufficiently cohesive to warrant adjudication by representation."[74] A common question "is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized class-wide proof.'"[75] However, Rule 23(b)(3) does not require all questions of law or fact be common. When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."[76]

First, common questions of law predominate. Plaintiffs base their breach of contract claim on American's Conditions of Carriage, which calls for the application of Texas law.[77] As a result, all breach of contract claims will be governed by Texas law and the same underlying

---

[72] Fed. R. Civ. P. 23(b)(3); Local Rule 23.2(b)(5)

[73] *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 348 (5th Cir. 2012).

[74] *Amchem Prods.*, 521 U.S. at 623.

[75] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:50, at 196-97 (5th ed. 2012)).

[76] *Id.* (quotation omitted).

[77] *See* App. 3 at PLS_APP-26. ("Texas law applies to this contract.").

elements—i.e., "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach."[78]

*Second*, common questions of fact predominate as well. The Fifth Circuit recognizes that breach of contract cases "often lend themselves to class treatment."[79] "When a proposed class challenges a uniform policy, as here, the validity of that policy tends to be the predominant issue in the litigation."[80] As discussed *supra*, at Section III(B)(1)(b), numerous questions apply to the entire Class, each of which depends upon issues common to the entire Class. The substantive issue that will control the outcome is common to every class member: did American breach its Contract by refusing to provide refunds for flights it cancelled or significantly changed?

*Moreover*, the Fifth Circuit has determined individualized damages calculations do not have to bar class certification.[81] In fact, "[i]t is [] common for Rule 23(b)(3) class actions to

---

[78] *Garza v. Bank of Am., N.A.*, 2014 WL 5315088, at *2 (N.D. Tex. Oct. 17, 2014) (O'Connor, J.)). *See also McKeage v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017) (predominance requirement met in nationwide form contract Class where, inter alia, all claims were governed by Missouri law).

[79] *Cruson*, 954 F.3d at 255 (citing *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) (observing "[i]t is the form contract, executed under like conditions by all class members, that best facilitates class treatment")); *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 441 (1st Cir. 2013) (explaining that Class certification is generally proper where the outcome will not depend on extrinsic evidence "that would be different for each putative class member"); 2 William B. Rubenstein, Newberg on Class Actions § 3.24 (explaining that claims arising out of "form contracts" are often "particularly appropriate for class action treatment").

[80] *Beley v. City of Chicago*, 2015 WL 8153377, at *5 (N.D. Ill. Dec. 7, 2015) (citing *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352 (N.D. Ill. 2008)).

[81] *In re Deepwater Horizon*, 785 F.3d 1003, 1017 (5th Cir. 2015); *see also Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) (recognizing a class can be certified even when "calculating damages will require some individualized determinations" and "virtually every issue prior to damages is a common one").

involve different damage [a]wards for different class members."[82] "If the issues of liability are genuinely common issues ... the fact that damages are not identical across all class members should not preclude class certification."[83] At this stage, Plaintiffs need not "prove [] the predominating question will be answered in their favor."[84] Here, the only difference in claims is the refund amount each class member would be entitled to should Plaintiffs establish liability. But, as noted above, it is expected Plaintiffs can prove their damages on a class-wide and individual basis by rote extraction of passenger fare data from American's own data and business records.

> **b.    A class action is a superior method for adjudicating this controversy.**

The Rule 23(b)(3) analysis requires a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[85] Rule 23(b) provides a list of factors to be considered, and each supports certifying the Class:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

---

[82] *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 233 (7th Cir. 1983); *Chi. Teachers Union, Local No.1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015) ("[that] individualized remedies and damages may have to be determined for each plaintiff ... does not prevent certification of the class").

[83] *Slipchenko v. Brunel Energy, Inc.*, 2013 WL 4677918, at *13 (S.D. Tex. Aug. 30, 2013) (quoting *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 2013 WL 4478200, at *5 (7th Cir. Aug. 22, 2013) ("It would drive a stake through the heart of the class action device, in cases in which damages were sought … to require that every member of the class have identical damages.")).

[84] *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468, (2013).

[85] Fed. R. Civ. P. 23(b)(3).

(D)      the likely difficulties in managing a class action.[86]

This case meets each standard for superiority.

First, a class action for all passengers seeking refunds for flights cancelled or significantly changed by American is superior to each passenger filing an individual case. The number of class members here is far too large, and the claims too small for each class member to prosecute as a separate individual action. A class action is superior where it will "achieve [significant] economies of 'time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"[87] It would not make economic sense for each passenger to file and litigate a case against American seeking ticket refunds. Class members do not have a strong interest in controlling the case because the size, complexity, and cost of pursuing a case against American exceeds the size of any individual's claims. Claims of class members are so similar that a class action is more efficient that separate actions.

Second, Plaintiffs' counsel are not aware of any other ongoing litigation about American's refund practices during the Covid-19 pandemic.[88]

Third, this Court is a desirable forum because Texas is the applicable forum under American's Contract.[89] Additionally, this forum is preferred given this Court's general personal jurisdiction over American Airlines, as it is headquartered in Fort Worth, Texas and one of its largest hubs in terms of passengers carried and numbers of departures is the Dallas/Fort Worth

---

[86] *Id.*

[87] *In re Deepwater Horizon*, 739 F.3d at 817 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

[88] The only known matter involving the issues raised in this case was voluntarily dismissed under Fed. R. Civ. P. 41(a)(1)(A)(i) on September 22, 2020. *See* ECF No. 31, *Gimello v. American Airlines Grp. Inc.*, No. 4:20-cv-00948-O (N.D. Tex.).

[89] App. 3 at PLS_APP-26 ("Texas law applies to this contract.").

International Airport, only a few miles away from the Northern District of Texas, Fort Worth

Division. And the claims center on the decision-making of American's executives and

employees regarding its refund policy who, on information and belief, work in this judicial

district, making this district the most desirable forum.

Finally, there are no difficulties in managing this case that suggest it should not be treated

as a class action. American's liability can be proved with evidence of American's conduct

common to the entire Class. Therefore, the superiority requirement is satisfied and the Rule

23(b)(3) Class should be certified.

### 3.    The proposed Class satisfies Rule 23(b)(2), because American Airlines has acted on grounds generally applicable to the entire Class.

The Class also satisfies Rule 23(b)(2), which applies where a defendant has "acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole."[90] "The key to the

(b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted—the

notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the

class members or as to none of them.'"[91] "In other words, Rule 23(b)(2) applies only when a

single injunction or declaratory judgment would provide relief to each member of the class."[92]

In the Fifth Circuit, "[i]t is well-established that [i]nstead of requiring common issues,

[Rule] 23(b)(2) requires common behavior by the defendant toward the class."[93] There are three

requirements for certification under Rule 23(b)(2) "(1) 'class members must have been harmed

---

[90] Fed. R. Civ. P. 23(b)(2).

[91] *Wal-Mart Stores, Inc.*, 564 U.S. at 360.

[92] *Id*. at 366.

[93] *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) (quotation and citation omitted)).

in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific.'"[94] Here, Plaintiffs seek a single injunction that stops American from refusing to provide refunds for flights it cancelled or significantly delayed. Plaintiffs and all class members were harmed in the same way, based on Defendant's failure to provide the required refunds in breach of its Contract. The injunctive relief applies to all class members.

The Rule 23(b)(2) class mechanism is "intended to focus on cases where broad, class-wide injunctive or declaratory relief is necessary."[95] Although a Rule 23(b)(2) class can recover forms of monetary relief, injunctive and declaratory relief must predominate.[96] Monetary relief does not predominate where it is "incidental"—that is, it "flow[s] directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief."[97] The equitable monetary relief is in the form of refunds for cancelled or significantly delayed flights applicable to all class members.[98] The injunctive relief requested would require American to refund to all class members. Therefore, the monetary relief flows directly from a finding of liability on the Plaintiffs claims for classwide injunctive and declaratory relief. While the amount of refund owed to each class member may not be identical, the amount owed will be determined from the same evidentiary data: American's records of ticket purchases and refund requests.

---

[94] *Id*. at 366 (quotation and citation omitted).

[95] *Allison v. Citgo Petro. Corp*., 151 F.3d 402, 412 (5th Cir. 1998).

[96] *Id.* at 413.

[97] *Id.* at 415 (emphasis in original).

[98] *Id.* (citing *Pettway v. Am. Cast Iron Pipe Co*., 494 F.2d 211 (5th Cir. 1974) (noting back pay could be recovered in a Rule 23(b)(2) Class action because it is an equitable remedy "[w]e construed (b)(2) to permit monetary relief when it was an equitable remedy, and the defendant's conduct made equitable remedies appropriate.").

Finally, Plaintiffs seek specific injunctive relief. Plaintiffs and class members seek to enjoin American from breaching its contract by refusing to refund passengers. Rule 23(b)(2) applies as well.

### 4. The Class is ascertainable given American's records of every single passenger booked on cancelled flights.

Besides the requirements of Rule 23(a) and (b), the Fifth Circuit has determined that the class must also be "adequately defined and clearly ascertainable."[99] It is unnecessary for every potential class member to be identified at the commencement of the action or before certification for the class to be ascertainable.[100] Ascertainability only requires the court be able to identify class members "at some stage of the proceeding."[101] The key is to ensure that "class members can be ascertained by reference to objective criteria."[102]

Plaintiffs' class definition satisfies this test. Class members may be identified by using objective criteria. Here, class members whose flights were cancelled by American and sought refunds will be determined through American's records. Indeed, American has records of all flight purchases and cancelled flights, which will provide sufficient objective criteria to identify class members. As American describes its recordkeeping practices:

> American creates a record for each booking that involves travel on American Airlines, even if the ticket is sold under another airline's booking code. When you book travel on American, we will collect and store information about your transaction, including whether

---

[99] *In re Deepwater Horizon*, 785 F.3d at 1018 (internal citations and quotations omitted).

[100] *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (quoting William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed. 2011)); *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970) ("It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained.").

[101] *Seeligson v. Devon Energy Prod. Co.*, 753 F. App'x 225, 230 (5th Cir. 2018) (quoting *Frey*, 602 F. App'x at 168).

[102] *DeOtte*, 332 F.R.D. at 196 (O'Connor, J.) (internal quotations and citations omitted).

> you booked your flight on aa.com or through another sales channel
> (such as a travel agency). American will also collect and store
> information about changes to your booking, including a
> cancellation or failure to complete your travel, upgrades, your
> baggage requirements, airport disruption, and lost baggage.[103]

The Class is ascertainable.

## C.     Plaintiffs Satisfy the Additional Requirements of Local Rule 23.2.

### 1.     Local Rule 23.2 (b)(1): approximate number of class members.

Local Rule 23.2(b)(1) calls for the "approximate number of class members." Without

discovery it is difficult to determine the precise number of passengers affected by American's

conduct. Based on news reports and American's report to the SEC, the approximate number of

class members number in the thousands or even over a million.[104] Additional discovery is

necessary on this factor.

### 2.     Local Rule 23.2(c): financial responsibility to fund the action.

Proposed Co-Lead Counsel have undertaken to fund this action on behalf of the Class on

a contingent basis. They have paid all the costs of litigation incurred, and commit to continuing

to fund the action through trial.

### 3.     Local Rule 23.2(d): basis for determining any required jurisdictional
amount.

Plaintiffs allege American owes passengers a refund of their paid ticket prices for

cancelled or significantly changed flights. Based upon the number of class members and cost of

airline tickets, Plaintiffs easily meet the jurisdictional threshold amount of $5,000,000 as

required by 28 U.S.C. § 1332(d)(2). Additional discovery is necessary on this factor.

---

[103] App. 26 at PLS_APP-283, available at https://www.aa.com/i18n/customer-service/support/privacy-policy.jsp (last visited Oct. 27, 2020).

[104] FAC ¶¶ 3, 56–63. 86; App. 12–16 at PLS_APP-109, 119, 129, 139, 149; Local Rule 23.2(b)(1).

### 4.     Local Rule 23. 2(e): type and estimated expense of notice.

Notice will be provided by mail and/or electronic mail, based on American's passenger records. class counsel will hire a notice administrator and will advance the notice costs.

### 5.     Local Rule 23.2(g): arrangements for payment of plaintiffs' attorney's fees.

Counsel were retained on a contingency basis, with the Court to rule on fees at the conclusion of the case involving a certified class action per Fed. R. Civ. P. 23(e) and (h).

### D.     Hagens Berman and Webb, Klase & Lemond Should Be Appointed Class Counsel.

Finally, Plaintiffs respectfully request that the Court appoint Hagens Berman Sobol Shapiro LLP and Webb, Klase & Lemond, LLC as class counsel. Rule 23(g) mandates that "a court that certifies a class must appoint class counsel."[105] Courts consider four factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."[106] Plaintiffs' counsel has and will continue to "fairly and adequately represent the interests of the class."[107] As described *supra* at Section III(B)(1)(d), Plaintiffs' counsel has and will continue to invest time and resources litigating against American.[108] Therefore, Plaintiffs request that the Court appoint Hagens Berman Sobol Shapiro LLP and Webb, Klase & Lemond, LLC as class counsel.

---

[105] Fed. R. Civ. P. 23(g)(1).

[106] Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

[107] Fed. R. Civ. P. 23(g)(4).

[108] *See* App. 24–25 at PLS_APP-219–273, 275–280, Firm Resumes of Hagens Berman Sobol Shapiro LLP, and Webb, Klase & Lemond, LLC.

## IV.   CONCLUSION

For the reasons provided above, Plaintiffs respectfully request that the Court certify the proposed Class pursuant to Rule 23(a), (b)(2), and 23(b)(3). Plaintiffs further request that the Court designate Plaintiffs as class representatives and appoint Hagens Berman Sobol Shapiro LLP and Webb, Klase, & Lemond, LLC as class counsel.

Dated: October 29, 2020

Respectfully submitted,

*/s/ Daniel J. Kurowski*

Allen R. Vaught
TX Bar No. 24004966
VAUGHT FIRM, LLC
1910 Pacific Ave., Suite 9150
Dallas, TX 75201
(214) 675-8603 | (214) 261-5159 (fax)
allen@vaughtfirm.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292 | (206) 623-0594 (fax)
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949 | (708) 628-4950 (fax)
dank@hbsslaw.com
whitneys@hbsslaw.com

E. Adam Webb (*Pro Hac Vice*)
G. Franklin Lemond, Jr. (*Pro Hac Vice*)
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, Georgia 30339
(770) 444-9325 | (770) 217-9950 (fax)
Adam@WebbLLC.com
Franklin@WebbLLC.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(b), on October 27, 2020, counsel for Plaintiffs Whitney K. Siehl and G. Franklin Lemond, Jr. telephonically conferred with counsel for American Airlines, Michael Bern and Dee Kelly regarding the foregoing Plaintiffs' Motion for Class Certification. American's counsel stated they were opposed to the filing of the relief requested in the Motion, and believe there are other pending motions dispositive to the claims.

*/s/ Whitney K. Siehl*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on October 29, 2020, a true and correct copy of the foregoing was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record.

*/s/ Daniel J. Kurowski*

27