**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| LEE WARD, JAMES SAUNDERS, and WILLIAM HOLLOWAY, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 4:20-cv-371 |
| AMERICAN AIRLINES, INC., | ) ) | |
| Defendant. | ) | |

_____

**DEFENDANT AMERICAN AIRLINES, INC.'S**
**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION**
**FOR CLASS CERTIFICATION**

Dee J. Kelly Jr., TX No. 11217250
Lars L. Berg, TX No. 00787072
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102-3194
Phone: 817-878-3524
Fax: 817-878-9280
Email: dee.kelly.2@khh.com
Email: lars.berg@kellyhart.com

James E. Brandt (admitted pro hac vice)
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Email: james.brandt@lw.com
Phone: (212) 906-1278
Fax: (212) 751-4864

Michael E. Bern (admitted pro hac vice)
Tyce R. Walters (admitted pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Email: michael.bern@lw.com
Email: tyce.walters@lw.com
Phone:  (202) 637-2200
Fax:  (202) 637-2201

Dated:  November 19, 2020

# **TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ....................................................................................1

II.     BACKGROUND ........................................................................................................4

     A.      Plaintiff's Tickets................................................................................................4

     B.      American's Conditions of Carriage .....................................................................7

     C.      Procedural History .............................................................................................9

III.    LEGAL STANDARD..................................................................................................11

IV.     ARGUMENT ..............................................................................................................12

     A.      Plaintiff Lacks Article III Standing......................................................................12

     B.      The Proposed Class Is Neither Adequately Defined Nor Clearly
           Ascertainable........................................................................................................14

     C.      Plaintiff Cannot Satisfy Rule 23's Requirements .................................................16

           1.      Plaintiff Could Theoretically Satisfy Numerosity Only By
                  Maintaining A Class Definition That Is Unviable ....................................17

           2.      Plaintiff Is Neither A Typical, Nor Adequate Class Representative .........19

           3.      Plaintiff Fails To Demonstrate That Common Questions
                  Predominate ...........................................................................................21

V.      CONCLUSION...........................................................................................................25

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Am. Airlines v. Wolens*,
    513 U.S. 219 (1995)..................................................................................................16

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006)..................................................................................2, 19

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
    242 F.3d 290 (5th Cir. 2001) ...............................................................................1, 12

*Bridgewater v. Double Diamond-Delaware, Inc.*,
    2011 WL 1671021 (N.D. Tex. Apr. 19, 2011) ........................................................11

*Castanares v. Deutsche Lufthansa Ag*,
    2020 WL 6018807 (C.D. Cal. Oct. 9, 2020)...........................................................12

*City of San Antonio v. Hotels.com*,
    2008 WL 2486043 (W.D. Tex. May 27, 2008) ....................................................2, 19

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..................................................................................................11

*Conrad v. Gen. Motors Acceptance Corp.*,
    283 F.R.D. 326 (N.D. Tex. 2012) ...........................................................................15

*Cotton v. Certain Underwriters at Lloyd's of London*,
    831 F.3d 592 (5th Cir. 2016) ..................................................................................14

*Cruson v. Jackson Nat'l Life Ins. Co.*,
    954 F.3d 240 (5th Cir. 2020) .............................................................................16, 21

*Dallas Cty., Tex. v. MERSCORP, Inc.*,
    2012 WL 6208385 (N.D. Tex. Dec. 13, 2012) .......................................................11

*Diacakis v. Comcast Corp.*,
    2013 WL 1878921 (N.D. Cal. May 3, 2013)...........................................................16

*Dickson v. Am. Airlines, Inc.*,
    685 F. Supp. 2d 623 (N.D. Tex. 2010) .................................................................3, 20

*Doe v. Chao*,
    306 F.3d 170 (4th Cir. 2002) ..................................................................................19

*Feder v. Electronic Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2016) ........................................................................21

*Flecha v. Medicredit, Inc.*,
    946 F.3d 762 (5th Cir. 2020) ........................................................11, 12, 18

*Igwe v. Northwest Airlines*,
    2007 WL 43811 (S.D. Tex. Jan. 4, 2007) .....................................................3, 20

*John v. Nat'l Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) ..............................................................11, 14

*King v. American Airlines, Inc.*,
    284 F.3d 353 (2d Cir. 2002)......................................................................24

*In re Kosmos Energy Ltd. Sec. Litig.*,
    299 F.R.D. 133 (N.D. Tex. 2014) .............................................................17

*Lee v. American Airlines, Inc*.,
    2002 WL 31230803 (N.D. Tex. Sep. 30, 2002)..........................................16

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................12, 13

*Luna v. Compania Panamena De Aviacion, S.A.*,
    851 F. Supp. 826 (S.D. Tex. 1994) ..............................................................5

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012).......................................................................19

*In re McNeil Consumer Healthcare*,
    877 F. Supp. 2d 254 (E.D. Pa. 2012) .........................................................13

*Rivera v. Wyeth-Ayerst Labs*.,
    283 F.3d 315 (5th Cir. 2002) ..............................................................11, 12

*In re Sadia*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ...............................................................19

*Shabotinsky v. Deutsche Lufthansa AG*,
    245 F. Supp. 3d 1018 (N.D. Ill. 2017) ......................................................24

*M.D. ex rel. Stukenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012) .....................................................................12

*Torres v. S.G.E. Mgmt., L.L.C.*,
    838 F.3d 629 (5th Cir. 2016) .....................................................................21

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) .................................................................................21

*Unger v. Amedisys Inc.*,
   401 F.3d 316 (5th Cir. 2005) .......................................................................10

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) .......................................................................14

*Zamber v. Am. Airlines, Inc.*,
   No. 4:20-CV-00114-O, 2020 WL 3163037 (N.D. Tex. June 11, 2020) ...........15, 24

## RULES

Fed. R. Civ. P. 23 ................................................................................. *passim*

Fed. R. Civ. P. 23(a) ............................................................................ *passim*

Fed. R. Civ. P. 23(a)(1) ...............................................................................17

Fed. R. Civ. P. 23(a)(3) ...............................................................................19

Fed. R. Civ. P. 23(a)(3-4)'s .........................................................................19

Fed. R. Civ. P. 23(b)(3) ....................................................................11, 16, 21

## TREATISES

7A Charles Alan Wright, et al, *Federal Practice and Procedure* § 1760 (3d ed.
   2005) (3d ed.) .............................................................................................15

## OTHER AUTHORITIES

American Airlines, Liability for International Flights,
   https://www.aa.com/i18n/customer-service/support/liability-for-international-
   flights.jsp (last visited Nov. 17, 2020) ........................................................9

Convention for Unification of Certain Rules for International Carriage by Air,
   Done at Montreal on 28 May 1999, *reprinted in* S. Treaty Doc. No 106-45,
   1999 WL 33292734 (Sep. 6, 2000) (entered into force Nov. 4, 2003) ..................20

Daniella Silva, *Americans Stuck In Peru Over Coronavirus Fears Urge U.S. To
   Bring Them Home*, NBC News (Mar. 19, 2020) ..........................................5

*Refund*, Oxford English Dictionary (3d ed. 2009) ........................................14

## I.       PRELIMINARY STATEMENT

This case is entirely inappropriate for class treatment, and Lee Ward, the sole remaining plaintiff, would be singularly unsuited to represent the class if it were.  Plaintiff's motion fails for three principal reasons: (1) he lacks Article III standing to bring his suit; (2) he cannot satisfy the requirements of Rule 23(a) because his claim is subject to a host of unique defenses that render him atypical of and inadequate to lead his proposed class; and (3) Plaintiff cannot satisfy Rule 23(b)'s predominance requirement, because each putative class member's sole remaining claim for breach of contract turns on individualized issues not susceptible to common proof.

First, although "[s]tanding is an inherent prerequisite to the class certification inquiry, *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001), Plaintiff lacks Article III standing to pursue his claims.  As American has continued to develop the facts in anticipation of opposing Plaintiff's Motion for Class Certification, American has learned that Plaintiff has *already been issued a refund* with respect to his first ticket by his travel agency One Travel—the actual entity from which he purchased the ticket.  His second flight, meanwhile, was not cancelled by American:Plaintiff cancelled his own ticket, and the American flight departed as scheduled.  Plaintiff therefore has suffered no injury—let alone one traceable to or redressable by American—and thus cannot satisfy the requirements of Article III standing.[1]

---

[1] American's ongoing investigation recently turned up these dispositive failings in Plaintiff's claim—to go along with those to which American already pointed in its motion to dismiss. American also is continuing to investigate records suggesting that Plaintiff may already have received a refund from LATAM or his travel agency for his *second* ticket in addition to the first one; however, it has been unable to complete that investigation as of this filing.  While resolution of that investigation is not necessary for this Court to deny Plaintiff's motion for class certification, American will inform the Court to the extent that it completes its investigation prior to this Court's ruling on the instant motion.  In any event, Plaintiff can and should self-report the relevant facts—including his cancellation of his second ticket and the refund he received with regard to his first ticket—in Plaintiff's forthcoming reply brief.  In light of the information that

1

Second, Plaintiff cannot satisfy the requirements of Fed. R. Civ. P. 23(a).  Most glaringly, he is not a typical nor adequate class representative because his sole remaining claim is subject to numerous unique defenses that are certain to become a major focus of the litigation—and all of which dispose of his claim.  *See, e.g.*, *City of San Antonio v. Hotels.com*, 2008 WL 2486043 at *6 (W.D. Tex. May 27, 2008); *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006).

To begin with, this Court has acknowledged that Plaintiff's breach of contract claim, premised on American's Conditions of Carriage, is limited "to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."  MTD Order 23, Dkt. 65.  But the plain language of that agreement bars Plaintiff's claim.  American's Conditions of Carriage provide that American "will only refund tickets *issued by American Airlines*."  Def. App. 60 (emphasis added).  Plaintiff's tickets were issued by another airline, LATAM—not American.  In addition, consistent with the terms of its interline agreement with LATAM, American never received any payment with respect to either of Ward's tickets because Plaintiff never actually flew on American; American therefore has no funds to refund.

And that is not all.  Although Plaintiff seeks to represent a class of individuals injured by "American's cancellation of flights," Mot. 13, American was not responsible for the cancellation of either of Plaintiff's tickets.  Plaintiff cancelled his second ticket himself.  And LATAM caused the cancellation of his first ticket when, on March 27, 2020, FAC ¶ 15, it cancelled the first segment of Plaintiff's return flight from Lima to Miami—days before American made any schedule change to its connecting flight from Miami to Las Vegas.  In addition, Plaintiff's claim—unlike those of most putative class members—is preempted by "the Montreal

---

American recently learned, and continues to learn, American also may seek leave from this Court to amend its Answer at an appropriate time.

2

Convention, which provides the exclusive remedies of international passengers against their air carriers," *Dickson v. Am. Airlines, Inc.*, 685 F. Supp. 2d 623, 626 (N.D. Tex. 2010), including with respect to breach-of-contract claims like this one, *Igwe v. Northwest Airlines, Inc.*, 2007 WL 43811, at *3-4 (S.D. Tex. Jan. 4, 2007).  For all these reasons, Plaintiff is atypically and inadequately situated relative to the class he seeks to represent.

Third, Plaintiff cannot meet his burden under Fed. R. Civ. P. 23(b) to show that common issues predominate.  Plaintiff proposes to lead and certify a class of

> [a]ll persons in the United States who purchased tickets for travel on American Airlines flights scheduled to operate to, from, or within the United States from March 1, 2020 to the date of Class certification and who were not issued a refund for cancelled and/or significantly changed flights.

Mot. for Class Cert. 8.

That putative class is vastly overbroad, clustering together an array of differently situated individuals—the overwhelming majority of whom are not contractually entitled to refunds or even eligible to participate in this class action.[2]  For instance, Plaintiff's proposed class includes: (1) individuals whose tickets were not issued by American, and therefore cannot show entitlement to a refund *from American*; (2) individuals who themselves cancelled their tickets for travel on American; (3) individuals who purchased tickets for which American never received payment, and thus has no funds to refund; (4) individuals whose claims are subject to an arbitration clause; (5) individuals whose state law claims are preempted by the Montreal Convention; (6) individuals who chose re-accommodation on another flight or a credit instead of

---

[2] Plaintiff, to date, has failed to identify a single American passenger who was entitled to a refund under the terms of American's Conditions of Carriage but whom American refused to pay.  That is because, of course, American has honored and will continue to honor its obligation to pay refunds to those actually entitled to them.

a refund; (7) individuals for whom another airline's cancellation caused the cancellation of their American itinerary; and (8) AAdvantage members or other American customers who waived the right to participate in a class action.

To succeed on a breach of contract claim, each putative class member must show that he is entitled to a refund under the terms of American's Conditions of Carriage. But as the list above (and Plaintiff's own claim) underscores, that determination is not susceptible to common proof, but rather will require individualized inquiries into the particular facts of that member's case. As such, common issues do not predominate.

Plaintiff tries to frame this case as simply revolving around American's policies and the terms of its contractual obligations. But the obligations imposed by American's Conditions of Carriage are not subject to substantial dispute—if this case proceeds, the core questions will not revolve around what the Conditions of Carriage require, but whether individual customers had a right to a refund under those requirements, but were wrongly denied one. Those individualized determinations are not susceptible to class-wide answers, and Mr. Ward could not lead such a class even if they were. This Court should deny Plaintiff's motion for class certification.

## II.     BACKGROUND

### A.     Plaintiff's Tickets

Plaintiff Lee Ward's claim arises from two separate tickets. FAC ¶ 13. Plaintiff first purchased a roundtrip ticket issued by LATAM Airlines via an online travel agency named OneTravel.com. *Id.* at ¶¶ 13, 24; Def. App. 3 (¶ 6); Def. App. 10-17, 19. That ticket (number 0457491357873) involved travel scheduled to depart on March 12, 2020 from Las Vegas, Nevada to Lima, Peru, via Los Angeles, California, and to return on March 31, 2020 from Lima to Las Vegas via Miami, Florida. FAC ¶ 13; *see* Def. App. 3-5 (¶¶ 6-8); Def. App. 10-17. Pursuant to an interline agreement between LATAM and American, LATAM has the ability to

sell seats on American flight segments as part of the tickets that it sells to its customers. *See* Def. App. 125-126 (¶¶ 4-7); *see also Luna v. Compania Panamena De Aviacion, S.A.*, 851 F. Supp. 826, 828–29 (S.D. Tex. 1994) (explaining that under interline agreement, one airline (the issuing airline) is "authorized to make reservations and issue tickets" for another airline (the carrier airline)). Only one of the four segments that LATAM sold Plaintiff—his return flight from Miami to Las Vegas—involved a segment on American. FAC ¶ 28; Def. App. 10, 17. The other segments were on other airlines. *See id.; id.* at 127 (¶¶ 11-12).

On March 12, 2020, Plaintiff traveled to Lima as planned. FAC ¶ 14. On March 15, 2020, the government of Peru closed its international borders and initiated a nationwide quarantine, which included the cessation of all regularly scheduled international air travel. *See* Daniella Silva, *Americans Stuck In Peru Over Coronavirus Fears Urge U.S. To Bring Them Home*, NBC News (Mar. 19, 2020).[3] On March 27, in the midst of that quarantine, LATAM cancelled the first leg of Plaintiff's return flight back to the United States—Lima to Miami. *See* Def. App. 4 (¶¶ 8-9); *see also* FAC ¶ 16. Three days later, on March 30, American cancelled Plaintiff's originally ticketed flight from Miami to Las Vegas, and rebooked Plaintiff on alternative flights from Miami to Dallas / Fort Worth, and from Dallas / Fort Worth to Las Vegas. *See* Def. App. 4-5 (¶ 10); *id.* at 16. Because LATAM had previously cancelled Plaintiff's initial flight to Miami, however, and had not rebooked him on an alternative flight to the United States, Plaintiff would not have been able to board American's flight whether or not his American flight had flown as scheduled. *See id.* at 4-5 (¶¶ 9-10).[4]

---

[3] Available at https://www.nbcnews.com/news/world/americans-stuck-peru-over-coronavirus-fears-urge-u-s-bring-n1164316.

[4] The complication introduced by LATAM's prior cancellation of its Lima-Miami flight and its disruption to Plaintiff's travel introduces a further reason why he is an inadequate and atypical class representative, in addition to those discussed *infra* at 19-21.

Plaintiff also purchased a second roundtrip ticket from LATAM via OneTravel.com. That ticket (number 0457506817764) involved travel from Las Vegas to Lima via Los Angeles, scheduled to depart on May 30, 2020, and returning to Las Vegas via Los Angeles on August 3, 2020.  FAC ¶ 24; *see also* Def. App. 6 (¶ 15); *id.* at 23-29.  Again, only one of those four segments (from Los Angeles to Las Vegas on August 3) involved travel on an American flight segment.  FAC ¶ 12.  On April 8, 2020, Plaintiff—not American—cancelled his ticket.  *See* Def. App. 6 (¶ 16).  Indeed, American did not cancel the flight on which Plaintiff had been booked; that flight flew as scheduled on August 3, 2020.  *See id.* at 7 (¶ 18); *id.* at 31.  Plaintiff did not fly on that flight, nor any of the segments on his originally ticketed itinerary.

Neither of Plaintiff's tickets were issued by American.  *See* Def. App. 127-128 (¶¶ 11-14); *id.* at 4, 6 (¶¶ 6-7, 15).  Airline tickets contain a three-digit prefix that indicates the carrier responsible for issuing the ticket.  *See id.* at 4 (¶ 7).  The two tickets about which Plaintiff complains both begin with the prefix 045—corresponding to LATAM (formerly LAN)—not 001, the prefix applicable to flights issued by American.  *See id.* at 3-4, 6 (¶¶ 6-7, 15); *id.* at 10, 23.  While LATAM is authorized to sell seats on American flight segments pursuant to an interline agreement, the "045" prefix associated with Plaintiff's tickets make clear that they were issued by LATAM.  Importantly, pursuant to the terms of its interline agreement with LATAM, American receives no funds from LATAM unless a passenger travels on American.  *Id.* at 139 (§ 8.1) ("Each issuing airline agrees to pay to each carrying airline the transportation charges applicable to the transportation *performed* by such carrying airline.") (emphasis added); *id.* at 128 (¶17).  As one would expect given that Plaintiff did not actually travel on an American flight with respect to either ticket, FAC ¶¶ 23, 25, American was never paid for those tickets, Def. App. 129 (¶¶ 19-20).  Indeed, consistent with the fact that Plaintiff never traveled on American,

American's records establish that it never even asked for payment from LATAM.  *Id.* (¶¶ 21-22); *id.* at 163-73.

In addition, although Plaintiff seeks a refund from American in this case, American recently learned that he has in fact already been issued a full refund by his travel agency, OneTravel.com, for his first ticket.  Plaintiff received a refund of roughly $650 in relation to that first ticket, comprising the unused portion of his and his traveling companion's ticketed itineraries—including his originally ticketed American segment from Miami to Las Vegas.  *See* Def. App. 5-6 (¶¶ 11-14); *id.* at 19-21.  As such, it appears that Plaintiff already has received the relief he seeks in this case with respect to his first ticket.  *See* FAC ¶ 120.[5]

### B.    American's Conditions of Carriage

Tickets for travel on American incorporate American's Conditions of Carriage—a document setting forth a passenger's contractual rights and responsibilities on flights operated by American.  FAC ¶ 101; *see also* Def. App. 37-62  Those Conditions of Carriage expressly address when refunds are available in the event that a passenger elects to change or cancel his nonrefundable ticket.  As the contract makes clear, American generally "do[es] not refund cash for non-refundable tickets."  Def. App. 59.  Instead, when a customer "cancel[s] [a] trip before departure," the Conditions of Carriage permit a customer to "use the value of [the] ticket toward future travel on American," so long as the passenger rebooks and travels within one year and pays a change fee plus any fare difference.  *Id.*  Once a customer cancels their ticket, they no

---

[5] American is aware of information that suggests that Plaintiff may have been issued a refund with respect to his second ticket as well.  However, because American was unable to resolve that matter by this time of this filing, it stands on its other arguments with respect to the second ticket—including that Plaintiff (rather than American) cancelled his ticket, and that American's flight was not cancelled at all, but rather flew as scheduled.  Plaintiff should self-report, however, if he has in fact received a refund with respect to his second ticket.

longer have a valid ticket for travel on American, and are ineligible to receive a refund for any future action American might take with respect to that flight.

The federal government has confirmed that passengers are not due refunds for tickets they themselves cancel, even when related to COVID-19 concerns.  In particular, the Department of Transportation ("DOT") has explained that "[p]assengers who purchase a non-refundable ticket on a flight to, within, or from the United States that is still being operated without a significant change, but would like to change or cancel their reservation, are generally *not entitled to a refund or a travel voucher for future use on the airline. This is true even if the passenger wishes to change or cancel due to concerns related to the COVID-19 public health emergency*." U.S. Dep't of Transp., FAQ Regarding Airline Ticket Refunds Given the Unprecedented Impact of the Covid-19 Public Health Emergency on Air Travel at 2 (May 12, 2020).[6]

By contrast, when *American* cancels a passenger's flight on American, a passenger with a valid ticket issued by American is generally entitled to request a refund for the value of his ticket (or the value of the unused segments of the passenger's trip), if the passenger opts not to fly on another available flight.  *See* Def. App. 59; *see also id.* at 51 ("When your flight is canceled … we'll rebook you on the next flight with available seats. If you decide not to fly because your flight was …  canceled, we'll refund the remaining ticket value and any optional fees.").  The Conditions of Carriage specify, however, that American "will only refund tickets issued by American Airlines." *Id.* at 60.

American's Conditions of Carriage stipulate that special rules set forth by the Warsaw or Montreal Convention govern the rules and responsibilities pertaining to delays associated with

---

[6] Available at https://www.transportation.gov/sites/dot.gov/files/2020-05/Refunds-%20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%202020%29.pdf.

international trips.  *See, e.g.*, Def. App. 48.  Pursuant to the Montreal Convention, to which both

the United States and Peru are signatories, American is not liable for any delay in the

transportation of passengers if, among other things: (1) it proves that it and its servants and

agents took all measures that could reasonably be required to avoid the damage, or that it was

impossible for it or them to take such measures; or (2) if delay is the result of actions by

"[a]irport, air traffic control, security, and other facilities or personnel, whether public or private,

not under the control and direction of the Carrier."  *See* American Airlines, Liability for

International Flights, https://www.aa.com/i18n/customer-service/support/liability-for-

international-flights.jsp (last visited Nov. 17, 2020) (available from hyperlink at Def. App. 48).

### C.   Procedural History

On April 22, 2020, Plaintiff filed this putative class action.  After counsel for American

contacted Plaintiff's counsel to inform them that there were several deficiencies in Plaintiff's

claims—including that Plaintiff's ticket was not issued by American, and American had never

received any funds from Plaintiff—Plaintiff's counsel amended their complaint to name two

additional plaintiffs: James Saunders and William Holloway.  FAC ¶¶ 29-38.

American moved to compel arbitration of Saunders and Holloway's claims and to dismiss

the complaint.[7]  *See* MTD, Dkt. 41.  As relevant here, American argued that Ward's claims

should be dismissed because his tickets were issued by LATAM, not American, and American's

Conditions of Carriage specify that it will pay refunds only with respect to tickets issued by

American.  American also argued that Ward's claims should be dismissed for the independent

---

[7] American also moved to dismiss all claims other than Plaintiff's breach-of-contract claims on
the ground that they were preempted by the Airline Deregulation Act.  In response, Plaintiffs
withdrew those claims.  MTD Order 7.

reason that American never received any funds from either Ward or LATAM, and thus had no funds to refund.

On November 2, 2020, this Court granted in part and denied in part American's motion. The Court concluded that American had "proved by a preponderance of the evidence that Saunders and Holloway agreed to arbitrate the breach-of-contract claims they are asserting in this lawsuit against American," ordered Saunders and Holloway to arbitrate their dispute, and dismissed their claims. MTD Order 19, Dkt. 65. This Court denied the motion to dismiss as to Ward, however, as the Court "decline[d] to consider at the motion-to-dismiss stage" the documents—including Ward's "Passenger Name Records," or PNRs, as well as American's interline agreement with LATAM—on which American's arguments turned. *Id.* at 24-25.[8]

Ward, the sole remaining named Plaintiff, now moves to certify a class. In support of that motion, Plaintiff principally relies on evidence purporting to show that American cancelled a substantial number of flights in the wake of the COVID-19 pandemic. *See* Class Cert. Mot. 4-5. He also relies (at Class Cert. Mot. 4-7) on the following evidence: (1) a spreadsheet showing that the number of consumer complaints about American to the U.S. Department of Transportation respecting "refunds" increased in early 2020,[9] *see* Pls.' App. 109, 119, 129, 139, 149; (2) a media report concerning two passengers who were initially denied, but ultimately granted, a refund by American, *see* Pls.' App. 72-74; (3) a blog post stating that an American passenger was required to wait several weeks for a refund to be processed, *see* Pls.' App. 69; and (4) a

---

[8] Although this Court declined to take notice of those travel records at the motion-to-dismiss stage, there is no impediment to the Court's considering them here. *See, e.g.*, *Unger v. Amedisys Inc.*, 401 F.3d 316, 319-322 (5th Cir. 2005).

[9] That more consumers filed complaints does not, of course, indicate that the complaints were well founded. Indeed, although Plaintiff himself filed one of the complaints in question, he is not entitled to a refund.

letter from several senators urging American to go beyond its legal obligations and voluntarily

offer refunds to ticketholders who chose to cancel their own tickets due to COVID-19, *see* Pls'.

App. 153-55.  Plaintiff presents no actual evidence that he is entitled to a refund, nor that others

are owed a refund under American's Conditions of Carriage and have not received one.

## III.   LEGAL STANDARD

The standard for class certification is "exacting."  *Flecha v. Medicredit, Inc.*, 946 F.3d

762, 767 (5th Cir. 2020).  In the first instance, "[p]rior to determining whether the Rule 23

requirements are met, a court must determine whether the plaintiffs have standing to bring their

claims."  *Bridgewater v. Double Diamond-Delaware, Inc*., 2011 WL 1671021, at *5 (N.D. Tex.

Apr. 19, 2011) (citing *Rivera v. Wyeth-Ayerst Labs*., 283 F.3d 315 (5th Cir. 2002)).  Next,

Plaintiff must "affirmatively demonstrate" compliance with the "four threshold conditions"

under Rule 23(a)—"numerosity, commonality, typicality, and adequacy of representation"—as

well as the two additional "conditions" under Rule 23(b)(3), "predominance and superiority."  *Id.*

at 766-67 (citation omitted).  He must also satisfy Rule 23's "implied prerequisite" that the

proposed class "be adequately defined and clearly ascertainable."  *John v. Nat'l Sec. Fire & Cas.

Co.,* 501 F.3d 443, 445 & n.3 (5th Cir. 2007) (citation omitted).

The party seeking certification "bears the burden of establishing . . . all requirements" of

Rule 23 with "evidentiary support," "not presumptions" or mere allegations.  *Flecha*, 946 F.3d at

767-68 (citation omitted).  Determining whether a plaintiff has met that burden thus requires a

"rigorous analysis" that "will frequently entail 'overlap with the merits of the plaintiff's

underlying claim[s].'"  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (citation omitted).

And the "trial court must 'look beyond the pleadings to understand the claims, defenses, relevant

facts, and applicable substantive law in order to make a meaningful determination of the

certification issues.'"  *Dallas Cty., Tex. v. MERSCORP, In*c., No. 3:11-CV-02733-O, 2012 WL

6208385, at *4 (N.D. Tex. Dec. 13, 2012) (quoting *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012)).

## IV.   ARGUMENT

### A.   Plaintiff Lacks Article III Standing.

Plaintiff's motion fails at the outset because he lacks Article III standing—a jurisdictional defect that "must be addressed first, prior to deciding class certification." *Flecha*, 946 F.3d at 769; *see also Rivera v. Wyeth-Ayerst Labs*., 283 F.3d 315, 319 (5th Cir. 2002) ("Even though the certification inquiry is more straightforward, we must decide standing first, because it determines the court's fundamental power even to hear the suit."); *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001) ("Standing is an inherent prerequisite to the class certification inquiry."). The "irreducible constitutional minimum" of standing has three elements: (1) injury-in-fact; (2) a causal connection between the injury and defendants' challenged conduct, such that the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Mr. Ward cannot satisfy even the most basic requirement of injury with respect to at least one of his tickets. Nor can he show that any claimed injury is traceable to or redressable by American.

To begin with, Plaintiff cannot show any injury stemming from his first ticket, because he already has been issued a refund. As set forth in the declaration and accompanying documents of Julie Valenzuela, Plaintiff was issued a full refund of $650.09 from One Travel for the unused segments of his ticketed itinerary, including his originally ticketed American flight from Miami to Las Vegas. *See* Def. App. 5-6 (¶¶ 11-14); *id.* at 19-21. As such, Plaintiff already has received the relief he seeks in this case with respect to that ticket. *See* FAC ¶ 120. And because Plaintiff already has been issued that refund, he suffered no cognizable injury. *See, e.g.*, *Castanares v.*

*Deutsche Lufthansa Ag*, 2020 WL 6018807, at *4 (C.D. Cal. Oct. 9, 2020) ("Because Plaintiffs have received a refund, they can meet Article III's case-or-controversy requirement only if they can show they suffered some other type of actual damage.").

Nor can Plaintiff show that any injury incurred with respect to this first ticket is traceable to American.  Rather—as Plaintiff admits—he was notified that his return trip from Peru was cancelled on March 27, 2020, when *LATAM* cancelled its scheduled flight from Lima to Miami. *See* FAC ¶ 15; Def. App. 4 (¶¶ 8-9).  Indeed, Peru had closed its airspace to all regularly scheduled commercial flights.  *See supra* at 5.  Those actions caused the cancellation of Plaintiff's itinerary three days before American cancelled Plaintiff's originally ticketed connecting flight from Miami to Las Vegas.  *See Lujan*, 504 U.S. at 560-561 (Article III requires that the purported injury be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.").

Plaintiff cannot show that any purported injury with respect to his second ticket is traceable to American either.  American did not cancel that ticket; *Plaintiff did*.  Purported injuries that "are the result of the plaintiffs' own choices and are not fairly traceable to the actions of the defendants" are not sufficient to confer Article III standing.  *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 276 (E.D. Pa. 2012).  Indeed, the American flight on which Plaintiff was originally ticketed to fly never even was cancelled; instead, it flew as scheduled on August 3, 2020.  *See* Def. App. 6 (¶ 18); *id.* at 31.

As to both tickets, moreover, Plaintiff cannot show that any injury is traceable to or redressable by American for the additional reason that American never received any payment with respect to either and therefore has no funds to refund.  Plaintiff's tickets were neither purchased from, nor issued by, American.  *See* Def. App. 3-4, 6 (¶¶ 6-7, 15).  Under the interline

13

agreement between LATAM and American, American does not receive any payment for a ticket issued by LATAM unless and until American actually provides carriage to that passenger. *See id.* at 139 (§ 8.1) ("Each issuing airline agrees to pay to each carrying airline the transportation charges applicable to the transportation *performed* by such carrying airline.") (emphasis added); *id.* at 128 (¶ 17) ("American does not receive payment with respect to a ticket issued by LATAM until (1) the ticketed passenger actually travels on the American segment ticketed by LATAM"). Plaintiff, however, admittedly never flew on American. *See, e.g.*, FAC ¶¶ 13, 25. Accordingly, American's records show that it neither requested nor received any payment from LATAM with respect to either of Plaintiff's tickets. *See* Def. App. 129 (¶¶ 21-22); *id.* at 163-73.

Because American never received any payment in relation to Plaintiff's tickets, Plaintiff's injury is not traceable to American, which has no funds to refund in the first place. And because the relief Plaintiff seeks—a return of money paid to American[10]—would result in a refund of zero, it cannot redress any injury. *See, e.g.*, *Cotton v. Certain Underwriters at Lloyd's of London,* 831 F.3d 592, 595 (5th Cir. 2016) (recognizing that a plaintiff must establish that "requested relief will redress the injury").

### B.    The Proposed Class Is Neither Adequately Defined Nor Clearly Ascertainable

Plaintiff also cannot satisfy Rule 23's "implied prerequisite" that the proposed class "be adequately defined and clearly ascertainable." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 & n.3 (5th Cir. 2007) (citation omitted); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012). Here, Plaintiff proposes to certify a class consisting of all "persons in the United States who purchased tickets for travel on American Airlines flights

---

[10] The Oxford English Dictionary defines refund as "[a] repayment; the *return* of money paid." (emphasis added). *Refund*, Oxford English Dictionary (3d ed. 2009) (emphasis added).

scheduled to operate to, from, or within the United States from March 1, 2020 to the date of Class certification and who were not issued a refund for cancelled and/or significantly changed flights." Class Cert. Mot. 8. That definition is both vague and overbroad.

As an initial matter, Plaintiff never explains what he means by a "significantly changed flight"—a failure that by itself prevents this Court from identifying putative class members "by reference to objective criteria." *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012). The "class definition also cannot be too amorphous." 7A Charles Alan Wright, et al, *Federal Practice and Procedure* § 1760 (3d ed. 2005). Does a "significantly" changed flight include a flight changed by ten minutes? An hour? Does it include an itinerary with the same departure and arrival times, but a layover in a different destination? Plaintiff does not say.

Even if Plaintiff offered a definition, however, his class would remain hopelessly overbroad, purporting to encompass, for example, countless individuals who either have no claim against American or cannot participate in this class action, as because: (1) they cancelled their own tickets before American cancelled any ticketed segment; (2) American received no payment with respect to their tickets; (3) their tickets were not issued by American; (4) their claims are preempted by the Montreal Convention; (5) they are subject to an arbitration agreement or class action waiver;[11] or (6) they accepted reaccommodation or a credit in lieu of a

---

[11] As this Court is well aware, some putative class members—such as former named plaintiffs Saunders and Holloway—will have agreed to arbitrate their claims in the course of purchasing their tickets from online travel agents. *See* MTD Order 11-20. Other putative class members will have agreed to class action waivers through one of at least three different ways: (1) through agreements made in the course of purchasing from online travel agents, *see, e.g.*, *id.* at 3; (2) by agreeing to the AAdvantage terms and conditions, which incorporate a class action waiver, *see* Def. App. 33-34 (¶4); *Zamber v. Am. Airlines, Inc.*, No. 4:20-CV-00114-O, 2020 WL 3163037, at *4, *11 (N.D. Tex. June 11, 2020); or (3) by purchasing a ticket subject to American's

refund.  Courts consistently refuse to certify overbroad classes that sweep in large cohorts of individuals that are not injured or have insubstantial or inconsistent claims.  *See, e.g.*, *Lee v. American Airlines, Inc.*, 2002 WL 31230803, at *4 (N.D. Tex. Sep. 30, 2002) ("[T]he class must not be defined so broadly that it encompasses individuals who have little connection with the claim being litigated; rather, it must be restricted to individuals who are raising the same claims or defenses as the representative."); *Diacakis v. Comcast Corp.*, No. C 11-3002 SBA, 2013 WL 1878921, at *4 (N.D. Cal. May 3, 2013) ("Since the proposed class includes persons who were not injured in the same manner as Plaintiff, the proposed class is overbroad.").  Indeed, one need look no further than the fact that Plaintiff includes himself within his proposed class to determine that it is substantially overbroad.

### C.   Plaintiff Cannot Satisfy Rule 23's Requirements

Plaintiff is also unable to satisfy all "four threshold requirements" under Rule 23(a), and he certainly fails to satisfy the "far more demanding" requirements of Rule 23(b)(3).  *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 252-53 (5th Cir. 2020) (citations omitted).

At the motion to dismiss stage, Plaintiff withdrew all but his sole remaining claim for breach of contract.  And, as this Court has acknowledged, owing to the Airline Deregulation Act, a putative class member can obtain relief in this case only to the extent he "proves that an airline dishonored a term the airline itself stipulated."  MTD Order 23 (quoting *Am. Airlines v. Wolens*, 513 U.S. 219, 232-33 (1995)).  To justify class certification, therefore, Plaintiff must show, among other things, that he ***and*** his proposed class can establish shared entitlement to a refund

---

Conditions of Carriage on or after April 8, 2020, at which point a passenger's agreement to those conditions included a commitment that "any lawsuit" brought against American "related to these Conditions of Carriage, your ticket, and/or your use of or dealings with American's website will be brought only in your individual capacity, and may not be brought in or asserted as part of a class action proceeding."  Def. App. 89.

under the terms of American's Conditions of Carriage through common proof, and that

Plaintiff's claim is typical of his proposed class.  Plaintiff cannot satisfy that standard.

### 1. Plaintiff Could Theoretically Satisfy Numerosity Only By Maintaining A Class Definition That Is Unviable

Plaintiff is first obligated to show that the proposed class is "so numerous that joinder of

all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiff cannot rest "upon [his]

briefing—as opposed to actual proof—to satisfy [his class certification] burden."  *In re Kosmos*

*Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 151 (N.D. Tex. 2014).

Plaintiff seeks to establish numerosity by declaring that "thousands of flight cancellations

and abundant consumer complaints" establish that there are "thousands of members all over the

country."  Class Cert. Mot. 10.  If Plaintiff intends to include within his class every American

customer whose originally ticketed flight was eventually cancelled—even if that customer

cancelled his ticket long before American took any action, even if the customer's ticket was not

issued by American, even if the customer elected reaccommodation or a credit, and even if the

Plaintiff received a refund from a travel agency or other airline—then Plaintiff's class might well

satisfy numerosity.  But it would so only at the cost of failing Rule 23's other requirements.

On the other hand, to the extent that Plaintiff seeks to narrow his proposed class to those

entitled to a refund under the actual terms of American's Conditions of Carriage, then Plaintiff

has failed to present evidence that *that* class is so numerous as to warrant class certification.  He

relies principally on evidence that American cancelled many flights and that a greater number of

consumers filed complaints related to refunds.  But the fact that American cancelled many flights

hardly establishes that it failed to pay refunds to those who were entitled to them, nor that those

who filed consumer complaints were eligible for them—as Plaintiff's own case illustrates.[12]  As with all of Rule 23's requirements, a plaintiff must show numerosity with "proof, not presumptions."  *Flecha*, 946 F.3d at 766, 768.  But Plaintiff offers only presumption; no more.

In fact, the litigation history of this case strongly suggests that Plaintiff could not establish that a proposed class of those actually entitled to refunds is so numerous that joinder is impracticable.  Ward initially filed this suit as the sole named plaintiff.  After American's counsel alerted Plaintiff's counsel to the numerous flaws in Ward's claims (including that Ward's tickets were not issued by American and that American never received any payment related to Ward's tickets), Plaintiff's counsel added Saunders and Holloway via an amended complaint.  FAC ¶¶ 29-38.  But both Saunders and Holloway *had cancelled their own tickets* long before American made any change to their originally ticketed flights, rendering them ineligible for refunds even if they had not been required to arbitrate their claims.  *See* MTD 7-8.[13]  That Plaintiff's counsel has been unable to identify any viable plaintiff who had a valid ticket issued by American, which was cancelled by American, and who nonetheless was denied a refund, strongly suggests that he could not demonstrate such a narrowed class to be numerous; instead it may be empty.

---

[12] Plaintiff's own evidence makes clear that many of the complaints came from customers who wished to receive refunds (rather than credits) when *they*, rather than American, cancelled their tickets.  *See* Pls.' App. 153 (letter from U.S. senators urging airline "to issue full cash refunds to all customers who cancel their flights during the COVID-19 crisis" rather than "airline credits").  But the U.S. Department of Transportation has made clear that an airline is not ordinarily obligated to pay a refund in that scenario.  *See supra* at 8.

[13] There can be no serious dispute that under the terms of American's Conditions of Carriage, a passenger who voluntarily cancels his non-refundable ticket is not entitled to a refund.  *See* Def. App. 59 ("We don't refund cash for non-refundable tickets" when passengers themselves "cancel [their] trip before departure.").  Rather, such passengers may instead apply the "value of [their] ticket toward future travel on American," after "pay[ing] a change fee plus any difference in fare."  *Id.*  The Department of Transportation has likewise affirmed that airlines are not obligated to provide refunds in such a case.  *See supra* at 8.

## 2.    Plaintiff Is Neither A Typical, Nor Adequate Class Representative

Plaintiff also fails Rule 23(a)(3-4)'s "typicality" and "adequacy" requirements.  "[I]t is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is likely to become a major focus of the litigation.'"  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (citation omitted); *see also City of San Antonio v. Hotels.com*, 2008 WL 2486043 at *6 (W.D. Tex. May 27, 2008) (same).  The same shortcomings render Plaintiff inadequate to lead his proposed class. *See Beck*, 457 F.3d at 301.

Here, Plaintiff's claim is subject to a host of unique defenses that are atypical of his purported class, and indeed dispositive of his claim.  To begin with, Plaintiff already received a refund with respect to one of the tickets about which he complains, and he himself—not American—cancelled his second flight.  Indeed, American never actually cancelled the flight that was part of his second ticket; it flew as scheduled.  Consequently, neither of his claims is typical of the core factual scenario Plaintiff posits: claims brought by individuals "having booked tickets on cancelled flights" who "were denied refunds."  Class Cert. Mot. 1.  Unsurprisingly, courts will find claims to be atypical where, as here, "the named plaintiff 'was not harmed by the [conduct] he alleges to have injured the class.'"  *In re Sadia*, 269 F.R.D. 298, 305 (S.D.N.Y. 2010) (citation omitted); *see also Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (typicality lacking when "the putative class representatives have not suffered 'injuries similar to the injuries suffered by the other class members.'").

But that is not all.  Plaintiff's claim is subject to a myriad of other unique and serious defenses.  First, as explained *supra*, Plaintiff's tickets were issued by LATAM, not American. American's Conditions of Carriage, however, expressly provide that American "will only refund tickets issued by American Airlines."  *See* Def. App. 60.  Appreciating that the principles of

19

preemption limit Plaintiff to recovering for the breach of obligations American voluntarily undertook, Plaintiff has never explained how he can surmount that clear contractual hurdle. Second, American never received any payment with respect to either of Plaintiff's tickets; as such, Plaintiff would have to establish that American is obligated to pay Plaintiff for tickets for which it never received payment.

Third, Plaintiff's claims are preempted by "the Montreal Convention, which provides the exclusive remedies of international passengers against their air carriers." *Dickson v. Am. Airlines, Inc*., 685 F. Supp. 2d 623, 626 (N.D. Tex. 2010). Pursuant to Article 29 of that Convention, "[i]n the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention *or in contract* or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention."[14] Similarly, American's own Conditions of Carriage make clear that "rules for delays on international trips are governed by the Montreal Convention and Warsaw Convention." Def. App. 48. Because Plaintiff can bring his claim under the Montreal Convention or not at all, his state law breach-of-contract claim is unviable. *See Igwe*, 2007 WL 43811 at *3-4. But for present purposes, all that matters is that he would be forced to defend his claim—originating from an international trip—against a serious preemption argument inapplicable to the majority of class members whose ticketed travel was domestic, and therefore would not implicate the Montreal or Warsaw Convention at all.

These unique issues, unlikely to be shared by the majority of Plaintiff's putative class members, and which would be significant focal points of litigation should this case go forward,

---

[14] Convention for Unification of Certain Rules for International Carriage by Air, Done at Montreal on 28 May 1999, *reprinted in* S. Treaty Doc. No 106-45, 1999 WL 33292734 (Sep. 6, 2000) (entered into force Nov. 4, 2003) ("Montreal Convention").

render Plaintiff atypical and inadequate and counsel strongly against certifying Plaintiff's proposed class. *See Feder v. Electronic Data Sys. Corp.*, 429 F.3d 125, 137-38 (5th Cir. 2016) (recognizing that district courts have discretion to deny class certification "based on . . . unique defenses" that render named plaintiff atypical).

### 3. Plaintiff Fails To Demonstrate That Common Questions Predominate

Plaintiff also fails to meet his burden to show that common questions "predominate." Fed. R. Civ. P. 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016) (en banc). "Predominance is a 'far more demanding' hurdle than Rule 23(a)'s commonality requirement." *Cruson*, 954 F.3d at 253. "At bottom, the [predominance] inquiry requires the trial court to weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Id.* at 254 (5th Cir. 2020) (alteration in original) (citation omitted). Where the principal legal questions are likely to turn on "evidence that varies from member to member," and which is not susceptible to common proof, common issues will not predominate. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). So too here.

Plaintiff suggests that the key question in this case will be the requirements of American's refund policy. But the scope of that policy is not subject to serious dispute: when American cancels a passenger's flight on American, a passenger with a valid ticket issued by American is generally entitled to request a refund for the value of his ticket (or the value of the unused segment of the passenger's trip), if the passenger opts not to fly on another available flight. *See* Def. App. 51, 59-60. By contrast, American does not "refund cash for non-refundable tickets" when passengers themselves "cancel [their] trip before departure." *Id.* at 59. And American "will only refund tickets issued by American Airlines." *Id.* at 60.

21

The principal question that this Court must resolve with respect to each putative class member is not the meaning of American's Conditions of Carriage, but rather the particular facts of that putative class member's claim render him eligible to participate in a class action and contractually entitle him to a refund from American that she has not received.  Those questions turn on a host of individualized determinations by now familiar to this Court:

(1)     Did the putative class member cancel his own ticket prior to any cancellation or significant change in his flight by American?

(2)     Was any cancellation or significant change caused by American or another airline's prior cancellation or delay?

(3)     Was the putative class member's ticket issued by American or another airline?

(4)     Has American received any payment with respect to the ticket at issue?

(5)     Has another airline or travel agency already paid a refund or is another airline or travel agency responsible for providing one rather than American?

(6)     Is the class member's ticket subject to the Montreal or Warsaw Convention? Which one?

(7)     If the class member's ticket is subject to the Montreal Convention, can American show that "it and its servants and agents took all measures that could reasonably be required to avoid the damage, or that it was impossible for it or them to take such measures" with respect to the delay at issue?

(8)     If the class member's ticket is subject to the Montreal Convention, can American show that any delay was caused by "airport, air traffic control, security, and other facilities or personnel, whether public or private, not under the control and direction of the Carrier?

(9)     Did the putative class member choose to accept re-accommodation or a credit in lieu of a refund?

(10)    Is the putative class member subject to an arbitration agreement?

(11)    Is the putative class member subject to a class action waiver?

The large majority of these questions are not susceptible to common proof, nor are they likely to be uncontroverted.  This case illustrates the point.  Take the first question identified above—whether the putative class member cancelled his flight before American did.  At the

22

motion to dismiss stage of this case, American presented evidence—in the form of individual Passenger Name Records—indicating that two of the then-named plaintiffs (Saunders and Holloway) had cancelled their flights prior to any purported cancellation of their flight by American.  Undaunted, both plaintiffs proceeded to file *affidavits* claiming that they had not in fact cancelled their tickets and that American's business records were wrong.  *See, e.g.*, Pls.' Opp. to MTD 17-19, Dkt. 55.  While Saunders' and Holloway's objections were thoroughly unpersuasive and unsupported by any hard evidence, the fact remains that resolution of such individual questions is not susceptible to common proof and may be vigorously contested.

Individualized inquiries would also be required into whether each putative class member's ticket was issued by American or another carrier—a fact that may well determine whether or not a putative class member has the contractual right to receive a refund from American.  Similarly, the Court would be required to determine whether American ever received payment for each putative class members' tickets, and thus has any funds to refund.  That latter inquiry is complicated not least because there exist hundreds of unique travel agencies with the authority to sell American tickets, from whom the transfer of funds to American is not automatic. Indeed, American's own current Conditions of Carriage now expressly instruct passengers that "[i]f you bought your ticket through a travel agency or another booking source, contact *them* for a refund."  (emphasis added).  American Airlines, Conditions of Carriage (last updated Nov. 3, 2020).[15]

With respect to international flights, this Court would have to engage in further individualized inquiries depending on the passenger's destination and the particular facts of a

---

[15] Available at https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp?anchorEvent=false&from=footer?

passenger's claimed injury in order to determine whether the putative class member's breach-of-contract claim is preempted by the Montreal Convention or Warsaw Convention, and whether those conventions shield American from liability altogether.  Most importantly, putative class members to whom the Montreal Convention applies cannot maintain breach-of-contract claims against American.  Article 19 of the Convention contains significant limitations on liability for delays of passengers, and Article 29 generally preempts contract claims brought under domestic law; instead, passengers "must bring their claims under the terms of the Convention or not at all."  *King v. American Airlines, Inc.*, 284 F.3d 353, 357 (2d Cir. 2002).  Application of the Convention, however, is highly factbound, with some courts holding that application turns in part on whether an "airline failed completely to perform under the contract . . . or merely caused a delay in the passenger's arrival."  *Shabotinsky v. Deutsche Lufthansa AG*, 245 F. Supp. 3d 1018, 1022 (N.D. Ill. 2017).

Still other factual inquiries would render class treatment inappropriate.  The Court would have to determine whether a putative class member whose flight was cancelled was nonetheless ineligible for a refund because he or she accepted reaccommodation on another flight.  *See* Def. App. 51 ("When your flight is canceled … we'll rebook you on the next flight with available seats. If you decide not to fly because your flight was … canceled, we'll refund the remaining ticket value and any optional fees.").  Still other individuals would have to be purged from the putative class altogether, either because they—like Saunders and Holloway—agreed to arbitrate such claims, or because they waived their right to participate in a class action.  Members of American's AAdvantage frequent flier program, for instance, have long agreed to terms and conditions including that the member will "not bring any class action lawsuit related to" any dispute related to the customer's use of American's website.  *Zamber v. Am. Airlines, Inc.*, No.

24

4:20-CV-00114-O, 2020 WL 3163037, at *4, *11 (N.D. Tex. June 11, 2020).  Similarly,

American's April 8, 2020 update to its Conditions of Carriage added language pursuant to which

customers purchasing tickets after that date agree to a class action waiver that provides:

> Class Action Waiver: You agree that any lawsuit you bring against
> us, or any of our affiliated entities, agents, directors, employees,
> and/or officers related to these Conditions of Carriage, your ticket,
> and/or your use of or dealings with American's website will be
> brought only in your individual capacity, and may not be brought
> in or asserted as part of a class action proceeding.

Def. App. 89.  Accordingly, any putative class members who purchased tickets after

April 8 will also be subject to a unique defense that this Court would be required to resolve.  For

all of these reasons, the individualized inquiries and proof necessary to determine whether each

putative class member can participate in this class action and demonstrate entitlement to a refund

of American's Conditions of Carriage establish that common issues do not predominate.[16]

## V.  CONCLUSION

For the foregoing reasons, American respectfully requests that this Court deny Plaintiff's

motion for class certification and dismiss Plaintiff's claim for lack of standing.

---

[16] This Court should also reject Plaintiff's unsupported request to postpone ruling on this motion.  Class Cert. Mot. 8-9.  This Court recently explained that it wishes to resolve the instant motion by the end of this year.  And for the reasons set forth in the text, the evidence that Plaintiff claims to want to pursue in support of his motion—largely "policies and processes regarding tickets" and "refund and credit policies," *id.* at 8-9—cannot save his motion for class certification.

Dated:   November 19, 2020                    Respectfully submitted,


                                              */s/ James E. Brandt*

Dee J. Kelly Jr., TX No. 11217250             James E. Brandt (admitted pro hac vice)
Lars L. Berg, TX No. 00787072                 LATHAM & WATKINS LLP
Kelly Hart & Hallman LLP                      885 Third Avenue
201 Main Street, Suite 2500                   New York, NY 10022-4834
Fort Worth, TX 76102-3194                     Email: james.brandt@lw.com
Phone: 817-878-3524                           Phone: (212) 906-1278
Fax: 817-878-9280                             Fax: (212) 751-4864
Email: dee.kelly.2@khh.com
Email: lars.berg@kellyhart.com                Michael E. Bern (admitted pro hac vice)
                                              Tyce R. Walters (admitted pro hac vice)
                                              LATHAM & WATKINS LLP
                                              555 Eleventh Street, N.W., Suite 1000
                                              Washington, D.C.  20004-1304
                                              Email: michael.bern@lw.com
                                              Email: tyce.walters@lw.com
                                              Phone:  (202) 637-2200
                                              Fax:  (202) 637-2201

## **CERTIFICATE OF SERVICE**

On this 19th day of November, 2020, I electronically submitted the foregoing document by American with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ James E. Brandt* __
James E. Brandt

27